UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

FEDNAT HOLDING COMPANY, *et al¹*.

        Debtors.

_____/

Case No.: 0:22-19451-PDR

Chapter 11
(Jointly Administered)

**OBJECTION BY PRESENT AND FORMER
DIRECTORS AND OFFICERS OF DEBTORS TO *FIRST AMENDED
COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF
LIQUIDATION OF FEDNAT HOLDING COMPANY AND ITS DEBTOR AFFILIATES***

David K. Patterson, Bruce F. Simberg, Jenifer G. Kimbrough, Thomas A. Rogers, David W. Michelson, Roberta N. Young, James Gordon Jennings, Brian Gardner, and Erick A. Fernandez (the "**Movants**"), by their counsel, as present and former directors and/or officers of (a) Debtor FedNat Holding Company ("**FNHC**") and certain of its subsidiaries, FedNat Underwriters, Inc.("**FNU**"); ClaimCor, LLC ("**ClaimCor**"); Century Risk Insurance Services, Inc. ("**CRIS**"); and Insure-Link, Inc. ("**Insure-Link**," together with FNU, ClaimCor, and CRIS, the "**FNHC Subsidiaries,**" who are the Chapter 11 debtors-in-possession in these jointly administered bankruptcy cases and collectively referred to as the "**FNHC Debtors**"), and (b) FedNat Insurance Company ("**FNIC**"), a non-debtor subsidiary of FNHC, file this objection to the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and Its Debtor Affiliates* (the "**Plan**") [ECF 567, 567-1–567-8, 661]

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' federal tax identification numbers are: FedNat Holding Company (Case No. 22-19451) (8866); FedNat Underwriters, Inc. (Case No. 22-19452) (8533); ClaimCor, LLC (Case No. 22-19453) (7581); Century Risk Insurance Services, Inc. (Case No. 22-19454) (1854); and Insure-Link, Inc. (Case No. 22-19455) (6769). The Debtors' headquarters are located at 1 East Broward, Suite 700, Ft. Lauderdale, Florida 33301

submitted by the FNHC Debtors and the Official Committee of Unsecured Creditors (the "**Committee**" and, together with the FNHC Debtors, the "**Plan Proponents**").

## SUMMARY OF OBJECTION

Movants are current and former directors and officers of the FNHC Debtors. The FNHC Debtors are obligated to indemnify Movants for defense and settlement costs for claims arising out of Movants' acts or omissions while acting as an officer or director by virtue of the FNHC Debtors' (a) statutory obligation to indemnify their directors and officers, (b) governing documents requiring the company to advance expenses to current and former directors and officers to the fullest extent permitted by law, and (c) employment and other specific agreements with directors and officers containing indemnification provisions (collectively, the "**Indemnification Obligations**"). To fulfill the Indemnification Obligations, the FNHC Debtors obtained insurance to protect their officers and directors ("**D&Os**") for defense and settlement costs.

Movants have received demands for alleged damages from acts and omissions while Movants acted as officers and directors. While Movants vigorously deny the merits of the demands, Movants have various defenses and potential counter-, cross-, and third-party claims in response to the demands and any eventual civil litigation, and the right to seek indemnification from the FNHC Debtors. However, the Plan's release and injunction provisions seriously impair or even extinguish Movants' ability to defend themselves, bring appropriate claims, or seek indemnification. In exchange, Movants receive nothing, as they have been specifically excluded from the status of released parties, while the very claims for which the FedNat Debtors are obligated to protect them against have been explicitly preserved. Additionally, the release and

injunction provisions of the Plan could impair the director and officer insurance coverage, all of which necessitates this objection to confirmation of the Plan.

Therefore, because the release and injunction provisions of the Plan are not fair and equitable to the Movants who are being adversely impacted, the Plan cannot be confirmed without affording the same protections of the release and injunction provisions to Movants, to the extent claims are made that exceed the limits of liability under the insurance that was provided by the FNHC Debtors to cover the Indemnification Obligations.

## BACKGROUND OF OBJECTION

A.    **Insurance for Indemnification Obligations**.

1.    Prior to the Petition Date, the FNHC Debtors, including FNIC, purchased a primary D&O policy (the "**Primary Policy**") to protect the Insured Persons. The Insured Persons are defined in relevant part in the Primary Policy as "any natural person who was, now is or shall become (a) a duly elected or appointed director (including a de facto director), officer, Manager, trustee, regent, governor, risk manager, comptroller or in-house general counsel of any Company organized in the United States of America, or in a functionally equivalent or comparable role to any of the foregoing." Company is defined as the "Parent Company and any Subsidiary, any foundation, political action committee or charitable trust controlled or sponsored by the Parent Company or any Subsidiary, and the Parent Company or any Subsidiary in its capacity as a debtor in possession under United States bankruptcy law." FNHC is named as the Parent Company in the Primary Policy, and FNIC, as a wholly owned subsidiary of FNHC, is a Subsidiary.

2.      The Primary Policy provides claims made coverage, which applies only to claims first made against Insured Persons during the Policy Period.[2] The Primary Policy has a limit of liability of $2.5 million in the aggregate.

3.      Contemporaneously with its purchase of the Primary Policy, the FNHC Debtors purchased from several different insurance companies claims-made coverage generally limited to liability for claims first made against Insured Persons during the Policy Period. Specifically, the FNHC Debtors purchased nine (9) separate excess director and officer liability insurance policies each providing excess coverage of an aggregate of $2,500,000 with respect to claims exceeding the coverage provided by underlying policies (each an "**Excess Policy**," and together with the Primary Policy, the "**D&O Policies**").[3] The issuers of the Primary Policy and the Excess Policies are referred to as the "**Insurers**".

4.      Subject to the specific applicable policy language, the Excess Policies generally follow the Primary Policy and/or applicable underlying Excess Policies, except as otherwise provided. As such, the limit of liability available under the Excess Policies to pay judgments or settlements shall be reduced by the payment of defense costs.

5.       Subject to their terms, conditions and exclusions, the D&O Policies provide up to $25 million of liability insurance for claims.

B.      **Demands and Claims Made Against Insured Persons**.

6.      On November 1, 2022, FNHC and each of the FNHC Subsidiaries (collectively referring to themselves as the "**Company**") gave written *Notice of Circumstances/Notice of*

---

[2] The provisions of the Primary Policy are laid out in full in Movants' filing at ECF 387. Counsel for Movants will provide copies of the D&O Policies to the Court and to other parties upon request.
[3] Movants dispute that the proceeds of the D&O Policies are property of the bankruptcy estates that would be available for distribution, and thus dispute the Plan Proponents' listing "D&O Coverage" in their Liquidation Analysis, Exhibit C to the Plan.

8AO139503.DOCX

*Potential Real Claims and/or Wrongful Acts* (the "**Primary Policy Notice**") to the issuer of the Primary Policy. On November 3, 2022, the Company gave written *Notice of Circumstances/Notice of Potential Real Claims and/or Wrongful Acts* (the "**Excess Polices Notice,**" and collectively with the Primary Policy Notice, the "**Notices**") to the issuers of the Excess Policies. The Notices brought to the attention of the Insurers the background and circumstances which could give rise to a claim against the persons who served as a director, officer, Manager, trustee, regent, governor, comptroller, in-house general counsel or functionally equivalent (or comparable role to any of the foregoing) of the Company for which the policy issued by the respective Insurer provided coverage.

7.      On December 1, 2022, the Florida Department of Financial Services (the "**Receiver**"), Receiver of FNIC in the receivership of FNIC pending in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, Case No. 2022-CA-001688 (the "**Receivership**") sent a *Notice of Claim, Demand for Tender of Insurance Policy Limits and Assertion of Claims Under Policies* (the "**Receiver's Demand**") to the D&Os and to all insurance carriers which provide or may provide coverage to the D&Os.

8.      In the Receiver's Demand, the Receiver asserts that the current and former directors and officers of FNHC and FNIC, including the Movants, breached duties in their capacity as the directors or officers of FNHC, FNIC or both.

9.      In addition to sending the Receiver's Demand to the D&Os, the Receiver also provided copies to the Insurers.

10.     Movants have sought information to evaluate the assertions in the Receiver's Demand.

8AO139503.DOCX

11.    On January 11, 2023, the Movants, as the Insured Persons, made a request for indemnification to the FNHC Debtors and requested documents from the necessary parties and non-parties to evaluate the Receiver's Demand and possible third-party claims (the "**Indemnification Request**").

12.    On May 5, 2023, the Committee, pursuant to Federal Bankruptcy Rule of Bankruptcy Procedure 2004 and Local Rule 2004-1, noticed the Rule 2004 examination of each of the Movants and demanded production of all documents and media as listed on a Schedule attached to a subpoena served on each Movant [ECF. Nos. 332–337] (collectively, the "**Examinations**").

13.    On May 22, 2023, the Receiver contacted counsel for the Movants regarding scheduling certain discovery in the Receivership from certain of the Movants under an Investigative Subpoena pursuant to Sections 631.156, Florida Statutes (the "**Receivership Discovery**").

14.    On June 1, 2023, the FNHC Debtors provided a *Further Notice of Circumstances / Further Notice of Potential Real Claims / Further Notice of Potential Wrongful Acts* (the "**Further Notice**") to the Insurers. The Further Notice was given on behalf of the Company (FNHC and each of the FNIC Subsidiaries), and referenced the Notices, the Chapter 11 filings by the FNHC Debtors, the Receiver's Demand, the Tax-Sharing Agreement, and further potential "wrongful acts" by FNHC's Officers and Directors and by the FNHC Subsidiaries' Officers and Directors related to the Monarch Transactions, and specifically the allegations of FNIC, ClaimCor and FNU against Monarch National Insurance Company ("**Monarch**") and HP Managing Agency, LLC ("**HPMA**") in Adversary Proceeding No. 23-01053-PDR, laying out in detail acts of bad faith and breaches of fiduciary duty by Monarch, by HPMA, by Steven A. Hale II ("**Hale**"), and by

other entities owned or controlled by Hale (collectively, the "**Hale Related Parties**"), causing damage to FNHC and the FNHC Subsidiaries.[4]

15.     On June 2, 2023, the FNHC Debtors provided a *Notice Of Claims And Demand For Damages At Or Exceeding Policy Limits And For A Tolling Agreement* (the "**FNHC Debtors' Demand**") to Movants David K. Patterson, Bruce F. Simberg, Jenifer G. Kimbrough, Thomas A. Rogers, David W. Michelson, and Roberta N. Young (collectively, the "**Petition Date Directors**") and the Insurers referencing certain prior notices allegedly setting forth the facts and circumstances underlying alleged wrongful acts and demanding damages equal to or exceeding policy limits of the D&O Policies and demanding that each of the Petition Date Directors enter into an agreement tolling or waiving any applicable statute of limitations or repose.

16.     The Movants deny any allegations or suggestions of wrongdoing asserted by the FNHC Debtors or the Receiver in the Notices, the Receiver's Demand, the Further Notice, and the FNHC Debtors' Demand (collectively, the "**Demands**"), believe that any claims by the FNHC Debtors or the Receiver are without merit, and intend to vigorously defend any claim pursued.

C.     **Movants' Proofs of Claim.**

17.     Movants asserted claims against the FNHC Debtors by virtue of each such Movants' status as a current or former director, or a former officer, of one or more of the FNHC Debtors and the FNHC Debtors' Indemnification Obligations.

18.     Specifically, on or about February 21, 2023, the Petition Date Directors, each individually, timely filed a Proof of Claim in each of the FNHC Debtors' cases. ("**Petition Date**

---

[4] In brief, Mr. Hale, together with the Hale Related Parties, allegedly "abused his position of power and capitalized upon his insider status, using his knowledge of [FNHC] and its subsidiaries' operations and access to their employees and customers to enrich himself and his companies… without regard to any damage it was causing to [FNHC] and its subsidiaries…. [thereby breaching] his fiduciary duties to [FNHC] and its subsidiaries resulting in untold amounts of damage to the Debtors' businesses." (*See Monarch National Ins. Co. et al v. FedNat Holding Co. et al*, No. 0:23-01053-PDR (Bankr. S.D.Fla.), Doc. 19 at 27 (Third-Party Complaint, ¶¶18-19).)

**Directors' Claims**"). *See* Claim Nos. 187-194; 196; 198-204; 206; 220-221; 223-228; 230-235 [ECF 600-1, 600-2].

19.　　On September 12, 2023, the Plan Proponents filed their *Notice of Filing of Plan Supplement for the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and Its Debtor Subsidiaries* (the "**Plan Supplement**") [ECF 661].

20.　　Although the Plan Proponents included the D&O Policies in their Schedule of Executory Contracts and Unexpired Leases to be Assumed attached to the Plan Supplement, the Plan Proponents propose to reject the Indemnification Obligations because they are not listed in the Plan Supplement as being assumed. Plan art. X; Plan Supplement [ECF 661].

21.　　In Exhibit B of their Plan Supplement containing a Schedule of Retained Causes of Action, the Plan Proponents purport to preserve, for pursuit by the Plan Administrator, all retained causes of action not expressly settled or released.  Further, (a) in Annex (ii) they expressly reserve causes of action related to director and officer liability, (b) in Annex (iv) they expressly reserve all causes of action related to the D&O Policies, and (c) in Annex (ix) they expressly reserve all causes of action against directors and officers of the FNHC Debtors, and name as potential defendants each of the Movants, and also name Michael H. Braun and Douglas Raucy, other current or former directors or officers of FNHC and its subsidiaries, represented by separate counsel.

22.　　Movants James Gordon Jennings, Brian Gardner, and Erick A. Fernandez (collectively, the "**Additional D&Os**") asserted claims against the FNHC Debtors on September 20, 2023, by virtue of each such Movants' status as a current or former director and/or a former officer of one or more of the FNHC Debtors and the FNHC Debtors' proposed rejection of their

Indemnification Obligations pursuant to the Plan. *See*, Claim Nos. 276–291[5] ("**Additional D&O Rejection Claims**," and together with the Petition Date Directors' Claims, the "**Movants' Claims**").[6]

23.     If necessary, Movants will take additional steps to preserve their rights to assert additional claims for rejection damages, as contemplated by article X of the Plan.

24.     The Petition Date Directors' Claims asserted contingent and unliquidated claims in unknown amounts against the FNHC Debtors based on the Indemnification Obligations and the possibility that the FNHC Debtors would fail to honor and fulfill their Indemnification Obligations.

25.     The D&O Rejection Claims asserted contingent and unliquidated claims in unknown amounts against the FNHC Debtors based on the FNHC Debtors' proposed rejection of their Indemnification Obligations and the failure of the FNHC Debtors to honor and fulfill their Indemnification Obligations.

26.     Further, to the extent the FNHC Debtors assert claims against the Movants of any kind, the Movants reserved the right to assert that such claims are subject to rights of setoff or recoupment, which rights may be treated as secured claims under the Bankruptcy Code. To the extent that the FNHC Debtors or any other party asserts claims against the Movants that would give rise to any counterclaim, crossclaim, or other claim against the FNHC Debtors, the Movants reserved all rights to assert such claims.

27.     The Movants' Claims will remain contingent and unliquidated as of the Voting Deadline. Accordingly, on September 5, 2023, the Petition Date Directors filed a *Motion of Present and former Directors and Officers of Debtors Pursuant to Federal Rule of Bankruptcy*

---

[5] Claim 289 is an inadvertent duplicate claim filed by Mr. Fernandez as to ClaimCor.
[6] Braun and Raucy have filed proofs of claim numbers 292–296 and 308–310.

*Procedure 3018(a) to Allow Claims for Plan Voting Purposes* (the "**Rule 3018(a) Motion**") seeking to have the Petition Date Directors' Claims temporarily allowed, as applicable, as (a) Class 4 FNHC General Unsecured Claims; (b) Class 3 FNU General Unsecured Claims; (c) Class 3 ClaimCor General Unsecured Claims; (d) Class 3 CRIS General Unsecured Claims; and (e) Class 3 Insure-Link General Unsecured Claims (collectively, referred to as "**Petition Date Director General Unsecured Claims**"), for purposes of voting on the Plan. [ECF 600].

28.     On September 20, 2023, the Additional D&Os filed a joinder in the Rule 3018(a) Motion seeking to have the Movants' Rejection Claims temporarily allowed, as applicable, as (a) Class 4 FNHC General Unsecured Claims; (b) Class 3 FNU General Unsecured Claims; (c) Class 3 ClaimCor General Unsecured Claims; (d) Class 3 CRIS General Unsecured Claims; and (e) Class 3 Insure-Link General Unsecured Claims (collectively, referred to as "**D&O Rejection Claims,**" and collectively with the Petition Date General Unsecured Claims, the "**D&O General Unsecured Claims**"), for purposes of voting on the Plan. [ECF 683].  Further, Raucy [ECF 705] and Braun [forthcoming] have joined in the Rule 3018(a) Motion.

**D. FNHC Debtors' Objections to Petition Date Directors' Claims Against FNHC Subsidiaries.**

29.     Contemporaneously with the filing of their Plan Supplement on September 12, 2023, the FNHC Debtors filed separate Objections to the Petition Date Directors' Claims against the FNHC Subsidiaries (collectively, the "**D&O Claim Objections**"). *See Debtors' Forty-First (Substantive) Omnibus Objection to Certain Claims of Jenifer Kimbrough – No Liability* [ECF 655]; *Debtors' Forty-Second (Substantive) Omnibus Objection to Certain Claims of David Michelson – No Liability* [ECF 656]; *Debtors' Forty-Third (Substantive) Omnibus Objection to Certain Claims of David Patterson – No Liability* [ECF 657]; *Debtors' Forty-Fourth (Substantive) Omnibus Objection to Certain Claims of Thomas Rogers – No Liability* [ECF 658];

10

*Debtors' Forty-Fifth (Substantive) Omnibus Objection to Certain Claims of Bruce Simberg – No Liability* [ECF 659]; and *Debtors' Forty-Sixth (Substantive) Omnibus Objection to Certain Claims of Roberta Young – No Liability* [ECF 660].

30.    The D&O Claim Objections do not challenge the proofs of claim filed by the Petition Date Directors against FNHC Debtor. *See,* Claim 189, 194, 201, 221, 227, and 233.

31.    Instead, the D&O Claim Objections assert that the applicable claimant was not an officer or director of the applicable FNHC Subsidiary and, therefore, the FNHC Subsidiaries have no indemnification obligations to the claimant. The FNHC Debtors selectively reference the Indemnification Request, which was based on the Receiver's Demand, and the Receiver's Demand, as support for the argument that only claims by FNHC or FNIC trigger an Indemnification Obligation. As will be more fully detailed in the responses in opposition to the D&O Objections, the Demands against the Petition Date Directors were made by all the FHNC Debtors. Moreover, the status of a de facto director or functionally equivalent or comparable role is more than sufficient to trigger the Indemnification Obligations, especially if the party asserting the claim is the Plan Administrator acting on behalf of all the FNHC Debtors and their estates.

E.  **The Plan's Release, Injunction, and Exculpation Provisions.**

32.    The Plan provides releases to a broad swath of non-debtors, but explicitly <u>removes</u> the D&Os from the parties being released:

> "Released Party" means, collectively, and in each case in its capacity as such, (a) the Debtors, (b) **the Senior Notes Indenture Trustees**, (c) **the Committee**, (d) **the Hale Related Parties**; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such **Entity's managers, managing members, principals, partners, members, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Representatives**. **For the avoidance of doubt, "Released Party" shall not**

11

include **(i) any D&O[7]; (ii) any person or Entity[8] that is subject to, party to, or related to any Insurance Cause of Action**[9]; or (iii) any person or Entity that is subject to the Tax Refund Dispute in each case regardless of whether any person or Entity subject to clauses (i) through (iii) would otherwise fall within the definition of "Released Party; provided for the avoidance of doubt, none of the Hale Related Parties nor their Representatives are included within or subject to any of (i) – (iii) above.

Plan art. I (123) (emphasis added).

33.    Those Released Parties enjoy releases from any conceivable claim for pre- or post-petition actions:

> . . . the Released Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever been released and discharged by the Debtors and the Estates from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alterego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively, "*Debtor Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the First Amended Combined Disclosure Statement and Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the First Amended Combined Disclosure Statement and Plan, the Plan Supplement, the Plan Administrator Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the First Amended

---

[7] Under the Plan, "'D&O' means any current or former officer, director, member or manager of any of the Debtors, solely in his or her capacity as such."

[8] Under the Plan, "'Entity' means an 'entity' as that term is defined in section 101(15) of the Bankruptcy Code." "Entity" under the Bankruptcy includes "persons," and the definition of "person", in turn, includes individuals. 11 U.S.C. § 101(15), (41).

[9] "'Insurance Causes of Action' means, collectively, any Cause of Action which may be asserted against any D&O or against any D&O Insurance Carriers, including without limitation, all Causes of Action which are or may be covered by any D&O Liability Insurance Policies."

8AO139503.DOCX

Combined Disclosure Statement and Plan or the Distributions and related documents or other property under the First Amended Combined Disclosure Statement and Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing.

Plan art. XII(B).

34.     The release provision explicitly excludes any release of the D&Os or related to the D&Os, and preserves all claims against them:

For the avoidance of doubt, nothing in the foregoing "Debtor Releases" or the First Amended Combined Disclosure Statement and Plan shall operate to waive or release . . . (iii) any Causes of Action against any insurer arising out of or relating to matters for which the Debtors would otherwise be liable or suffer an insurable loss, including without limitation, any Causes of Action against any D&O Insurance Carrier; or (iv) any claims of the Debtors, FNIC or the DFS Receiver against any D&O; (v) any Insurance Causes of Action; . . . or (vii) any Retained Causes of Action and any claims, rights, suits, damages, Causes of Action or remedies with respect to the Retained Causes of Action.

Plan art. XII(B).

35.     This preservation of claims is set forth in more detail in the Plan Supplement:

Unless expressly released by the Combined Disclosure Statement and Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtors, Liquidating FedNat, and the Plan Administrator expressly reserve any and all direct or derivative claims or Causes of Action against any and all current and former officers, directors, shareholders, members, managers, employees, affiliates or insiders of the Debtors, including but not limited to for breach of fiduciary duty, including the duties of care, loyalty, good faith, disclosure, candor, and oversight, or aiding and abetting breach of fiduciary duty, or under and pursuant to any of the D&O Liability Insurance Policies (including for bad faith).

* * *

Unless expressly released by the Combined Disclosure Statement and Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtors, Liquidating FedNat, and the Plan Administrator expressly reserve all Causes of Action related to each of the D&O Liability Insurance Policies set forth on Exhibit C to the Plan Supplement, and the following Errors and Omissions Insurance Policy issued by Endurance American Specialty Insurance Company to FedNat Underwriters, Inc., Policy Number APL10006074907, and any other insurance policies and occurrence contracts to which the Debtors are a party or pursuant to which the Debtors have any rights whatsoever, including but not

limited to, liability for professional service, employment practices and management, crises event management, property damage, and time element losses,. The Causes of Action reserved include Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or any other matters.

* * *

Unless expressly released by the Combined Disclosure Statement and Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtors, Liquidating FedNat, and the Plan Administrator expressly reserve all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial, regardless of whether such Entity is specifically identified in the Combined Disclosure Statement and Plan, this Plan Supplement, or any amendments thereto. Without limiting the generality of the foregoing, the Debtors, Liquidating FedNat, and the Plan Administrator expressly reserve all Causes of Action against the Entities identified below in this Annex (ix).

[ECF 661, Annex (ii), (iv), (ix)].

36.     Each of the Movants are listed as potential defendants in the preserved actions against D&Os: "Potential Defendants: David K. Patterson, Bruce F. Simberg, Jenifer G. Kimbrough, Thomas A. Rogers, David W. Michelson, Roberta N. Young, Ronald A. Jordan, James Gordon Jennings, III, Brian Gardner, Eric A. Fernandez, III, Michael H. Braun, and Douglas Raucy." [ECF 661].

37.     The "Exculpated Parties" include "the Debtors, the Chief Restructuring Officer, the Chief Financial Officer, GGG, the Committee and the individual members thereof, the Senior Notes Indenture Trustees, and the Professionals[10] (each of the foregoing in its individual capacity as such)." Plan art. I (61).

---

[10] "Professional" means any person or Entity employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code. Plan art. I (118).

38.    The D&Os are then explicitly excluded from the exculpation provision, while all others who had a role in the decision to file these bankruptcy cases are protected:

> . . . an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for (a) any prepetition act taken or omitted to be taken in connection with, related to or arising from the Debtors' out-of-court restructuring efforts, including authorizing, preparing for or filing the Chapter 11 Cases and the Sale, or (b) any post-petition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this First Amended Combined Disclosure Statement and Plan, the Plan Supplement, or any contract, instrument, or other agreement or document created or entered into in connection with this First Amended Combined Disclosure Statement and Plan or the Chapter 11 Cases, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the Chapter 11 Cases, or the confirmation or consummation of this Plan, including but not limited to (i) the Sales; (ii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this First Amended Combined Disclosure Statement and Plan (including soliciting acceptances or rejections thereof if necessary), or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with this First Amended Combined Disclosure Statement and Plan; or (iii) any Distribution made pursuant to this First Amended Combined Disclosure Statement and Plan, except for acts determined by a Final Order to constitute willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this First Amended Combined Disclosure Statement and Plan. Notwithstanding the foregoing, or anything contrary in this First Amended Combined Disclosure Statement and Plan, and for the avoidance of doubt, this section of the First Amended Combined Disclosure Statement and Plan **shall not** . . . (iii) exculpate or release any Exculpated Party, person, or Entity from any claims or Causes of Action against any D&O; (iv) exculpate or release any Exculpated Party, Person, or Entity from any Insurance Causes of Action; . . . (vi) exculpate or release any Exculpated Party from any Retained Causes of Action and any claims, rights, damages, or remedies with respect to any such Retained Causes of Action . . . .

Plan art. XII(D).

39.    Despite receiving none of the protections of the release and exculpation provisions, Movants will be bound by the broad injunction provision of the Plan, which states as follows:

8AO139503.DOCX

. . . all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders and the Releasing Parties are permanently enjoined from taking any of the following actions against the Debtors, Liquidating FedNat, the Released Parties, and Plan Administrator: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action[11] released, exculpated, waived, settled or barred pursuant to this First Amended Combined Disclosure Statement and Plan, which for the avoidance of doubt include the Third Party Releases, Debtor Releases and Exculpated Claims set forth herein, (6) commencing or continuing in any manner any action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Insurance Cause of Action (the injunction set forth in this clause (6), the "Insurance Injunction").

Plan art. XII(E).

40.    The injunction provision is also explicit to preserve all claims against the D&Os:

Nothing in the First Amended Combined Disclosure Statement and Plan or the Confirmation Order shall: . . . (B) enjoin, preclude, or otherwise restrict (ii) any Insurance Causes of Action; (iii) any Retained Causes of Action; or (iv) any claims or Causes of Action against or in any way involving any D&O.

Plan art. XII(E).

---

[11] "'Causes of Action' means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of any kind or character whatsoever, whether known or unknown and whether arising before, on, or after the Petition Date." Plan art. I (23).

## OBJECTION[12]

**A.    The Plan's release and injunction provisions are not essential to reorganization because it is a liquidating Plan, and they are unfair and inequitable to the D&Os.**

41.    During the time the Plan Proponents were proposing an amendment to the original plan [ECF 422], the Movants proposed revisions to provide that, in exchange for and in complete satisfaction of the Indemnification Obligations, the D&Os would be included in the protections of the release and injunction provision. To ensure these revisions would be both fair and equitable and preserve all coverage under the D&O Policies, this treatment was subject to the following conditions and limitations:

  a.  Any Insurance Causes of Action may be pursued solely to recover any proceeds under any applicable insurance policies (including any D&O Liability Insurance Polices);

  b.  No Released Party or Exculpated Party shall have any liability to any Entity for any Insurance Causes of Action other than the proceeds of any such insurance policies;

  c.  The treatment afforded any D&O under this First Amended Combined Disclosure Statement and Plan shall not impair the D&O's duty to defend;

  d.  The treatment afforded any D&O under this First Amended Combined Disclosure Statement and Plan shall not constitute a settlement, stipulation to judgment, incurrence of Defense Costs, admit any liability or assume any contractual obligation, without the D&O Insurance Carrier's prior written consent;

  e.  The treatment afforded any D&O under this First Amended Combined Disclosure Statement and Plan shall not do anything that could prejudice the D&O Insurance Carrier's position or its potential or actual rights of recovery; and

  f.  The treatment afforded any D&O under this First Amended Combined Disclosure Statement and Plan shall not do anything deter or impair a D&O's agreement to provide a D&O Insurance Carrier with all information, assistance and cooperation with the D&O Insurance Carrier may reasonably require.

---

[12] The Movants reserve the right to supplement this Objection to assert additional grounds for objection to confirmation of the Plan that are based upon the Solicitation and Tabulation Procedures.

8AO139503.DOCX

42.    Rather than adopt these revisions, the Plan explicitly <u>removes</u> the D&Os from the parties being released and separately preserved every possible claim by the Released Parties against the D&Os.

43.    While the Plan appears to limit the definition of the parties *giving* the release, this limitation is illusory because the Plan includes an injunction that is far broader than the releases.

44.    Specifically, the parties providing the releases include "each other Holder[13] of a Claim[14] that is entitled to vote on the First Amended Combined Disclosure Statement and Plan that does not both (1) vote to reject the First Amended Combined Disclosure Statement and Plan or abstain from voting to accept or reject the First Amended Combined Disclosure Statement and Plan and (2) elect the Release Opt-Out[15] on its Ballot." Plan art. I(124).

45.    The Plan Proponents may contend that Movants can "opt out" of being Releasing Parties by voting to reject the Plan and electing the Release Opt-Out on their ballots. But the proposed ballot reveals that the Release Opt-Out applies *only* to the release, and Movants will therefore still be subject to the broad injunction: "Opt Out of the Releases in Article XII of the First Amended Combined Disclosure Statement and Plan. IF YOU CHECK THE BOX, YOU WILL BE DEEMED TO OPT OUT OF THE RELEASES IN ARTICLE XII OF FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND THE PLAN." [ECF 567-8].[16]

---

[13] "'Holder' means any Entity holding a Claim against or an Interest in one or more of the Debtors."

[14] "'Claim' means a 'claim' (as that term is defined in section 101(5) of the Bankruptcy Code) against or more of the Debtors."

[15] "'Release Opt-Out' means the election, to be made solely through validly-submitted Ballots, to opt-out of the release provisions."

[16] Article V(H) of the Plan contains conflicting language: "Holders of Claims or Interests that wish to opt out of the release, *injunction, and related provisions contained in Article XII* may do so by selecting the opt-out option on the Ballot." (emphasis added).

46.     Counsel for the Committee confirmed this limitation during the August 29, 2023 hearing on confirmation procedures when he stated that "people can vote to accept, they can vote to reject, they can opt out of the releases in the plan."

47.     Thus, contrary to the Committee's assurance that there is "no death trap built into the plan," Movants will be bound by the broad injunction provision of the Plan, rendering the opt-out pointless.

48.     The injunction is so broad that, in addition to suit, counterclaims, crossclaims, third-party claims, setoff rights, etc., its overbreadth could preclude Movants from raising *affirmative defenses* against the Released Parties. One example is Movants' affirmative defense of their reliance on the advice of professionals in the course of their actions as officers and directors. The Plan would prohibit that defense because the "Released Parties" include the FNHC Debtors' "agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Representatives." Plan art. I (123).

49.     The Eleventh Circuit is clear that a plan's release of non-debtors "ought not to be issued lightly, and should be reserved for those unusual cases in which such an order is necessary for the success of the reorganization, and only in situations in which such an order is fair and equitable under all the facts and circumstances." *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1078–79 (11th Cir. 2015) ("bar orders should be used cautiously and infrequently, and only where essential, fair, and equitable") (omitting quotations and citations).

50.     Courts are to examine the following non-exclusive list of factors:

(1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution

claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Id.* at 1079. *In re Stein Mart*, 629 B.R. 516, 525 (Bankr. M.D. Fla. 2021), relied upon *In re Seaside*, *supra*, and held that "bankruptcy courts should have discretion to determine which… factors will be relevant in each case. The factors should be considered a nonexclusive list of considerations, and should be applied flexibly, always keeping in mind that such bar orders should be used 'cautiously and infrequently,' and only where essential, fair, and equitable." (punctuation omitted).

51.     First, the factual circumstances of these bankruptcies are not the type of "unusual case" in which non-debtor releases are approved. A common example of an "unusual case" is when "debtors engaged in extensive, nation-wide product liability litigation." *In re Transit Grp., Inc.*, 286 B.R. 811, 817 (Bankr. M.D. Fla. 2002) (discussing "unusual case" examples). In contrast, the FNHC Debtors cite the catastrophic losses in the Florida property insurance industry and the receivership of FNIC, requiring the cancellation of policies, as the causes precipitating their bankruptcy filings. Plan art. II (2). However, the "unusual case" example highlights how D&Os *would be* the type of non-debtors to qualify under the Eleventh Circuit's test of having an identity of interests with the FNHC Debtors via indemnity: in the mass tort litigation example, "courts have allowed non-debtor releases against the debtor's insurers, shareholders, and directors." *In re Transit Grp., Inc.*, 286 B.R. at 817.

52.     Second, there is no way for the Plan Proponents to demonstrate the release and injunctions provisions are necessary to the FNHC Debtors' reorganization because the Plan is a liquidating plan. As Judge Grossman explained, in "non-reorganization cases," "the real question is whether the proposed bar order is essential to permitting this debtor to move forward with this

20

liquidating Chapter 11 case." *See In re Daymark Realty Advisors, Inc. et al.*, Case 18-23750-SMG, ECF 655 at Page 1917:4–13 (S.D. Fla Dec. 30, 2020) (explaining "the rationale for entering a bar order is much more compelling in the context of a Chapter 11 reorganization as part of a plan than it is in connection with a pre-confirmation or post-confirmation settlement, or in a Chapter 7 liquidation case."). Here, there is no ongoing business of the FNHC Debtors that the releases and injunction will aid, and there has been no showing they will aid the liquidation because the FNHC Debtors are giving the releases and injunction for nothing in return.

53.     In contrast, the inclusion of the D&Os in these protections (as Movants proposed) offers the FNHC Debtors' creditors increased distributions by waiving the Indemnification Obligations and channeling claims against the D&Os to the proceeds of the D&O Policies without impairing any Insurers' rights under the D&O Policies.

54.     Third, this Court must determine whether the release and injunction provisions are "fair and equitable to the parties whose claims will be enjoined." *In re GunnAllen Fin., Inc.*, 443 B.R. 908, 915 (Bankr. M.D. Fla. 2011) (reviewing bar order in the context of a settlement agreement).

55.     As explained above, the Plan would enjoin Movants from defending themselves and bringing appropriate counter-, cross-, and third-party claims, and Movants have no ability to opt out of that treatment. In exchange, Movants would not be beneficiaries of the same injunction and release, but instead all claims against them are explicitly preserved. Movants would undoubtedly fare better in a Chapter 7 liquidation where they would at least retain their ability to defend themselves, and the Plan Proponents concede the outcome of the Plan would be "substantially similar" under a Chapter 7 liquidation. Plan art. III(C), Exhibit C (Liquidation

Analysis). *See In re Daymark Realty Advisors, Inc. et al.*, ECF 655 at Page 1924:5–22 (". . . the support of creditors, particularly creditors impacted by the bar order, is critical.").

56.     Further, the Plan Proponents have made no attempt to show how the non-debtor release and injunction is necessary, fair, and equitable. Unlike the D&Os, the non-debtors benefitting from the release and injunction have no nexus with the FNHC Debtors; and, contrary to the concessions proposed by the Movants resulting in higher distributions under the Plan, the non-debtors benefitting from the release and injunction have not contributed any cash for distribution in consideration for the protections they receive. Any order approving the release and injunction proposed by the Plan could therefore not be supported by factual findings.

57.     Because the release and injunction provisions are patently unnecessary, unfair, and inequitable, the Plan cannot be confirmed.

### B.     The Plan's release and injunction provisions are not fair and equitable because they do not treat all D&Os the same.

58.     Under the Plan, the "Hale Related Parties"—who were D&Os and covered under the D&O Policies—are included in the parties being released. Plan art. I(85) & (123). Thus, the Plan treats parties with the same status—D&Os—differently, which is not fair or equitable, particularly given the Hale Related Parties' alleged role in the collapse of FNHC. (*See Monarch National Ins. Co. et al v. FedNat Holding Co. et al*, No. 0:23-01053-PDR (Bankr. S.D. Fla.), Doc. 19 at 27 (Third-Party Complaint, ¶¶18-19).) *See In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 47 (Bankr. S.D.N.Y. 1998) (explaining that release provisions impacting class action members differently must be rationally based on legitimate considerations).

59.     Additionally, as detailed in the preceding section, Movants would be enjoined from bringing any claims against the Hale Related Parties without receiving any protections in exchange.

22

    **C.**    **The Plan's release and injunction provisions are not fair and equitable because they could impair coverage under the D&O Policies.**

60.    The D&O Policies obligate the FNHC Debtors, FNIC, and the D&Os to defend claims, cooperate with the D&O Insurance Carriers, not do anything to prejudice the D&O Insurance Carriers, and not agree to any settlement made without their D&O Insurance Carriers' prior written consent. In turn, the D&O Insurance Carriers have the right to investigate, defend, and settle any claims, and are not liable for any settlements made absent their prior written consent.

61.    The D&O Policies further obligate the FNHC Debtors, FNIC, and the D&Os to take all actions to preserve the D&O Insurance Carriers' subrogation rights. Further, the FNHC Debtors and FNIC agree to fulfill their indemnification obligations to the D&Os in any action by the D&O Insurance Carriers against the FNHC Debtors or FNIC for subrogation.

62.    During the August 29, 2023 hearing on confirmation procedures, counsel for the Committee stated, without explanation, that the D&Os were excluded from being beneficiaries of the release and injunction provisions because "it could adversely impact insurance coverage."

63.    Quite the opposite is true. If anything, adding the D&Os as beneficiaries would prohibit the creation of "claims" against the D&O Policies. And the release and injunction provisions could be construed by the D&O Insurance Carriers to violate the D&O Policies' duties to cooperate and not prejudice the D&O Insurance Carriers' position because they bind the FNHC Debtors and the D&Os to not sue third parties when the D&O Insurance Carriers have not consented to any such settlement. Further, the release and injunction provision release and enjoin parties who could be subject to the D&O Insurance Carriers' subrogation rights. Finally, the FNHC Debtors have abdicated their indemnification obligations.

8AO139503.DOCX

64.     Movants carefully crafted revisions to the Plan to address all of these issues, but the Plan Proponents did not include them in the Plan. It is therefore incumbent upon Movants to object to the Plan as its provisions potentially imperil coverage under the D&O Policies.

**D.     The Court lacks jurisdiction to approve the Plan's nonconsensual non-debtor release and injunction provisions.**

65.     As set forth above, the current law of the Eleventh Circuit allows nonconsensual non-debtor releases and injunctions under very limited circumstances not present in the release and injunction proposed by the Plan.[17]

66.     As this Court is undoubtedly aware, a bankruptcy court's ability to approve this type of release and injunction is up for review by the United States Supreme Court in *Harrington v. Purdue Pharma L.P.*, No. 23-124 (23A87), 2023 WL 5116031 (Aug. 10, 2023). The Supreme Court has stayed the bankruptcy proceedings (in which nonconsensual non-debtor releases were approved as part of the confirmed plan), and requested briefing on the following issue, which will be heard during the December 2023 oral argument session: "Whether the Bankruptcy Code authorizes a court to approve, as part of a plan of reorganization under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by nondebtors against nondebtor third parties, without the claimants' consent." *Id.*

67.     Given the Court's authority to approve the release and injunction requested by the Plan could soon be invalidated by the Supreme Court, Movants protectively contend that this Court lacks authority to confirm the Plan.

68.     The Court lacks subject matter jurisdiction to approve the nonconsensual release and injunction provisions because the non-debtors who benefit have no nexus to the FNHC

---

[17] But that could, however, be present if Movants were beneficiaries of the release and injunction provisions given their identity of interests with the FNHC Debtors via indemnity.

Debtors, and, therefore, these provisions have no conceivable effect on the estate. *See* 11 U.S.C. § 1334(b) (the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"); *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.").

69.    Again, *only the D&Os* being beneficiaries of the release and injunction presents the type of "effect on the estate" creating subject matter jurisdiction because of the FNHC Debtors' Indemnification Obligations to the D&Os. *See In Re Purdue Pharma L.P.*, 69 F.4th 45, 88, n.6 (2d Cir. 2023) (Wesley, J., concurring) (explaining the "possibility" of a non-debtor's successful claims for indemnification and contribution claims against the debtor "was enough to confer jurisdiction on the bankruptcy court" to enjoin third parties' claims against the non-debtor).

70.    Further, the Court lacks statutory authority to approve the release and injunction provisions.

71.    To be confirmed, a plan must comply with all provisions of the Bankruptcy Code, 11 U.S.C. § 1129(a)(1), and cannot include provisions "inconsistent" with the Bankruptcy Code, 11 U.S.C. § 1123(b)(6).

72.    "[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Section 524(e) therefore expressly excludes non-debtors from the type of discharge the Plan contemplates.

73.    Section 105(a)'s allowance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," does not displace the specific provisions of section 524(e). *In re Lowenschuss*, 67 F.3d 1394, 1402 (9th Cir. 1995); *In re W. Real Est. Fund,*

*Inc.*, 922 F.2d 592, 602 (10th Cir. 1990), *modified sub nom. Abel v. West*, 932 F.2d 898 (10th Cir. 1991).

74.     As the Supreme Court has explained, Bankruptcy Code sections 105, 1123, and 1129 "are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify *creditor-debtor relationships*." *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) (emphasis added) (determining bankruptcy court's authority to order the IRS to designate and apply the debtor's tax payments made under a plan of reorganization in a certain manner). The concurring opinion in the Second Circuit's *Purdue Pharma* decision explained that "any congressional grant of equitable authority to the bankruptcy court" should be understood with the purpose of adjusting the creditor-debtor relationship in mind, and thus, [r]eleasing nondebtors from their own liability—provided for under state law—over the objection of a claimholder and without compensating that claimholder is so far afield from that purpose." 69 F.4th at 89–90 (Wesley, J., concurring).

75.     Thus, because the Court lacks authority to approve the release and injunction provision, the Plan cannot be confirmed.

## **CONCLUSION**

Unless and until Movants are included within the protections of the release and injunction provisions of the Plan, the Plan is not confirmable as unfair and inequitable. Therefore, Movants respectfully request that the Court sustain this objection and deny confirmation of the Plan [ECF 567, 567-1–567-8, 661].

Dated: Tampa, Florida
September 27, 2023

BUSH ROSS, P.A.
Post Office Box 3913
Tampa, Florida 33601-3913
(813) 224-9255 (telephone)
(813) 223-9620 (fax)


By:___/s/ *Jeffrey W. Warren*_____
Jeffrey W. Warren, Esq.
Florida Bar No. 150024
*jwarren@bushross.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 27, 2023, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the forgoing document is being served this day on all parties registered to receive notifications in this case via transmission of Notice of Electronic Filing generated by CM/ECF. Finally, in accordance with the *Amended Order (I) Approving the Filing of a Combined Disclosure Statement and Chapter 11 Plan of Liquidation; (II) Approving on Interim Basis the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and its Debtor Affiliates as Containing Adequate Information for Solicitation Purposes, (III) Scheduling the Combined Hearing and Deadline for Filing Objections; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the First Amended Combined Disclosure Statement and Plan, and Approving the Form of Ballots and Solicitation Package; (V) Establishing Voting Record Date; and (VI) Approving the Notice Provisions* [ECF 630], I certify the foregoing document is being served on (i) the Debtors' counsel, Nelson Mullins Riley & Scarborough LLP, Shane G. Ramsey, 1222 Demonbreun Street, Suite 1700, Nashville, TN 37203, E-Mail: shane.ramsey@nelsonmullins.com; (ii) the Office of the United States Trustee for the Southern

District of Florida, (a) 51 SW First Avenue, Room 1204, Miami, FL 33130; and (b) J. Steven Wilkes, 501 East Polk Street, Suite 1200, Tampa, Florida 33602, E-Mail: Steven.Wilkes@usdoj.gov; and (iii) counsel to the Official Committee of Unsecured Creditors, (a) Bradford J. Sandler, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, E-Mail: bsandler@pszjlaw.com, and (b) Paul Labov, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, E-Mail: plabov@pszjlaw.com.

By: /s/ Jeffrey W. Warren
Jeffrey W. Warren, Esq.

8AK708803.DOCX

8AO139503.DOCX