

**ORDERED in the Southern District of Florida on October 16, 2023.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| FEDNAT HOLDING COMPANY, *et al*,[1] | Case No. 22-19451-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER (I) APPROVING THE FIRST AMENDED
COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN
ON A FINAL BASIS AND (II) CONFIRMING THE MODIFIED FIRST
AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN**

WHEREAS FedNat Holding Company, FedNat Underwriters, Inc., ClaimCor, LLC, Century Risk Insurance Services, Inc., and Insure-Link, Inc. (each a "Debtor" and collectively, the "Debtors"),[2] having:

---

[1] The Debtors in these chapter 11 cases are FedNat Holding Company; FedNat Underwriters, Inc. ("FNU"); ClaimCor, LLC ("Claimcor"); Century Risk Insurance Services, Inc. ("CRIS"); and Insure-Link, Inc. ("Insure-Link"). The Debtors' headquarters are located at 14050 N.W. 14th Street, Suite 180, Sunrise, Florida.

a.  commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court") on December 11, 2022 (the "Petition Date");

b.  filed, on December 11, 2022, the *Declaration of Katie S. Goodman, Chief Restructuring Officer of FedNat Holding Company, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [ECF No. 14];

c.  continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

d.  filed, on July 9, 2023, the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and Its Debtor Affiliates* [ECF No. 422];

e.  filed on July 9, 2023, *the Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of Order (I) Approving the Filing of a Combined Disclosure Statement and Chapter 11 Plan of Liquidation, (II) Approving on an Interim Basis the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and Its Debtor Affiliates; (III) Scheduling the Combined Hearing and Deadline for Filing Objections; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the First Amended Combined Disclosure Statement and Plan; (V) Establishing Voting Record Date; and (VI) Approving the Notice Provisions* [ECF No. 423] (the "Approval Motion") and a certificate of service of the Approval Motion on July 14, 2023 [ECF No. 443];

f.  filed on July 14, 2023, a notice of hearing with respect to the Approval Motion [ECF No. 441] and filed a certificate of service of such notice of hearing on July 20, 2023 [ECF No. 464];

g.  filed on July 25, 2023, an amended notice of hearing with respect to the Approval Motion [ECF No. 480] and filed a certificate of service of such amended notice on July 31, 2023 [ECF No. 492];

h.  filed on August 1, 2023, a joint reply [ECF No. 499] to the objection filed the United States Trustee [ECF No. 445] to the Approval Motion;

---

[2] Unless otherwise noted, capitalized terms not defined in this *Findings of Fact, Conclusions of Law, and Order (I) Approving the First Amended Disclosure Statement on a Final Basis and (II) Confirming the First Amended Combined Disclosure Statement and Chapter 11 Plan* (this "Confirmation Order") shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan (as defined herein).  The rules of interpretation set forth in Article I.B of the Combined Disclosure Statement and Plan shall apply to this Confirmation Order.

i.      filed on August 8, 2023 a supplemental reply [ECF No. 524] to the objection filed the United States Trustee [ECF No. 445] to the Approval Motion;

j.      filed on August 9, 2023, a joint motion to continue the hearing on the Approval Motion [ECF No. 530] and filed a certificate of service of such motion on August 11, 2023 [ECF No. 534];

k.      filed on August 10, 2023, a notice of continued hearing on the Approval Motion [ECF No. 533];

l.      filed on August 25, 2023 a *Notice of Filing of Revised Proposed Order (i) Approving the Filing of a Combined Disclosure Statement and Chapter 11 Plan of Liquidation, (II) Approving on an Interim Basis the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and Its Debtor Affiliates; (III) Scheduling the Combined Hearing and Deadline for Filing Objections; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the First Amended Combined Disclosure Statement and Plan; (V) Establishing Voting Record Date; and (VI) Approving the Notice Provisions* [ECF No. 566] and filed a certificate of service of such notice on August 29, 2023 [ECF No. 571];

m.      filed, on August 25, 2023, the *Notice of Filing of (i) First Amended Combined Disclosure Statement and Chapter 11 Plan; (ii) Revised Exhibits to the Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order Approving the Filing of a Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [ECF No. 567] and filed a certificate of service of such notice on August 29, 2023 [ECF No. 571];

n.      filed, on September 1, 2023*, the solicitation version of the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and Its Debtor Affiliates* [ECF No. 591] (as modified by the Plan Modifications (hereinafter defined), the "Combined Disclosure Statement and Plan") proposed jointly by the Debtors and the Official Committee of Unsecured Creditors (the "Committee," and together with the Debtors, the "Plan Proponents") [ECF No. 591];

o.      caused solicitation packages to be distributed to Holders of Claims entitled to vote on the Combined Disclosure Statement and Plan, in accordance with the Conditional Approval Order (as defined herein) [ECF No. 590], as evidenced by the filed certificate of service filed on September 13, 2023 [ECF No. 665];

p.      caused to be distributed to all applicable Holders of Claims and Interests entitled to vote on the Combined Disclosure Statement and Plan

(1) Combined Hearing Notice (as defined below) substantially in the form of Exhibit B to the Approval Motion, and (2) a form of Ballot substantially in the form of Exhibit D-1 to D-3 of the Approval Motion (the "Ballots") as set forth on the certificate of service filed on September 13, 2023 [ECF No. 665];

q.      served on all known creditors and equity security holders, the *Notice of (I) Approval of Interim Basis of First Amended Combined Disclosure Statement and Plan As Containing Adequate Information for Solicitation Purposes (II) Deadline for Casting Votes to Accept or Reject the First Amended Combined Disclosure Statement and Plan, and (III) the Combined Hearing to Consider (A) Final Approval of the Combined Disclosure Statement and Plan and (B) Confirmation of the First Amended Combined Disclosure Statement and Plan* substantially in the form attached as Exhibit B to the Approval Motion (the "Combined Hearing Notice") which notified parties of the time and date of the Confirmation Hearing, instructions on how to vote and how to obtain Ballots, and provided the full text of the release, injunction and exculpation provisions set forth in the Combined Disclosure Statement and Plan as set forth on the certificate of service filed on September 13, 2023 [ECF No. 665];

r.      served upon all Holders of Claims and Interests not entitled to vote on the Combined Disclosure Statement and Plan the *Notice of Non-Voting Status and Notice of (I) Approval on an Interim Basis of the First Amended Combined Disclosure Statement and Plan As Containing Adequate Information for Solicitation Purposes (II) the Combined Hearing to Consider (A) Final Approval of the Combined Disclosure Statement and Plan and (B) Confirmation of the First Amended Combined Disclosure and Plan and (III) Deadline to File Objections to Confirmation of Combined Disclosure Statement and Plan, and (IV) Deadline to Return Elections*, substantially in the form of Exhibit C to the Approval Motion (the "Non-Voting Status Notice") and which notice informed recipients of their status of Holders of Claims and Interest in non-voting classes, and provided the full text of the release, injunction and exculpation provisions as set forth in the Combined Disclosure Statement and Plan as set forth on the certificate of service filed September 13, 2023 [ECF No. 665];

s.      filed on September 12, 2023, *the Plan Supplement for the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and its Debtor Affiliates* [ECF No. 661] (the "Plan Supplement") as set forth on the certificate of service filed on September 13, 2023 [ECF No. 667];

t.      filed, on October 6, 2023, the *Declaration of Katie S. Goodman In Support of Confirmation of the Plan Proponents' Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code* [ECF No. 754] (the "Confirmation Declaration");

4

u.    filed on October 6, 2023 the *Declaration of Adam J. Fialkowski on Behalf of Stretto, Inc. Regarding Voting and Tabulation of Ballots Accepting and Rejecting the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company* [ECF No.752],

v.    filed, on October 6 2023, the *Memorandum of Law in Support of Confirmation of the Plan Proponents' Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [ECF No. 755] (the "Confirmation Brief"); together with Exhibits to the Confirmation Brief [ECF 756];

w.    filed on October 6, 2023, *the Certificate of Acceptance of Plan and Tabulation of Ballots Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees* [ECF 753]; and

x.    filed, on October 9, 2023, a proposed order confirming the Combined Disclosure Statement and Plan [ECF 769].

This Court having:

a.    entered, on September 1, 2023, the *Order (I) Approving the Filing of a Combined Disclosure Statement and Chapter 11 Plan of Liquidation (II) Approving on Interim Basis the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and Its Debtor Affiliates As Containing Adequate Information for Solicitation Purposes; (III) Scheduling the Combined Hearing and Deadline for Filing Objections; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the First Amended Combined Disclosure Statement and Plan, and Approving the Form of Ballots and Solicitation Package; (V) Establishing Voting Record Date; and (VI) Approving the Notice Provisions* [ECF No. 590] (the "Initial Conditional Approval Order");

b.    entered, on September 8, 2023, the *Amended Order (I) Approving the Filing of a Combined Disclosure Statement and Chapter 11 Plan of Liquidation; (II) Approving on Interim Basis the First Amended Combined Disclosure Statement and Chapter 11 Plan of FedNat Holding Company and Its Debtor Affiliates As Containing Adequate Information for Solicitation Purposes; (III) Scheduling the Combined Hearing and Deadline for Filing Objections; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the First Amended Combined Disclosure Statement and Plan, and Approving the Form of Ballots and Solicitation Package; (V) Establishing Voting Record Date; and (VI) Approving the Notice Provisions* [ECF No. 630] (the "Conditional Approval Order");

c.   set, *inter alia*, (1) September 27, 2023 at 4:00 (prevailing Eastern Time), as the deadline to file objections to the Combined Disclosure Statement and Plan; (2) October 2, 2023 at 4:00 (prevailing Eastern Time), as the voting deadline for Holders of Claims and Interest entitled to vote on the Combined Disclosure Statement and Plan to deliver Ballots pursuant to the terms of the Conditional Approval Order; and (3) October 10, 2023 at 10:00 a.m. (prevailing Eastern Time), as the hearing to consider both the final approval and confirmation of the Combined Disclosure Statement and Plan (the "Combined Hearing");[3]

d.   entered on October 3, 2023, the *Order Granting in Part and Denying in Part Motion of Present and Former Directors and Officers of Debtors Pursuant to Federal Rule of Bankruptcy Procedure 3018(a) to Allow Claims for Plan Voting Purposes and Joinders Thereto* [ECF 738] (the "Voting Purposes Order");

e.   entered on October 3, 2023, the *Order Regarding Plan Releases, Discharges, Injunctions, and Exculpations as to Non-Voting Present and Former Directors and Officers of Debtors* [ECF 739] (the "D&O Release Opt Out Order").

f.   reviewed the Combined Disclosure Statement and Plan, the Plan Supplement, proposed modifications to the First Amended Combined Disclosure Statement and Plan made at the Combined Hearing (the "Plan Modifications"), the Confirmation Brief and Exhibits, the Confirmation Declaration, the Voting Tabulation Declaration, and all pleadings, exhibits, statements, responses, and comments regarding final approval and confirmation of the Combined Disclosure Statement and Plan, including all objections, statements, and reservations of rights, if any, filed by parties-in-interest on the docket of the Chapter 11 Cases;

g.   held the Combined Hearing;

h.   heard the statements, arguments, and objections, if any, made in respect of final approval and confirmation of the Combined Disclosure Statement and Plan;

i.   considered all oral representations, testimony, documents, filings, and other evidence admitted in connection with final approval and confirmation of the Combined Disclosure Statement and Plan as modified by the Plan Modifications (the "Modified Combined Disclosure Statement and Plan"); and

---

[3] On August 11, 2023, the Court entered an order continuing the Combined Hearing to August 29, 2023 [ECF No. 535].

j.    overruled any and all objections, with prejudice, to final approval and confirmation of the Modified Combined Disclosure Statement and Plan, and all statements and reservations of rights not consensually resolved, adjourned to a subsequent hearing, or withdrawn unless otherwise indicated herein.

NOW, THEREFORE, the Court having found that notice of the Combined Hearing and the opportunity for any party-in-interest to object to final approval and confirmation of the Modified Combined Disclosure Statement and Plan have been adequate and appropriate as to all parties affected or to be affected by the Modified Combined Disclosure Statement and Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of final approval and confirmation of the Modified Combined Disclosure Statement and Plan, all evidence proffered or adduced by counsel at the Combined Hearing and the entire record of these Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.**    **Findings and Conclusions**

1.    The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.**    **Jurisdiction; Venue; Core Proceeding (28 U.S.C. § 1334(a))**

2.    The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  The Court has exclusive jurisdiction to enter a Final Order determining that the

Modified Combined Disclosure Statement and Plan, comply with all of the applicable provisions of the Bankruptcy Code and should be confirmed and approved. Venue is proper before the Court pursuant to 28 U.S.C. § 1408. Final approval and confirmation of the Modified Combined Disclosure Statement and Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2).

**C.     Eligibility for Relief**

3.     The Debtors are proper entities eligible for relief under section 109 of the Bankruptcy Code.

**D.     Chapter 11 Petitions**

4.     On the Petition Date, each Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On January 9, 2023, the Office of the United States Trustee for the Southern District of Florida appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") [ECF No. 92]. In accordance with the *Order Granting Motion for Joint Administration* [ECF No. 32], the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

**E.     Judicial Notice**

5.     The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**F.**     **Amended Interim Conditional Approval Order**

6.     On September 8, 2023, the Court entered the Conditional Approval Order,[4] which, among other things, fixed (i) September 27, 2023 at 4:00 p.m. (prevailing Eastern Time), as the deadline for objecting to the Combined Disclosure Statement and Plan (the "Objection Deadline"); and (ii) October 2, 2023 at 4:00 p.m. (prevailing Eastern Time) to cast votes to accept or reject the Combined Disclosure Statement and Plan with respect to holders of claims entitled to vote thereon (the "Voting Deadline").

**G.**     **Approval of Disclosure Statement As Containing Adequate Information**

7.     The Modified Combined Disclosure Statement and Plan is approved on a final basis.    The Modified Combined Disclosure Statement and Plan, together with the Plan Supplement, contain (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor. The filing of the Modified Combined Disclosure Statement and Plan and Plan Supplement with the clerk of the Court satisfied Bankruptcy Rule 3016(b), and the filing of the Modified Combined Disclosure Statement and Plan, as modified, for the Combined Hearing with the clerk prior to the entry of this Confirmation Order provides a single integrated Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and its Debtor Affiliates as proposed by the Plan Proponents.

---

[4] As noted above, the Court entered the Initial Conditional Approval Order on September 1, 2023.  The Court entered the Conditional Approval Order on September 8, 2023, to correct certain dates in paragraph 17 of the Initial Conditional Approval Order, to add deadlines for the filing of pre-confirmation of proofs of claim, and for Professionals to file applications for Accrued Professional Compensation.

8.     As evidenced by the certificates of service filed in these Chapter 11 Cases and the Voting Tabulation Declaration, the Debtors provided due, adequate, and sufficient notice of commencement of these Chapter 11 Cases, the Modified Combined Disclosure Statement and Plan (including the opportunity to opt out of the third-party release contained therein (the "Third-Party Release")), the Combined Hearing, the Plan Supplement, and all other materials distributed by the Debtors in connection with the Confirmation in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002, 3017, and 2019, the Bankruptcy Local Rules, and the procedures set forth in the Conditional Approval Order.  The foregoing notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Conditional Approval Order.  No other or further notice is or shall be required.

**H.     Solicitation**

9.     The Modified Combined Disclosure Statement and Plan, the Plan Supplement, the Ballots, the Combined Hearing Notice, the Non-Voting Status Notice, the joint solicitation cover letter, and the other materials distributed by the Debtors in connection with the solicitation of votes on, and Confirmation of the Modified Combined Disclosure Statement and Plan (collectively, the "Solicitation Materials") were transmitted and served in good faith and in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, and Local Rules 3017-1 and 3018-2.  The Solicitation Materials were transmitted to Holders of Claims as of August 3, 2023 (the "Voting Record Date") in accordance with the Conditional Approval Order.  Notice of the Combined Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases.  The transmittal and service of the Solicitation Materials complied with the Conditional Approval Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, were conducted in good faith, and were in compliance

10

with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient based upon the facts and circumstances of the Chapter 11 Cases and pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020. Local Rules 2002-1 and 3020-1, and other applicable law and rules, no other or further notice is necessary or shall be required and due, proper, timely and adequate notice of the Combined Hearing and Solicitation Materials has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

10.     The period during which the Plan Proponents solicited acceptances to the Modified Combined Disclosure Statement and Plan was a reasonable and adequate period of time and the manner of such solicitation was an appropriate process for creditors to have made an informed decision to vote to accept or reject the Modified Combined Disclosure Statement and Plan.

**I.      Voting Certifications**

**(i)      *Classes of Claims Entitled to Vote***

11.     On October 6, 2023, the Voting Tabulation Declaration was filed with the Court, certifying the method and results of the Ballots tabulated as set forth in the chart below for the Classes of Claims and Interests entitled to vote on the Modified Combined Disclosure Statement and Plan (the "Voting Classes"); and the Debtors being the holders of the FNU Stock Interests, the ClaimCor Stock Interest, the CRIS Stock Interests, and the Insure-Link Stock Interests having accepted the Plan as Plan Proponents.

| Voting Classes | Voting Result |
|---|---|
| **Debtor FNHC** | |

| | |
|---|---|
| Class 3 (Senior Notes Claims) | Accepts |
| Class 4 (FNHC General Unsecured Claims) | Accepts |
| **Debtor FNU**<br>Class 3 (FNU General Unsecured Claims)<br>Class 4 (FNU Stock Interests) | <br>Accepts<br>Accepts |
| **Debtor ClaimCor**<br>Class 3 (ClaimCor General Unsecured Claims)<br>Class 4 (ClaimCor Stock Interests) | <br>Accepts<br>Accepts |
| **Debtor CRIS**<br>Class 3 (CRIS General Unsecured Claims)<br>Class 4 (CRIS Stock Interests) | <br>Accepts<br>Accepts |
| **Debtor Insure-Link**<br>Class 3 (Insure-Link General Unsecured Claims)<br>Class 4 (Insure-Link Stock Interests) | <br>Accepts<br>Accepts |

12.     As evidenced by the Voting Tabulation Declaration, votes to accept or reject, or modify a prior vote with respect to, the Modified Combined Disclosure Statement and Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Conditional Approval Order.  The procedures used to tabulate Ballots were fair and conducted in accordance with the Conditional Approval Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

### (ii)     *Unimpaired Non-Voting Classes Deemed to Accept*

13.     As set forth in the Modified Combined Disclosure Statement and Plan, only Holders of Claims and Interests in the Voting Classes were eligible to vote on the Modified Combined Disclosure Statement and Plan.  Under section 1126(f) of the Bankruptcy Code, the Holders of Claims for the Classes set forth below are Unimpaired and are presumed to have

accepted the Modified Combined Disclosure Statement and Plan (collectively, the "<u>Unimpaired Non-Voting Classes</u>").

| Deemed to Accept Non-Voting Classes | |
|---|---|
| **Debtor FNHC**<br>Class 1 (FNHC Secured Claims)<br>Class 2 (FNHC Priority Claims) | Deemed to Accept<br>Deemed to Accept |
| **Debtor FNU**<br>Class 1 (FNU Secured Claims)<br>Class 2 (FNU Priority Claims) | Deemed to Accept<br>Deemed to Accept |
| **Debtor ClaimCor**<br>Class 1 (ClaimCor Secured Claims)<br>Class 2 (ClaimCor Priority Claims) | Deemed to Accept<br>Deemed to Accept |
| **Debtor CRIS**<br>Class 1 (CRIS Secured Claims)<br>Class 2 (CRIS Priority Claims) | Deemed to Accept<br>Deemed to Accept |
| **Debtor Insure-Link**<br>Class 1 (Insure-Link Secured Claims)<br>Class 2 (Insure-Link Priority Claims) | Deemed to Accept<br>Deemed to Accept |

### (iii) *Impaired Non-Voting Classes Deemed to Reject*

14.     Interests in the Classes set forth below are Impaired, deemed to reject the Modified Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code (collectively, the "<u>Impaired Non-Voting Classes</u>") and were not entitled to vote on the Modified Combined Disclosure Statement and Plan. Consequently, the Holders of such Interests are deemed to have rejected the Modified Combined Disclosure Statement and Plan.

| Impaired Non-Voting Classes Deemed to Reject | |
| --- | --- |
| **Debtor FNHC** | |
| Class 5 (FNHC Preferred Stock Interests) | Deemed to Reject |
| Class 6 (FNHC Common Stock Interests) | Deemed to Reject |

**J.    Plan Supplement**

15.    The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended pursuant to a filing with the Court), complies with the terms of the Modified Combined Disclosure Statement and Plan, and the Plan Proponents provided good and proper notice of its filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Conditional Approval Order, and all other applicable laws, rules, and regulations.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Modified Combined Disclosure Statement and Plan.  Subject to the terms of the Modified Combined Disclosure Statement and Plan, the Plan Proponents are authorized to alter, amend, update, modify, or supplement the Plan Supplement on or before the Effective Date.  The transmittal and notice of the Plan Supplement (and all documents identified therein) were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and were conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required.

**K.    Modifications to the Combined Disclosure Statement and Plan**

In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Modified Combined Disclosure Statement and Plan under section 1127 of the Bankruptcy Code, (b) cause the Modified Combined Disclosure Statement and Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially

or adversely affect or change the treatment of any Claims or Interests, (d) require re-solicitation of any Holders of Claims or Interests, or (e) require that any such Holders be afforded an opportunity to change previously cast acceptances or rejections of the Modified Combined Disclosure Statement and Plan.  Under the circumstances, the form and manner of notice of the Plan Modifications were adequate, and no other or further notice of the Plan Modifications is necessary or required.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or Interests that voted to accept the Combined Disclosure Statement and Plan or that are conclusively presumed to have accepted the Combined Disclosure Statement and Plan, as applicable, are deemed to have accepted the Modified Combined Disclosure Statement and Plan, as modified by the Plan Modifications.  No Holder of a Claim or Interest that has voted to accept the Combined Disclosure Statement and Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

## L.     Objections

16.     To the extent that any objections (whether formal or informal), reservations of rights, statements, or joinders with respect to the Modified Combined Disclosure Statement and Plan have not been adjourned, resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein, they are hereby overruled on the merits based on the record before the Court.

## M.     Burden of Proof

17.     The Plan Proponents have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Modified Combined Disclosure Statement and Plan.  In addition, and to the extent applicable, the Modified Combined Disclosure Statement and Plan is confirmable under the clear and convincing evidentiary standard.  Each

witness who testified or submitted a declaration on behalf of the Debtors, the Committee, or any other party, in support of confirmation of the Modified Combined Disclosure Statement and Plan, in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

**N.**   **Bankruptcy Rule 3016**

18.     The Modified Combined Disclosure Statement and Plan and all modifications thereto are dated and identify the Debtors and Committee as the proponents of the Modified Combined Disclosure Statement and Plan, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Modified Combined Disclosure Statement and Plan satisfied Bankruptcy Rule 3016(b). The release, injunction, and exculpation provisions of the Modified Combined Disclosure Statement and Plan are set forth in bold therein, thereby complying with Bankruptcy Rule 3016(c).

**O.**   **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))**

19.     The Modified Combined Disclosure Statement and Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code. More particularly:

> **(i)**     ***Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))***

20.     The classification of Claims and Interests under the Modified Combined Disclosure Statement and Plan is proper under the Bankruptcy Code. As required by section 1123(a)(1) of the Bankruptcy Code, other than Administrative Claims (including Accrued Professional Compensation Claims and Professional fee Claims and all fees and charges assessed against the Estates under chapter 123 of the Judicial Code) and Priority Tax Claims, which need not be classified, Article V of the Modified Combined Disclosure Statement and Plan designates: six (6) classes of Claims and Interests for Debtor FNH, and four (4) classes of Claims and

Interests for each of Debtors FNU, ClaimCor, CRIS and Insure-Link.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Modified Combined Disclosure Statement and Plan, the classifications were not implemented for improper purposes, and such Classes do not unfairly discriminate between or among Holders of Claims and Interests.  Thus, the Modified Combined Disclosure Statement and Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    <b>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</b>

21.    Article V of the Modified Combined Disclosure Statement and Plan specifies that Claims set forth in the chart below are Unimpaired under the Modified Combined Disclosure Statement and Plan, thereby satisfying the requirements of section 1123(a)(2) of the Bankruptcy Code.

| **Unimpaired Claims** |
| --- |
| **Debtor FNHC**<br>Class 1 (FNHC Secured Claims)<br>Class 2 (FNHC Priority Claims) |
| **Debtor FNU**<br>Class 1 (FNU Secured Claims)<br>Class 2 (FNU Priority Claims) |
| **Debtor ClaimCor**<br>Class 1 (ClaimCor Secured Claims)<br>Class 2 (ClaimCor Priority Claims) |
| **Debtor CRIS**<br>Class 1 (CRIS Secured Claims) |

| Class 2 (CRIS Priority Claims) |
| --- |
| **Debtor Insure-Link** |
| Class 1 (Insure-Link Secured Claims) |
| Class 2 (Insure-Link Priority Claims) |

### (iii)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))

22.    Article V of the Modified Combined Disclosure Statement and Plan specifies the treatment of Impaired Claims under the Modified Combined Disclosure Statement and Plan, in the chart set forth below, thereby satisfying the requirements of section 1123(a)(3) of the Bankruptcy Code.

| **Impaired Claims** |
| :--- |
| **Debtor FNHC** <br> Class 3 (Senior Notes Claims) <br> Class 4 (FNHC General Unsecured Claims) <br> Class 5 (FNHC Preferred Stock Interests) <br> Class 6 (FNHC Common Stock Interests) |
| **Debtor FNU** <br> Class 3 (FNU General Unsecured Claims) <br> Class 4 (FNU Stock Interests) |
| **Debtor ClaimCor** <br> Class 3 (ClaimCor General Unsecured Claims) <br> Class 4 (ClaimCor Stock Interests) |
| **Debtor CRIS** <br> Class 3 (CRIS General Unsecured Claims) <br> Class 4 (CRIS Stock Interests) |
| **Debtor Insure-Link** <br> Class 3 (Insure-Link General Unsecured Claims) <br> Class 4 (Insure-Link Stock Interests) |

### (iv)    No Discrimination (11 U.S.C. § 1123(a)(4))

23.    Article V of the Modified Combined Disclosure Statement and Plan provides the same treatment for each Claim or Interest within a particular Class except to the extent that a Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly, the Modified Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

(v)     **Adequate Means for Plan Implementation (11 U.S.C. § 1123(a)(5))**

24.     The Modified Combined Disclosure Statement and Plan and the various documents and agreements included in the Plan Supplement and/or entered into in connection with the Modified Combined Disclosure Statement and Plan, including Article VII of the Modified Combined Disclosure Statement and Plan, provide for adequate and proper means for the Modified Combined Disclosure Statement and Plan's execution and implementation. In addition, the Modified Combined Disclosure Statement and Plan and Plan Supplement provide for the establishment of the appointment of the Plan Administrator on the Effective Date, for the purpose of, *inter alia*, (a) investigating, prosecuting, settling, abandoning or compromising any causes of action; (b) making Distributions pursuant to the Modified Combined Disclosure Statement and Plan; (c) objecting to Claims; and (d) liquidating FedNat's Assets. Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

(vi)     **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))**

25.     The Modified Combined Disclosure Statement and Plan is a liquidating plan and does not provide for the issuance of non-voting equity securities. Accordingly, the Modified Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii)     **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))**

26.     Article VII.C of the Modified Combined Disclosure Statement and Plan provides that each existing member of the board of directors of the Debtors will be deemed to have resigned or been relieved as of immediately prior to the Effective Date automatically and without further action. On the Effective Date, the Plan Administrator shall succeed to such powers as would have been applicable to the Debtors' officers, directors and shareholders and Liquidating FedNat shall be authorized to be (and upon the conclusion of the Wind Down, shall be) dissolved

by the Plan Administrator.  All property of the Debtors' Estates not Distributed to the Holders of Claims or Interests on the Effective Date shall vest in Liquidating FedNat and shall be managed and Distributed by the Plan Administrator in accordance with the provisions of the Modified Combined Disclosure Statement and Plan.  Further, the Plan Proponents have disclosed in the Plan Supplement that Mr. Thomas A. Pitta has been proposed to serve as the Plan Administrator. The Modified Combined Disclosure Statement and Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

**P.**    **Discretionary Contents of the Plan (11 U.S.C. § 1123(b))**

27.    The Modified Combined Disclosure Statement and Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code.  Each such discretionary provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, the Modified Combined Disclosure Statement and Plan complies with section 1123(b).

> **(i)    Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1))**

28.    The Modified Combined Disclosure Statement and Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article V of the Modified Combined Disclosure Statement and Plan impairs or leaves unimpaired each Class of Claims and Interests.

> **(ii)    Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))**

29.    Article X of the Modified Combined Disclosure Statement and Plan provides that: (a) all Executory Contracts and Unexpired Leases listed in the Plan Supplement as Executory Contracts or Unexpired Leases to be assumed or are to be assumed pursuant to the terms of the Modified Combined Disclosure Statement and Plan, shall be deemed assumed by the applicable Debtor as of immediately prior to the Effective Date, and the entry of this Confirmation Order

shall constitute approval of any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code, and (b) the Modified Combined Disclosure Statement and Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases not listed as assumed Executory Contracts or Unexpired Leases in the Plan Supplement and which were not previously rejected or assumed by separate court order, and neither the Debtors nor Liquidating FedNat shall have no further liability thereunder except with respect to Claims created by such rejection as set forth in Article X.B. of the Modified Combined Disclosure Statement and Plan. The entry of this Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### (iii) Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))

30.    The Modified Combined Disclosure Statement and Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Modified Combined Disclosure Statement and Plan, including the releases set forth in Article XII thereof, except as stated otherwise in the Modified Combined Disclosure Statement and Plan or this Confirmation Order, the provisions of the Combined Disclosure Statement and Plan and this Confirmation Order shall constitute a good faith compromise and settlement of all Claims, any Interests pursuant to Section XII.A of the Modified Combined Disclosure Statement and Plan, and such compromises and settlements are fair, equitable, and reasonable and in the best interests of the Debtors and their Estates.

31.    Subject to the exceptions established by the D&O Release Opt Out Order and other controlling provisions of this Confirmation Order protecting the rights of the D&Os who were deemed to have elected out of, not granted, and not been bound by the releases, discharges,

injunctions, and exculpation provisions proposed in the Combined Disclosure Statement and Plan, but are now included as Exculpated Parties in the exculpation provisions in the Modified Combined Disclosure Statement and Plan, the releases of the Released Parties denoted in Section I.A. 124 of the Modified Combined Disclosure Statement and Plan consisting of: (a) the Debtors; (b) the Senior Notes Indenture Trustee; (c) the Committee; (d) the Hale Related Parties; and (e) with respect to each such Person or Entity in the foregoing clauses (a) and (d), such Entity's managers, managing members, principals, partners, members, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Representatives, are an integral component of the settlements and compromises embodied in the Modified Combined Disclosure Statement and Plan.  The Released Parties: (a) made substantial and valuable contributions to the Debtors and the Estates, including through extensive negotiations with various stakeholders, in order to effectuate and consummate the Insure-Link Sale, and FNU Sale; (b) invested significant time and effort to enable the successful sale of the Debtors' assets and preserve the value of the Debtors' Estates in a challenging operating environment; (c) engaged in and facilitated settlement negotiations and decisions on behalf of the Debtors which resulted in  the Hale Settlement; and (d) played an active role in the formulation of the Plan and undertook significant time and expense reviewing the terms of the Plan and negotiating with the Plan Proponents in order to achieve language that was acceptable to most stakeholders.  The releases of the Released Parties contained in the Modified Combined Disclosure Statement and Plan have the consent of the Debtors and the Releasing Parties and are in the best interests of the Estates.

(iv)    <strong>Debtor Releases</strong>

32.    Subject to the exceptions established by the D&O Release Opt Out Order and other controlling provisions of this Confirmation Order protecting the rights of the D&Os who

were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and exculpation provisions proposed in the Combined Disclosure Statement and Plan, but are now included as Exculpated Parties in the exculpation provisions in the Modified Combined Disclosure Statement and Plan, the releases of the Debtor Released Claims by the Debtors described in Article XII.B of the Modified Combined Disclosure Statement and Plan (the "Debtor Releases") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019. The Debtor Releases are fair and equitable and in accordance with section 1123(b) of the Bankruptcy Code.

33. The Debtor Releases are an integral part of the Modified Combined Disclosure Statement and Plan and are in the best interests of the Debtors' Estates as a component of the settlement implemented under the Modified Combined Disclosure Statement and Plan. The probability of success in litigation with respect to the released Debtor Released Claims, when weighed against the costs, supports the Debtor Releases. The Modified Combined Disclosure Statement and Plan, including the Debtor Releases, was negotiated by sophisticated parties represented by able counsel and advisors, including the Debtors and the Committee. The Debtor Releases are therefore the result of a hard fought and arm's-length negotiation conducted in good faith.

34. The Debtor Releases of the Debtor Released Claims appropriately offers protection to parties that contributed to the success of the Debtors' Chapter 11 Cases, including, *inter alia*, the Insure-Link Sale, FNU Sale, and Hale Settlement. Each of the Released Parties made significant concessions in and contributions to these Chapter 11 Cases, and have provided other valuable consideration to the Debtors to accomplish the results achieved in these Chapter 11 Cases, confronting novel challenges and facing unique risks, as they worked to negotiate a

resolution with various stakeholders to support the Plan, the sale of the various businesses and beginning to liquidate the Debtors on an expedited basis. Such services were necessary for the Debtors to conduct their Chapter 11 Cases and be in the position to propose the Plan for creditor approval and confirmation. In addition, this set of Released Parties worked under truly extraordinarily tight timeframes to fulfill all of the other obligations of the Debtors under the Bankruptcy Code, Bankruptcy Rules, Local Rules of this Court and various orders entered by the Court.

35.     The limited scope of the Debtor Releases applicable to the Debtor Released Claims and only for the benefit of the Released Parties, is appropriately tailored to the facts and circumstances of the Chapter 11 Cases.  The Debtor Releases are appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical importance of the Debtor Releases to the Modified Combined Disclosure Statement and Plan.

(v)     **Third-Party Release**

36.     Subject to the exceptions established by the D&O Release Opt Out Order and other controlling provisions of this Confirmation Order protecting the rights of the D&Os who were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and exculpation provisions proposed in the Combined Disclosure Statement and Plan, but are now included as Exculpated Parties in the exculpation provisions in the Modified Combined Disclosure Statement and Plan, the Third-Party Release set forth in Section XII.C of the Modified Combined Disclosure Statement and Plan is an essential provision of the Modified Combined Disclosure Statement and Plan and is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Third Party Released Claims released thereby; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders; (d) critical to the overall success of

the Modified Combined Disclosure Statement and Plan; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

37.     The Third-Party Release is an integral part of the Modified Combined Disclosure Statement and Plan.  Like the Debtor Releases, the Third-Party Release facilitated participation of critical parties-in-interest in both the plan process and the chapter 11 process generally.  The Third-Party Release was critical to incentivizing parties-in-interest to support the Modified Combined Disclosure Statement and Plan by providing critical concessions and funding, and to preventing costly and time-consuming litigation regarding various parties' respective rights and interests.  The Third-Party Release was instrumental in developing a plan that maximized value for all of the Debtors' stakeholders.  The Third-Party Release is designed to provide finality for the Debtors, the Committee, Liquidating FedNat, the Plan Administrator, and the Released Parties.  As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' Chapter 11 Cases.

38.     The Third-Party Release is consensual. The Modified Combined Disclosure Statement and Plan provide appropriate and specific disclosure with respect to the Third Party Released Claims that are subject to the Third-Party Release and no additional disclosure is necessary.  As evidenced by the Voting Tabulation Declaration, the Plan Proponents provided actual notice to all known parties-in-interest, including all known Holders of Claims and Interests, and no further or other notice is necessary.  Additionally, the release provisions of the Modified Combined Disclosure Statement and Plan were conspicuous, emphasized with boldface type in the Modified Combined Disclosure Statement and Plan, and included in the Ballots, and

applicable notices.  The parties who opt-ed out of the Third-Party Release set forth on **Exhibit 3**

to this Order are not bound by the Third-Party Release.[5]

39.     The Third Party Release is limited to the Third Party Released Claims and only

for the benefit of the Released Parties, and is subject to the exceptions established by the D&O

Release Opt Out Order and other controlling provisions of this Confirmation Order protecting

the rights of the D&Os who were deemed to have elected out of, not granted, and not been bound

by the releases, discharges, injunctions, and exculpation provisions proposed in the Combined

Disclosure Statement and Plan, but are now included as Exculpated Parties in the exculpation

provisions in the Modified Combined Disclosure Statement and Plan. The limited scope of the

Third-Party Release is appropriately tailored to the facts and circumstances of these Chapter 11

Cases, as it explicitly does not provide a release for (i) any Causes of Action of any Releasing

Party arising from any act or omission of a Released Party that constitutes fraud, gross

negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the

Modified Combined Disclosure Statement and Plan or any document, instrument, or agreement

executed in connection with the Modified Combined Disclosure Statement and Plan; (iii) any

Causes of Action against any insurer arising out of or relating to matters for which the Debtors

would otherwise be liable or suffer an insurable loss, including without limitation, any Causes of

Action against any D&O Insurance Carrier; (iv) any claims of the Debtors, FNIC, or the DFS

Receiver against any D&O; (v) any Insurance Causes of Action; (vi) any claims or Causes of

---

[5] The D&O Release Opt Out Order confirms that the D&Os were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and exculpation provisions proposed in the Combined Disclosure Statement and Plan. While Ballots opting out of the releases, discharges, injunctions, and exculpation provisions in the Combined Disclosure Statement Plan were submitted by D&Os David Patterson, Bruce Simberg, Jenifer Kimbrough, Thomas Rogers, David Michelson, Roberta Young, Erick A. Fernandez, Brian S. Gardner, James Gordon Jennings, III, Douglas Raucy, and Michael H. Braun, only those temporarily allowed for voting purposes in the Voting Purposes Order are reflected in Exhibit 3. After Ballots were submitted, the Plan Modifications added the D&Os to the Exculpated Parties and confirmed the D&Os were deemed to have elected out of, not granted, and not been bound by the releases, discharges, and injunctions in the Modified Combined Disclosure Statement and Plan.

Action that the Receiver may hold concerning the Tax Allocation Agreement, the Tax Refund Dispute, or the Tax Refund(s); or (vii) any Retained Causes of Action and any claims, rights, damages, or remedies with respect to any such Retained Causes of Action.

40.     In light of, among other things, the consensual nature of the Third-Party Release, the critical role of the Third-Party Release in obtaining the requisite support of the Debtors' stakeholders needed to confirm the Modified Combined Disclosure Statement and Plan, and the significant value provided by the Released Parties to the Debtors' Estates, the Third-Party Release is appropriate.

### (vi)     Exculpation

41.     The exculpation provisions set forth in Article XII.D of the Modified Combined Disclosure Statement and Plan are essential to the Modified Combined Disclosure Statement and Plan, appropriate under applicable law, and constitute a proper exercise of the Debtors' business judgment.  The exculpation provisions were proposed in good faith, were formulated following extensive, good faith, arm's-length negotiations with key constituents, and are appropriately limited in scope to achieve the overall purpose of the Modified Combined Disclosure Statement and Plan.  Each Exculpated Party made significant contributions to the Chapter 11 Cases, including with respect to the negotiation and implementation of the Insure-Link Sale and FNU Sale and Settlement Agreement.  The Exculpated Parties have, and upon Consummation of the Modified Combined Disclosure Statement and Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Modified Combined Disclosure Statement and Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Modified Combined Disclosure Statement and Plan or such distributions made

pursuant to the Modified Combined Disclosure Statement and Plan.  The exculpation provisions are limited and do not (i) exculpate or release any Exculpated Party from anything other than as provided in Section XII.D of the Modified Combined Disclosure Statement and Plan; (ii) prevent or limited the ability of the Debtors or the Plan Administrator to object to a Claim of an Exculpated Party on any basis other than matters exculpated or released in that section, (iii) exculpate or release any Exculpated Party, Person, or Entity from any Insurance Causes of Action; (iv) exculpate or release any Exculpated Party, Person, or Entity from any claims or Causes of Action that the Receiver may hold concerning the Tax Allocation Agreement, the Tax Refund Dispute, or the Tax Refund(s); (v) exculpate or release any Exculpated Party from any Retained Causes of Action any claims, rights, damages, or remedies with respect to any such Retained Causes of Action; or (vi) prevent or limit the ability of the Debtors or the Plan Administrator to object to, or defend against, on any basis, or any Administrative Claim of an Exculpated Party for substantial contribution.

42.    The record in the Chapter 11 Cases fully supports the exculpation provisions, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation arising from their participation in the Chapter 11 Cases and are consistent with the Bankruptcy Code and applicable law. Therefore, the exculpation provisions shall be, and hereby are, approved and authorized in their entirety.

**(vii)    Injunction**

43.    The injunction provisions set forth in Article XII.E of the Modified Combined Disclosure Statement and Plan are essential to the Combined Disclosure Statement and Plan and are necessary to implement, preserve, and enforce the release, and exculpation provisions of the Modified Combined Disclosure Statement and Plan.  The injunction provisions are appropriately tailored to achieve those purposes, and are subject to the exceptions established by the D&O

Release Opt Out Order and other controlling provisions of this Confirmation Order protecting the rights of the D&Os who were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and exculpation provisions proposed in the Combined Disclosure Statement and Plan, but are now included as Exculpated Parties in the exculpation provisions in the Modified Combined Disclosure Statement and Plan.

### (viii)    Preservation of Claims and Causes of Action

44.    The provisions set forth in Article XII.H of the Modified Combined Disclosure Statement and Plan regarding the vesting and preservation of Retained Causes of Action in the Modified Combined Disclosure Statement and Plan are appropriate and are in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.  Each Debtor, Liquidating FedNat, and the Plan Administrator, on behalf of Liquidating FedNat, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Modified Combined Disclosure Statement and Plan to the contrary.

### (ix)    Other Appropriate Provisions (11 U.S.C. § 1123(b)(6))

45.    The Modified Combined Disclosure Statement and Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Claims and treatment of Interests, (b) allowance of certain Claims, (c) preservation of insurance, (d) the approval of Plan Administrator Agreement, and (e) retention of Court jurisdiction, thereby satisfying the requirements of section 1123(b)(6) of the Bankruptcy Code.

**Q.**     **Cure of Defaults (11 U.S.C. § 1123(d))**

46.     The Debtors are not in default of any of the executory contracts listed on Exhibit A to the Plan Supplement.

**R.**     **Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

47.     The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

48.     The Plan Proponents solicited votes to accept or reject the Modified Combined Disclosure Statement and Plan and after the Court conditionally approved the adequacy of the Combined Disclosure Statement and Plan, pursuant to section 1125(a) of the Bankruptcy Code and the Conditional Approval Order.

49.     Each of the Plan Proponents solicited and tabulated votes on the Modified Combined Disclosure Statement and Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Conditional Approval Order, the Modified Combined Disclosure Statement and Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and consummation of the Modified Combined Disclosure Statement and Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, the exculpation provisions set forth in Article XII.D of the Modified Combined Disclosure Statement and Plan, and all other protections and rights provided in the Modified Combined Disclosure Statement and Plan.

50.     So long as the distribution of recoveries under the Modified Combined Disclosure Statement and Plan are made pursuant to, and in compliance with, the Modified Combined Disclosure Statement and Plan, the Plan Proponents, will have participated in such distribution of recoveries in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, therefore, are not, and will not be, on account of such distributions, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Combined Disclosure Statement and Plan or distributions made thereunder.

## S.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

51.     The Plan Proponents have proposed the Modified Combined Disclosure Statement and Plan (including the Plan Supplement and all other documents necessary or appropriate to effectuate the Modified Combined Disclosure Statement and Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.   In determining that the Modified Combined Disclosure Statement and Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Modified Combined Disclosure Statement and Plan itself, the process leading to its formulation, the process leading to Confirmation, the support of Holders of Claims in the Voting Classes for the Modified Combined Disclosure Statement and Plan, and the transactions to be implemented pursuant thereto.   The Plan Proponents' good faith is evident from the facts and record of the Chapter 11 Cases, the Modified Combined Disclosure Statement and Plan, the hearing to conditionally approve the Modified Combined Disclosure Statement and Plan, and the record of the Combined Hearing and other proceedings held in the Chapter 11 Cases.   The Modified Combined Disclosure Statement and Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates.   Further, the Modified

Combined Disclosure Statement and Plan's classification, indemnification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), and 1129 of the Bankruptcy Code, and each is integral to the Modified Combined Disclosure Statement and Plan, supported by valuable consideration, and necessary to the successful confirmation and consummation of the Modified Combined Disclosure Statement and Plan.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**T.**     **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**

52.     Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Modified Combined Disclosure Statement and Plan and incident to the Chapter 11 Cases, has been approved by or is subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**U.**     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))**

53.     The identity and proposed compensation of the Plan Administrator has been disclosed in the Plan Supplement.  Mr. Thomas Pitta is the initial Plan Administrator.  Mr. Pitta is qualified, and his appointment as Plan Administrator to implement and perform under the terms of the Plan Administrator Agreement is consistent with the interests of the Holders of Claims and Interests and with public policy.  Accordingly, the Modified Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**V.**     **No Rate Changes (11 U.S.C. § 1129(a)(6))**

54.     Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Modified Combined Disclosure Statement and Plan does not provide for any rate change over which a governmental regulatory commission has jurisdiction.

**W.**     **Best Interests of Holders of Claims and Interests (11 U.S.C. § 1129(a)(7))**

55.    The Modified Combined Disclosure Statement and Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached as Exhibit C to the Modified Combined Disclosure Statement and Plan and the other evidence related thereto in support of Confirmation that was presented, proffered, or adduced at or prior to the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses and evidence were prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest either has accepted the Modified Combined Disclosure Statement and Plan or will receive or retain under the Modified Combined Disclosure Statement and Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

**X.**     **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**

56.    Each of the members in the Unimpaired Non-Voting Classes are Unimpaired by the Modified Combined Disclosure Statement and Plan under section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims in such Classes are conclusively presumed to have accepted the Modified Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code.  Each of the members of the Voting Classes are Impaired by the Modified Combined Disclosure Statement and Plan and have voted to accept the plan.  The Interests in the Impaired Non-Voting Classes are presumed to have rejected the Modified Combined Disclosure Statement and Plan were not entitled to vote thereon.  Notwithstanding the foregoing, the Modified Combined Disclosure Statement and Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**Y.      Treatment of Claims Entitled to Priority Under Section 507 of the Bankruptcy Code (11 U.S.C. § 1129(a)(9))**

57.     The treatment of Allowed Administrative Claims and Allowed Priority Tax Claims, pursuant to Article IV of the Modified Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**Z.      Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))**

58.     The Modified Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.   As evidenced by the Voting Tabulation Declaration an Impaired Class of Claims of each Debtor voted to accept the Modified Combined Disclosure Statement and Plan by the requisite numbers and amounts of Claims, as determined without including any acceptance of the Modified Combined Disclosure Statement and Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**AA.     Feasibility (11 U.S.C. § 1129(a)(11))**

59.     The Modified Combined Disclosure Statement and Plan is a plan of liquidation. The information contained in the Modified Combined Disclosure Statement and Plan, and the evidence that was proffered or adduced at or prior to the Combined Hearing: (a) are reasonable, persuasive, and credible; (b) have not been rebutted by other evidence; (c) utilize reasonable and appropriate methodologies and assumptions; (d) establish that the Modified Combined Disclosure Statement and Plan is feasible and that there is a reasonable prospect of Liquidating FedNat being able consummate the transactions provided under the Modified Combined Disclosure Statement and Plan, and that Confirmation of the Modified Combined Disclosure Statement and Plan is not likely to be followed by further liquidation (other than the liquidation contemplated under the Modified Combined Disclosure Statement and Plan) or the need for any financial reorganization of the Debtors or any successor to the Debtors under the Modified

Combined Disclosure Statement and Plan; and (e) establish that the Debtors will have sufficient funds available to meet their obligations under the Modified Combined Disclosure Statement and Plan. Accordingly, the Modified Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**BB.    Payment of Fees (11 U.S.C. § 1129(a)(12))**

60.    As set forth in Article XIV.A of the Modified Combined Disclosure Statement and Plan, all fees and charges assessed against the Debtor under chapter 123 of the Judicial Code that are due and payable prior to the Effective Date shall be paid by the Debtors. Amounts due thereafter shall be paid by Liquidating FedNat until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Accordingly, the Modified Combined Disclosure Statement and Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**CC.    Retiree Benefits (11 U.S.C. § 1129(a)(13))**

61.    The Debtors do not have any retiree benefits. Therefore, section 1129(a)(13) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

**DD.    Non-Applicability of Certain Sections (11 U.S.C. § 1129(a)(14), (15), and (16)**

62.    The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

**EE.    "Cram Down" Requirements (11 U.S.C. § 1129(b))**

63.    Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Modified Combined Disclosure Statement and Plan may be confirmed despite the fact that the Impaired Non-Voting Classes are each deemed to have rejected the Combined Disclosure Statement and Plan because

the Modified Combined Disclosure Statement and Plan meets the "cramdown" requirements for confirmation under section 1129(b) of the Bankruptcy Code.

64. To the extent the requirements of section 1129(a)(8) of the Bankruptcy Code may not have been met with respect to the Impaired Non-Voting Classes, the Modified Combined Disclosure Statement and Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code because the Debtors have demonstrated by a preponderance of the evidence that the Modified Combined Disclosure Statement and Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" pursuant to section 1129(b)(1) and is "fair and equitable" pursuant to section 1129(b)(2), with respect to each of the Impaired Non-Voting Classes. Based upon the evidence proffered, adduced, and presented by the Debtors prior to or at the Combined Hearing, the Modified Combined Disclosure Statement and Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and 1129(b)(2) of the Bankruptcy Code. The Modified Combined Disclosure Statement and Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding any rejection or deemed rejection, as applicable, of the Modified Combined Disclosure Statement and Plan by the Impaired Non-Voting Classes.

**FF.    Only One Plan (11 U.S.C. § 1129(c))**

65. The Modified Combined Disclosure Statement and Plan is the only plan filed in the Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**GG.    Principal Purpose of the Plan (11 U.S.C. § 1129(d))**

66. The principal purpose of the Modified Combined Disclosure Statement and Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

**HH.**  **Not Small Business Cases (11 U.S.C. § 1129(e))**

67.    These Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**II.**  **Satisfaction of Confirmation Requirements**

68.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Modified Combined Disclosure Statement and Plan satisfies all the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**JJ.**  **Plan Implementation**

69.    The terms of the Modified Combined Disclosure Statement and Plan, including the Plan Supplement, and all exhibits and schedules thereto, and all other agreements, instruments, or other documents filed in connection with the Modified Combined Disclosure Statement and Plan, and/or executed or to be executed in connection with the transactions contemplated by the Modified Combined Disclosure Statement and Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Modified Combined Disclosure Statement and Plan governing such amendments and modifications (collectively, and as each may be amended, supplemented, or modified, the "Plan Documents"), are incorporated by reference, are approved in all respects, and are non-severable from, mutually dependent on and constitute an integral part of this Confirmation Order.  The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been negotiated in good faith and at arm's length, are fair and reasonable, and are reaffirmed and approved.

70.     The terms of the Modified Combined Disclosure Statement and Plan, the Plan Supplement and all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date (unless different date(s) is/are specified in the applicable foregoing documents, in which case the applicable terms shall be effective and binding on such date(s)) on the Debtors and any Holder of a Claim or Interest (whether or not the Claim or Interest is Impaired under the Modified Combined Disclosure Statement and Plan and whether or not the Holder of such Claim or Interest has accepted the Modified Combined Disclosure Statement and Plan), and any other party in interest.

**KK.    Binding and Enforceable**

71.     The Modified Combined Disclosure Statement and Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any and all Holders of Claims and Interests and each such Holder's respective agents, successors, and assigns (whether or not the Claim and Interest is Impaired under the Modified Combined Disclosure Statement and Plan, whether or not such Holder has accepted or rejected the Modified Combined Disclosure Statement and Plan, and whether or not such Holder is entitled to a distribution under the Modified Combined Disclosure Statement and Plan), all Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Modified Combined Disclosure Statement and Plan, each Entity acquiring property under the Modified Combined Disclosure Statement and Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.  The Modified Combined Disclosure Statement and Plan constitutes legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Modified Combined Disclosure Statement and

Plan, and Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  The Plan Proponents are authorized to take any action reasonably necessary or appropriate to consummate the Modified Combined Disclosure Statement and Plan and the transactions described in, contemplated by, or necessary to effectuate the Modified Combined Disclosure Statement and Plan.

**LL.**   **Executory Contracts and Unexpired Leases**

72.   The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code.  Each assumption of an Executory Contract or Unexpired Lease pursuant to Article X.A. of the Modified Combined Disclosure Statement and Plan and designated pursuant to the Plan Supplement shall be legal, valid, and binding upon the Debtors or Liquidating FedNat, as applicable, and their successors and assigns and each non-Debtor party and its successors and assigns to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.  Except as set forth in separate orders entered by the Court relating to assumption of Executory Contracts or Unexpired Leases, the Debtors have cured or provided adequate assurances that the Debtors or Liquidating FedNat, as applicable, will cure defaults (if any) under or relating to each Executory Contract and Unexpired Lease assumed under the Modified Combined Disclosure Statement and Plan, except where objections related to cure amounts have been adjourned to a subsequent hearing.  The rejection of all Executory Contracts and Unexpired Leases not previously assumed and not designated for assumption assumed pursuant to the Plan Supplement is a proper exercise of the Debtors' business judgment because, among other things, the Debtors' Chapter 11 Cases are liquidating cases, and the rejection of the Executory Contracts and Unexpired Leases is

appropriate under the circumstances and in light of the purpose of and transactions contemplated under the Modified Combined Disclosure Statement and Plan.

**MM.    Disclosure of Facts**

73.    The Plan Proponents have disclosed all material facts regarding the Modified Combined Disclosure Statement and Plan, and the adoption, execution, and implementation of the other matters provided for under the Modified Combined Disclosure Statement and Plan involving corporate action to be taken by or required of the Debtors.

**NN.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

74.    Each of the conditions precedent to the Effective Date, as set forth in Article XI.B of the Modified Combined Disclosure Statement and Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article XI.C of the Modified Combined Disclosure Statement and Plan.

**OO.    Good Faith**

75.    The Plan Proponents have proposed the Modified Combined Disclosure Statement and Plan with the legitimate and honest purpose of maximizing the value of each of the Debtors' Estates for the benefit of their stakeholders.  Accordingly, the Plan Proponents (including all of their respective Representatives) have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Modified Combined Disclosure Statement and Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Modified Combined Disclosure Statement and Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

## **ORDER**

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

76.     <u>Disclosure Statement Containing Adequate Information</u>.     The Modified Combined Disclosure Statement and Plan, including the Plan Supplement, are approved on a final basis pursuant to section 1125 of the Bankruptcy Code.

77.     <u>Confirmation</u>.  The Modified Combined Disclosure Statement and Plan attached hereto as **<u>Exhibit 1</u>**, and each of its provisions are confirmed pursuant to section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Modified Combined Disclosure Statement and Plan, including the Plan Supplement and other Plan Documents, are hereby authorized and approved.  The terms of the Modified Combined Disclosure Statement and Plan and the Plan Supplement are incorporated herein by reference and are an integral part of this Confirmation Order.  The Plan Administrator, on behalf of Liquidating FedNat, and the Debtors, as applicable, is or are authorized to implement and consummate the Modified Combined Disclosure Statement and Plan, the Plan Supplement, and the other Plan Documents, including taking all actions necessary, advisable, or appropriate to finalize the Plan Documents and to effectuate the Modified Combined Disclosure Statement and Plan and the transactions contemplated thereby, without any further authorization or action by any person, body, or board of directors.  The terms of the Modified Combined Disclosure Statement and Plan (including all consent rights provided therein), the Plan Supplement, all exhibits and attachments thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date on all parties-in-interest, including Liquidating FedNat and all Holders of Claims and Interests. Any amendments or modifications to the Modified Combined Disclosure Statement and Plan described or set forth in this Confirmation Order are hereby approved, without further order of this Court.  All Holders of Claims and Interests that voted to accept or who were deemed to have

accepted the Modified Combined Disclosure Statement and Plan are conclusively presumed to have accepted the Modified Combined Disclosure Statement and Plan as it may have been amended or modified by the foregoing.  The failure to specifically describe, include, or refer to any particular article, section, or provision of the Modified Combined Disclosure Statement and Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof, it being the intent of this Court that the Modified Combined Disclosure Statement and Plan is confirmed in its entirety and incorporated herein by reference.

78.    <u>Headings</u>.  Headings utilized herein are for convenience and reference only and do not constitute a part of the Modified Combined Disclosure Statement and Plan or this Confirmation Order for any other purpose.

79.    <u>Objections</u>.  All objections to Confirmation of the Modified Combined Disclosure Statement and Plan or final approval under 11 U.S.C. § 1125 of the Modified Combined Disclosure Statement and Plan, and other responses, comments, statements, or reservation of rights, if any, in opposition to the Modified Combined Disclosure Statement and Plan or final approval of the Modified Combined Disclosure Statement and Plan have been overruled in their entirety to the extent such objections are not addressed by the Plan Modifications, and on the merits to the extent not otherwise adjourned to a subsequent hearing, withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order, unless otherwise indicated herein.  All withdrawn objections, if any, are deemed withdrawn with prejudice.

80.    <u>Plan Classification Controlling</u>.  The terms of the Modified Combined Disclosure Statement and Plan shall govern the classification of Claims and Interests for purposes of the

distributions to be made thereunder.  All rights of the Debtors, Liquidating FedNat, and the Plan Administrator to seek to reclassify Claims and/or Interests are expressly reserved.

81.    <u>No Action</u>.  Pursuant to section 1142(b) of the Bankruptcy Code and applicable nonbankruptcy law, (a) no action of the respective directors, managers, members, stockholders, or other equity holders of the Debtors, as applicable, shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Modified Combined Disclosure Statement and Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Modified Combined Disclosure Statement and Plan, including any Plan Document, and (b) to the extent the Debtors determine any Person or Entity is a necessary party to execute and deliver or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Modified Combined Disclosure Statement and Plan, or perform any other act in furtherance of the transactions contemplated by the Modified Combined Disclosure Statement and Plan, and such Person or Entity is so informed by the Debtors, then such Person or Entity is directed to take such steps as necessary to comply with the foregoing and section 1142(b) of the Bankruptcy Code.

82.    <u>Governmental Approvals</u>.  Except as otherwise set forth herein, this Confirmation Order constitutes all approvals and consents required, if any, by the laws, rules, or regulations of any State or any other governmental authority with respect to the implementation and consummation of the Modified Combined Disclosure Statement and Plan and the Plan Documents and any other acts that may be necessary or appropriate for the implementation or consummation of the Modified Combined Disclosure Statement and Plan or the Plan Documents

to the fullest extent permitted by law and nothing herein to the contrary shall diminish the authority of section 1142 of the Bankruptcy Code.

83.    <u>Plan Supplement</u>.  The documents (including any term sheets) contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Combined Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtors and Liquidating FedNat, are authorized when they are finalized, executed, and delivered.    Without further order or authorization of this Court, subject to the consent and approval rights of applicable parties set forth in the Modified Combined Disclosure Statement and Plan, the Debtors, Liquidating FedNat, the Plan Administrator, and their respective successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Modified Combined Disclosure Statement and Plan, unless such modifications require relief under section 1127 of the Bankruptcy Code.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

84.    <u>Payment of Senior Notes Indenture Fees</u>.  On the Effective Date, and in consideration of the compromise, settlement, and release of all claims and causes of action  of the Senior Notes as and against non-FNHC Debtors, the Plan Administrator shall pay in Cash all reasonable and documented unpaid Senior Notes Indenture Trustee Fees incurred after the Petition Date that are required to be paid under the Senior Indentures, without the need for the Senior Notes Indenture Trustee to file fee applications with the Court, provided however, that the

total fees incurred through the Effective Date shall not exceed $250,000 (the "Senior Notes Fee Cap").  From and after the Effective Date, the Plan Administrator shall pay in Cash any and all reasonable and documented Senior Notes Indenture Trustee Fees, including, without limitation, all Senior Notes Indenture Trustee Fees incurred in connection with the cancellation and discharge of the Senior Indentures.  Nothing in this Confirmation Order or the Modified Combined Disclosure Statement and Plan shall in any way affect or diminish the right of the Senior Notes Indenture Trustees to exercise their Senior Notes Indenture Trustee Charging Liens against distributions on account of the Senior Notes Claims with respect to any unpaid Senior Notes Indenture Trustee Fees, as applicable.  For the avoidance of doubt, the Senior Notes shall maintain a claim solely against Debtor FNHC.

85.    Plan Modifications.    Entry of this Confirmation Order shall mean that all modifications or amendments to the Combined Disclosure Statement and Plan since the solicitation thereof, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

86.    Effectuating Documents; Further Transactions.    On and after the Effective Date, the Plan Administrator, on behalf of Liquidating FedNat, is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Modified Combined Disclosure Statement and Plan, and the Plan Supplement, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Modified Combined Disclosure Statement and Plan and Plan Administrator Agreement.

87.   <u>Treatment of Executory Contracts and Unexpired Leases</u>.   The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article X of the Modified Combined Disclosure Statement and Plan are hereby approved in their entirety. For the avoidance of doubt, as of and subject to the occurrence of the Effective Date and the payment of any applicable cure claims, all Executory Contracts and Unexpired Leases designated for assumption in the Plan Supplement and to which any of the Debtors are a party and which have not expired by their own terms on or prior to the Effective Date, shall be deemed assumed pursuant to sections 365(a) and 1123 of the Bankruptcy Code (the "<u>Assumed Contracts and Leases</u>").

88.   Except as otherwise set forth in the Plan Supplement with respect to the Assumed Contracts and Leases, all other Executory Contracts and Unexpired Leases will be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease (i) was previously rejected pursuant to separate order of this Court; (ii) expired or terminated pursuant to its own terms; or (iii) was previously terminated by the applicable Debtor and counterparty to such contract or lease.

89.   All Executory Contracts and Unexpired Leases of the Debtors rejected pursuant to Section X.A of the Modified Combined Disclosure Statement and Plan (collectively, the "<u>Rejected Contracts</u>") are rejected by the applicable Debtors, and such rejections are hereby approved by this Court pursuant to sections 365(a) and 1123 of the Bankruptcy Code, with such rejections subject to the occurrence of the Effective Date.   Rejection of any Rejected Contract pursuant to the Modified Combined Disclosure Statement and Plan or otherwise will not constitute a termination of any preexisting obligations owed to the Debtors or Liquidating FedNat, as applicable, under such Rejected Contract.   All Proofs of Claim with respect to Claims arising

from or in connection with the rejection of the Rejected Contracts pursuant to this Confirmation Order, if any, other than Claims, if, any, held by a D&O related to an indemnification obligation of a Debtor (the "Rejection Claims"), must be filed with this Court, and served upon the applicable Debtor and the Plan Administrator **within thirty (30) days after the Effective Date**. Other than Claims, if any, held by a D&O related to an indemnification obligation of a Debtor, any and all Rejection Claims not filed within such time shall be disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, Liquidating FedNat, the Plan Administrator, or the property of the foregoing parties. Any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or Liquidating FedNat, as applicable, as of the effective date of rejection, and the counterparty to such Unexpired Lease shall be authorized to use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors or Liquidating FedNat, as applicable, or any third party. For the further avoidance of doubt, the Claims, if any, held by a D&O related to an indemnification obligation of a Debtor must be filed against the applicable Debtor or Debtors with the Bankruptcy Court and served on the Plan Administrator no later than thirty (30) days after any civil action or proceeding seeking to recover on Causes of Action against the D&O has been properly served on the D&O.

90.     <u>Compromise and Settlement of Claims, Interests, and Controversies</u>. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for, and as a requirement to receive, the distributions and other benefits provided pursuant to the Modified Combined Disclosure Statement and Plan, the provisions of the Modified Combined Disclosure Statement and Plan shall constitute a good faith global and integrated compromise and settlement

of all Claims, Interests, and controversies as set forth in Section XII.A of the Modified Combined Disclosure Statement and Plan.

91.    <u>Release, Exculpation, Injunction, and Related Provisions</u>.    The release, exculpation, injunction, and related provisions set forth in Article XII of the Modified Combined Disclosure Statement and Plan, subject to the D&O Release Opt Out, shall be, and hereby are, approved and authorized in their entirety, including, but not limited to:

       a.     The Debtor Releases set forth in Article XII.B of the Modified Combined Disclosure Statement and Plan;

       b.     The Third-Party Release set forth in Article XII.C of the Modified Combined Disclosure Statement and Plan;

       c.     The exculpation provisions set forth in Article XII.D of the Modified Combined Disclosure Statement and Plan; and

       d.     The injunction provisions set forth in Article XII.E of the Modified Combined Disclosure Statement and Plan.

92.    <u>Approval of the Plan Administrator Agreement</u>. The Plan Administrator Agreement, substantially in the form of which was filed as Exhibit B to the Modified Combined Disclosure Statement and Plan, as amended, supplemental or modified, is hereby approved, and shall be effective as of the Effective Date.

93.    <u>Appointment of Plan Administrator</u>.  Thomas Pitta is appointed to serve as the initial Plan Administrator as of the Effective Date.  The Plan Administrator shall be deemed the representative of each of the Debtors' Estates in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Plan and Plan Administrator Agreement, including, without limitation (and except as otherwise provided in the Plan Administrator Agreement), the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, including, without limitation, the right to (a) effect all actions and execute all agreements, instruments and other documents necessary to implement

the provisions of the Modified Combined Disclosure Statement and Plan and Plan Administrator Agreement.

94.     <u>Plan Administrator Professionals</u>.   The Plan Administrator may hire such attorneys, accountants and other professionals as may be required or appropriate in connection with its duties under the Plan Administrator Agreement.  The Plan Administrator shall be entitled to retain professionals in his sole discretion and without the necessity of Court approval, including any professionals employed by the Debtors or the Committee in the Chapter 11 Cases. The provision of services by a professional to the Debtors or the Committee shall not disqualify such professional from employment by the Plan Administrator.  For avoidance of doubt, the Plan Administrator is authorized to pay the fees and expenses of any professionals employed by him/her without further order of the Court.

95.     <u>Plan Administrator Compensation</u>.  From and after the Effective Date, the Plan Administrator and any professionals engaged or retained by the Plan Administrator shall be entitled to reasonable compensation perform services related to administration of the Modified Combined Disclosure Statement and Plan.  The Plan Administrator shall be compensated on the Plan Administrator's on the terms disclosed in the Plan Supplement.

96.     <u>Notice of Entry of Confirmation Order and Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven (7) business days after the Effective Date, Liquidating FedNat shall file with the Court and serve by email and first class mail or overnight delivery service a notice of the entry of this Confirmation Order and occurrence of the Effective Date (the "<u>Confirmation Notice</u>"), in substantially the form annexed hereto as **<u>Exhibit 2</u>**, on all known Holders of Claims and Interests and parties who have filed requests to receive notice in these cases under Bankruptcy Rule 2002.  Notwithstanding the above, no

Confirmation Notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Mailing of the Confirmation Notice in the time and manner set forth in this paragraph shall be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice will be necessary.

97.    <u>Non-Severability of Plan Provisions Upon Confirmation</u>.  Each provision of the Modified Combined Disclosure Statement and Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Modified Combined Disclosure Statement and Plan and may not be deleted or modified without the Plan Proponents' consent; and (c) non-severable and mutually dependent.

98.    <u>Post-Confirmation Modifications</u>.  Without need for further order or authorization of the Court, the Plan Proponents, or the Plan Administrator, on behalf of Liquidating FedNat, as applicable, are authorized and empowered, to make any and all modifications to any and all documents that are necessary to effectuate the Modified Combined Disclosure Statement and Plan that do not materially modify the terms of such documents and are consistent with the Modified Combined Disclosure Statement and Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Modified Combined Disclosure Statement and Plan, the Plan Proponents, and the Plan Administrator, on behalf of Liquidating FedNat, expressly reserve their respective rights to initiate proceedings in the Court to remedy any defect

or omission or reconcile any inconsistencies in the Modified Combined Disclosure Statement and Plan, the Plan Supplement, or this Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Modified Combined Disclosure Statement and Plan.

99.    <u>Waiver or Estoppel</u>.  Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount or in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, or any other Entity if such agreement was not disclosed in the Modified Combined Disclosure Statement and Plan or Plan Supplement, or papers filed with the Court.

100.    <u>Term of Injunctions or Stays</u>.   Unless otherwise provided in the Modified Combined Disclosure Statement and Plan or in this Confirmation Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

101.    <u>Binding Effect</u>.  Pursuant to Article XI.D of the Modified Combined Disclosure Statement and Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Modified Combined Disclosure Statement and Plan, the Plan Supplement, and the Plan Administrator Agreement, shall be immediately effective and enforceable and deemed binding upon the Debtors, Liquidating FedNat, and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests voted or are deemed to have accepted the Modified

Combined Disclosure Statement and Plan, voted or are deemed to have rejected the Modified Combined Disclosure Statement and Plan, or failed to vote to accept or reject the Combined Disclosure Statement and Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Modified Combined Disclosure Statement and Plan, each Entity acquiring property under the Modified Combined Disclosure Statement and Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

102.    <u>Reservation of Rights</u>.  Except as expressly set forth in the Modified Combined Disclosure Statement and Plan, the Modified Combined Disclosure Statement and Plan shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Modified Combined Disclosure Statement and Plan, any statement or provision contained in the Modified Combined Disclosure Statement and Plan, or the taking of any action by any Debtor with respect to the Modified Combined Disclosure Statement and Plan or the Plan Supplement, shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

103.    <u>Authorization to Consummate</u>.  The Plan Proponents and the Plan Administrator, on behalf of Liquidating FedNat, are authorized to consummate the Modified Combined Disclosure Statement and Plan at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver in accordance with Article XI.B and XI.C of the Modified Combined Disclosure Statement and Plan.

104.    <u>Substantial Consummation</u>.  On the Effective Date, the Modified Combined Disclosure Statement and Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

105.    <u>Effect of Conflict</u>.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  In the event of an inconsistency between this Confirmation Order and the Modified Combined Disclosure Statement and Plan or Plan Supplement, the Confirmation Order shall control.

106.    <u>Waiver of Stay</u>.  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

107.    <u>Reversal/Stay/Modification/Vacatur of Order</u>.  Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act or obligation incurred or undertaken by the Debtors, Liquidating FedNat, the Plan Administrator, or any other Person or Entity authorized or required to take action to implement the Modified Combined Disclosure Statement and Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Modified Combined Disclosure Statement and Plan, the Plan Documents, or any amendments or modifications to the foregoing.

108.    <u>Resolutions of Objection of DFS Receiver</u>:

       a.    Nothing in this Confirmation Order or the Modified Combined Disclosure Statement and Plan, including, without limitation, the settlement, release, injunction, and exculpation provisions of Article XII of the Modified Combined Disclosure Statement, shall: (i) affect the Tax Allocation

Agreement; (ii) affect, impair, release, or otherwise constitute or be deemed a waiver of, any cause of action, or claim, or defense that the DFS Receiver may hold concerning the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refund Dispute, or the Tax Refunds, if any; or (iii) constitute a judicial determination concerning the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refund Dispute, or the Tax Refunds, if any; or (iv) constitute res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, or estoppel (judicial, equitable or otherwise) concerning any aspect of the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refund Dispute, or the Tax Refunds, if any. Nor shall any calculations, figures, statements, or findings made in connection with this Confirmation Order, the Modified Combined Disclosure Statement and Plan, or any supplement or amendment to the Modified Combined Disclosure Statement constitute findings of facts or conclusions of law with respect to the rights, title and interest of the parties to the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refunds, if any, or the Tax Refund Dispute. For the avoidance of doubt, all disputes concerning the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refunds, if any, and the Tax Refund Dispute and all positions, claims or defenses of the parties to the Tax Allocation Agreement in all respects and for all purposes are expressly preserved.

b.    Notwithstanding anything to the contrary in the Modified Combined Disclosure Statement and Plan or this Confirmation Order, neither the Modified Combined Disclosure Statement and Plan, nor this Confirmation Order (including, without limitation, Paragraph 109 below concerning the "Resolution of Objections of the D&Os"), nor the DFS Receiver's casting of a Ballot in support of the Modified Combined Disclosure Statement and Plan shall operate to release, exculpate, waive, enjoin, or otherwise impair any Claim, defense, or Cause of Action that the DFS Receiver has, had, or may have against any D&O, party, person, or Entity.

c.    Nothing in this Confirmation Order or the Modified Combined Disclosure Statement and Plan shall impair, limit or in any way enjoin the jurisdiction of the Circuit Court for the Second Judicial Circuit in and for Leon County, Florida in the matter of the liquidation of FNIC (Fla. 2nd Jud. Cir., Case No. 2022-CA-001688) (the "FNIC Liquidation"), provided, however, that nothing in this Confirmation Order or the Modified Combined Disclosure Statement and Plan shall impair, limit or in any way enjoin the jurisdiction of the Court in the FNIC Liquidation and all jurisdictional issues are preserved.

d.    Notwithstanding anything to the contrary contained in the Modified Combined Disclosure Statement and Plan or this Confirmation Order, the Debtors shall be deemed to have assumed the Tax Allocation Agreement.

109. <u>Resolution of Objections of the D&Os:</u>

    a.    In accordance with the D&O Release Op Out Order, the Plan Modifications made the release, discharge, and injunction provisions in Article XII of the Modified Combined Disclosure Statement and Plan subject to the rights of the D&Os, including, without limitation, David Patterson, Bruce Simberg, Jenifer Kimbrough, Thomas Rogers, David Michelson, Roberta Young, Erick A. Fernandez, Brian S. Gardner, James Gordon Jennings, III, Douglas Raucy, and Michael H. Braun, who were deemed to have elected out of, not granted, and not been bound by such releases, discharges, and injunctions. Additionally, the Plan Modifications added the D&Os as Exculpated Parties. The Plan Modifications resolved the D&Os' objections.

    b.    For the avoidance of doubt, nothing in this Confirmation Order or the Modified Combined Disclosure Statement and Plan shall (i) affect, impair, release, enjoin, or otherwise constitute or be deemed a waiver of, any cause of action, claim, crossclaim, counterclaim, third-party claim, defense, or affirmative defense, including, without limitation, set off, allocation of fault, Fabre, superseding intervening cause, reliance on the advice of professionals, contribution, or indemnification, that the D&Os may hold against, without limitation, the Debtors, the Senior Notes Indenture Trustees, the Committee, the Hale Related Parties, and, with respect to each of the foregoing Entities, such Entity's managers, managing members, principals, partners, members, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Representatives. However, nothing in this Confirmation Order or Modified Combined Disclosure Statement and Plan shall constitute or be construed as a finding by the Court, or an admission by any party, regarding the validity or ultimate amounts of any such cause of action, claim, crossclaim, counterclaim, third-party claim, defense, or affirmative defense, by the D&Os.

    c.    Nothing in this Confirmation Order or the Modified Combined Disclosure Statement and Plan shall (i) affect, impair, prejudice, or otherwise alter the terms and conditions of the D&O Liability Insurance Policies, any related agreements, and/or any related reservation(s) of rights provided by the D&O Insurance Carriers; (ii) affect, impair, prejudice, or otherwise alter the rights, obligations, and defenses of the D&O Insurance Carriers, the D&Os, or any of the Debtors under the D&O Liability Insurance Policies, any related agreements, and/or any related reservation(s) of rights provided by the D&O Insurance Carriers, D&Os, or any of the Debtors in connection therewith; (iii) relieve the Debtors and/or their estates of any of their obligations under any insurance policies, including but not limited to the D&O Liability Insurance Policies, and related agreements; or (iv) preclude or limit, in any way, the rights of any D&O Insurance Carriers including, without limitation, the D&O Insurance Carriers, to contest

and/or litigate the existence, primacy, and/or scope of available coverage under any allegedly applicable insurance policies, including, without limitation, the D&O Liability Insurance Policies, or to otherwise assert any defenses to coverage, and such D&O Insurance Carriers, and/or any other parties to any such insurance policies, shall retain and reserve all rights and defenses, if any, that they would otherwise have under and/or with respect to such insurance policies.

d.    Nothing in this Confirmation Order and Modified Combined Disclosure Statement and Plan shall constitute or be deemed to constitute a finding, representation, admission, or determination as to the existence of coverage or the applicability of any insurance policies, including, without limitation, the D&O Liability Insurance Policies.

110.    The rights of parties in interest to object to allocations for Accrued Professional Fees (whether or not professionals retained pursuant to Section 327 of the Bankruptcy Code) or to intercompany obligations owing between the various Debtors are expressly preserved to such parties in interest.

111.    Notwithstanding anything to the contrary in the Modified Combined Disclosure Statement and Plan, the Plan Proponents shall not withdraw the Plan and shall promptly submit the Confirmation Order.

112.    Notwithstanding anything to the contrary in the Modified Combined Disclosure Statement and Plan, the Debtors are not receiving a discharge pursuant to section 1141(d)(1) of the Bankruptcy Code.

113.    <u>Final Order</u>.  This Confirmation Order is a Final Order, and the period in which an appeal must be filed shall commence upon the entry hereof.

114.    <u>Retention of Jurisdiction</u>.  This Court may properly, and upon the Effective Date shall, retain jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Cases, as set forth in Article XIII of the Modified Combined Disclosure Statement and Plan.

###

Submitted By:
BAST AMRON LLP
Jeffrey P. Bast (FBN 996343)
Hayley G. Harrison (FBN 105157)
One Southeast Third Avenue, Suite 2410
Miami, Florida 33131
Telephone: 305.379.7904
Facsimile: 786.206.8740
Email: jbast@bastamron.com
Email: hharrison@bastamron.com

-and-

PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler (admitted pro hac vice)
Paul Labov (admitted pro hac vice)
Cia H. Mackle (FBN 26417)
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Telephone: 302.652.4100
Email: bsandler@pszjlaw.com
Email: plabov@pszjlaw.com
Email: cmackle@pszjlaw.com

COUNSEL TO THE OFFICIAL
UNSECURED CREDITORS COMMITTEE

-and-

Shane G. Ramsey
NELSON MULLINS RILEY & SCARBOROUGH LLP
1222 Demonbreun Street, Suite 1700
Nashville, TN  37203
Phone: (615) 664-5300
Facsimile: (615) 664-5399
shane.ramsey@nelsonmullins.com

COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION

*Attorney Ramsey is directed to serve this order upon all non-registered users or registered users who have yet to appear electronically in this case and file a conforming certificate of service.*

## Exhibit 1

**Combined Disclosure Statement and Plan as Modified by Plan Modifications**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                     Case No.: 22-19451-PDR

FedNat Holding Company, *et al*[1].                        Chapter 11
                                                           (Jointly Administered)

                    Debtors.

_____/


**FIRST AMENDED COMBINED DISCLOSURE STATEMENT
AND CHAPTER 11 PLAN OF LIQUIDATION OF
FEDNAT HOLDING COMPANY AND ITS DEBTOR AFFILIATES
[AS MODIFIED FOR THE COMBINED HEARING][2]**

---

[1] The Debtors in these Chapter 11 Cases are FedNat Holding Company; FedNat Underwriters, Inc.; ClaimCor, LLC; Century Risk Insurance Services, Inc.; and Insure-Link, Inc.  The Debtors' headquarters are located at 1 East Broward, Suite 700 Fort Lauderdale, Florida 33301.

[2] This filing is intended to provide the Court and interested parties with a single integrated document containing the modifications to the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and Its Debtor Affiliates announced in connection with the hearing held October 10, 2023, at 10:00 a.m. before the Bankruptcy Court on final approval of the Plan ("**Combined Hearing**").

i

**Nelson Mullins Riley & Scarborough LLP**

Shane G. Ramsey
Florida Bar No.: 0026842
shane.ramsey@nelsonmullins.com
100 S.E. 3rd Avenue, Suite 2700
Ft. Lauderdale, FL 33394
Telephone: (954) 764-7060
Facsimile: (954) 761-8135

Frank B.B. Knowlton
*Admitted Pro Hac Vice*
Frank.knowlton@nelsonmullins.com
1320 Main Street, 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
Telephone: (803) 799-2000
Facsimile: (803) 256-7500

*Counsel to the Debtors and Debtors-in-Possession*

**Pachulski Stang Ziehl & Jones LLP**

Bradford J. Sandler
*Admitted Pro Hac Vice*
Paul Labov
*Admitted Pro Hac Vice*
Cia H. Mackle
Florida Bar No.: 26417
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Telephone: 302.652.4100
Email: bsandler@pszjlaw.com
Email: plabov@pszjlaw.com
Email: cmackle@pszjlaw.com

– and –

**Bast Amron LLP**

Jeffrey P. Bast
Hunter Grasso
One Se Third Ave
Suite 2410
Miami, FL 33131
305-379-7904
Email: jbast@bastamron.com
Email: hgrasso@bastamron.com

*Counsel to the Official Committee of Unsecured Creditors*

Dated:  October 10, 2023

**Table of Contents**

**Page**

**INTRODUCTION** ...................................................................................................................**4**

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION**.......................**9**
    **A.**    **Defined Terms** ...........................................................................................**9**
    **B.**    **Rules of Interpretation** ...........................................................................**23**
    **C.**    **Exhibits** ...................................................................................................**23**

**ARTICLE II    BACKGROUND** ......................................................................**24**
    **A.**    **General Background**................................................................................**24**
    **B.**    **The Chapter 11 Cases** ............................................................................**28**

**ARTICLE III    CONFIRMATION PROCEDURES AND VOTING PROCEDURES**.................**32**
    **A.**    **Confirmation Procedures**........................................................................**32**
    **B.**    **Procedures for Objections**......................................................................**33**
    **C.**    **Requirements for Confirmation** .............................................................**33**
    **D.**    **Requirements of Section 1129(b) of the Bankruptcy Code: Confirmation Without Necessary Acceptances; Cramdown** ...........................................**36**
    **E.**    **Classification of Claims Interests** ..........................................................**37**
    **F.**    **Impaired Claims or Interests** .................................................................**37**
    **G.**    **Eligibility to Vote on First Amended Combined Disclosure Statement and Plan**.....**37**
    **H.**    **Procedure/Voting Deadlines** ...................................................................**38**
    **I.**    **Acceptance of First Amended Combined Disclosure Statement and Plan** ...............**38**
    **J.**    **Elimination of Vacant Classes** ...............................................................**38**

**ARTICLE IV    ADMINISTRATIVE AND PRIORITY CLAIMS** ........................................**39**
    **A.**    **Administrative Claims**............................................................................**39**
    **B.**    **Priority Tax Claims** ...............................................................................**39**
    **C.**    **Accrued Professional Compensation Claims**..........................................**39**

**ARTICLE V    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES** .....................................................................**41**
    **A.**    **Summary**...................................................................................................**41**
    **B.**    **Classification and Treatment of Claims and Interests of FNHC**............**43**
    **C.**    **Classification and Treatment of Claims and Interests of FNU**................**46**
    **D.**    **Classification and Treatment of Claims and Interests of ClaimCor**........**47**
    **E.**    **Classification and Treatment of Claims and Interests of CRIS** ..............**49**
    **F.**    **Classification and Treatment of Claims and Interests of Insure-Link** ....................**50**

**ARTICLE VI    CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING**.........**52**
    **A.**    **The Plan May Not be Accepted** ..............................................................**52**
    **B.**    **The Plan May Not be Confirmed** ...........................................................**52**
    **C.**    **Distributions to Holders of Allowed Claims under the Plan May be Inconsistent with Projections**........................................................................**53**
    **D.**    **Objections to Classification of Claims** ..................................................**53**
    **E.**    **Failure to Consummate the Plan** ............................................................**54**
    **F.**    **Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan** ......................................................................**54**

G. The Plan Releases May Not Be Approved ..................................................... 54
H. Delay In Liquidating Estate Causes of Action.............................................. 54
I. Certain Tax Considerations ........................................................................... 54
J. Recoveries under the Plan are Based on a Post-Petition Tax Re-Allocation and
Intercompany Settlements.............................................................................. 60

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN.............................. 62
A. Appointment of a Plan Administrator ........................................................... 62
B. Fees and Expenses of Plan Administrator ..................................................... 62
C. Directors/Officers/Equity/Assets of the Debtors on the Effective Date.................... 62
D. Plan Administrator ......................................................................................... 63
E. Wind Down and Dissolution of the Debtors .................................................. 64
F. Payment of Senior Notes Indenture Trustee Fees ......................................... 64
G. Cancellation of Existing Securities and Agreements; Claims of Subordination;
Release and Discharge of Senior Notes Indenture Trustees ........................ 65
H. Committee....................................................................................................... 66
I. Vesting of Assets in Liquidating FedNat ....................................................... 66
J. Deregistration ................................................................................................. 67
K. Intercompany Claims ..................................................................................... 67
L. Merger/Dissolution/Consolidation................................................................. 68
M. Termination of Voting Agent ......................................................................... 68
N. Effectuating Documents; Further Transactions ........................................... 68

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ................................... 69
A. Initial Distribution Date ................................................................................. 69
B. Disputed Claims Reserve................................................................................ 69
C. Quarterly Distributions .................................................................................. 69
D. Record Date for Distributions ....................................................................... 70
E. Delivery of Distributions ................................................................................ 70
F. Manner of Cash Payments Under the Plan or the Plan Administrator Agreement . 71
G. Time Bar to Cash Payments by Check ........................................................... 71
H. No Payments of Fractional Dollars ............................................................... 71
I. No Cash Payments Less Than $50 on Account of Allowed Claims ............................ 71
J. Withholding Taxes .......................................................................................... 72
K. Interest on Claims .......................................................................................... 72
L. No Distribution in Excess of Allowed Amount of Claim ............................... 72
M. Setoff and Recoupment .................................................................................. 72

ARTICLE IX DISPUTED CLAIMS..................................................................................... 73
A. No Distribution Pending Allowance ............................................................... 73
B. Resolution of Disputed Claims....................................................................... 73
C. Objection Deadline ......................................................................................... 73
D. Estimation of Claims ...................................................................................... 73
E. Disallowance of Claims .................................................................................. 73

ARTICLE X TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...... 74
A. Assumption and Rejection of Executory Contracts and Unexpired Leases ............ 74
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases ............... 74

ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE
DATE ............................................................................................................... 75

| A. | Conditions to Confirmation: | 75 |
|----|-----------------------------|-----|
| B. | Conditions Precedent to the Effective Date | 75 |
| C. | Waiver of Conditions Precedent | 75 |
| D. | Binding Effect of Plan | 76 |

**ARTICLE XII SETTLEMENT AND RELATED PROVISIONS** .................................................. 76

| A. | Compromise and Settlement of Claims, Interests, and Controversies | 76 |
|----|-------------------------------------------------------------------|-----|
| B. | Releases by Debtors | 76 |
| C. | Releases By Holders of Claims and Interests | 78 |
| D | Exculpation | 76 |
| E. | Injunction | 80 |
| F. | No Release of Co-Obligor or Joint Tortfeasor | 81 |
| G. | Preservation of Insurance | 81 |
| H. | Preservation of Rights of Action | 81 |
| I. | Release and Injunction | 83 |
| J. | Releases of Liens | 83 |
| K. | No Discharge for the Debtors | 83 |

**ARTICLE XIII RETENTION OF JURISDICTION** ...................................................... 84

**ARTICLE XIV MISCELLANEOUS PROVISIONS** ..................................................... 85

| A. | Payment of Statutory Fees | 85 |
|----|---------------------------|-----|
| B. | Modification of First Amended Combined Disclosure Statement and Plan | 85 |
| C. | Votes Solicited in Good Faith | 86 |
| D. | Revocation of First Amended Combined Disclosure Statement and Plan | 86 |
| E. | Successors and Assigns | 86 |
| F. | Governing Law | 87 |
| G. | Reservation of Rights | 87 |
| H. | Section 1146 Exemption | 87 |
| I. | Further Assurances | 87 |
| J. | Venue of Proceedings | 87 |
| K. | Service of Documents | 88 |
| L. | Filing of Additional Documents | 89 |
| M. | Aid and Recognition | 89 |
| N. | Document Retention | 89 |

## DISCLAIMER

THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ARE PROVIDING THE INFORMATION IN THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN TO HOLDERS OF CLAIMS FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT OR REJECT THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN. NOTHING IN THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE VI HEREIN.  NO SOLICITATION OF VOTES TO ACCEPT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.

THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.  NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.  FORWARD-LOOKING STATEMENTS MAY INCLUDE STATEMENTS ABOUT:

- FINANCIAL CONDITION, REVENUES, CASH FLOWS, AND EXPENSES;
- LEVELS OF INDEBTEDNESS, LIQUIDITY, AND COMPLIANCE WITH APPLICABLE COVENANTS;
- FINANCIAL STRATEGY, BUDGET, PROJECTIONS, AND OPERATING RESULTS;
- VARIATION FROM PROJECTED FINANCIAL DATA; AND
- AVAILABILITY AND TERMS OF CAPITAL

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED

HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN. THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS URGE EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHER, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURES CONTAINED IN THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN OR A GUARANTEE BY THE BANKRUPTCY COURT OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

NELSON MULLINS RILEY & SCARBOROUGH LLP IS GENERAL COUNSEL TO THE DEBTORS AND PACHULSKI STANG ZIEHL & JONES LLP AND BAST AMRON LLP ARE COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS. COUNSEL HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTORS AND THEIR OTHER PROFESSIONALS IN CONNECTION WITH PREPARATION OF THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN AND HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS.

THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

SEE ARTICLE VI OF THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN.

IF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN ARE CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST, AND HOLDERS OF INTERESTS IN (INCLUDING THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, WHO VOTE TO REJECT THE PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN), THE DEBTORS WILL BE BOUND BY THE TERMS OF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

THE CONFIRMATION AND EFFECTIVENESS OF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED HEREIN AND SET FORTH IN ARTICLE XI OF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN. THERE IS NO ASSURANCE THAT THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN WILL BE CONFIRMED, OR IF CONFIRMED, THAT THE CONDITIONS REQUIRED TO BE SATISFIED FOR THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN TO BECOME EFFECTIVE WILL BE SATISFIED (OR WAIVED).

**THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN IS PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS. THE DEBTORS AND THE COMMITTEE BELIEVE THAT ACCEPTANCE OF THE PLAN INCORPORATED HEREIN IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES, THEIR CREDITORS, AND ALL OTHER PARTIES IN INTEREST. ACCORDINGLY, THE DEBTORS AND THE COMMITTEE RECOMMEND THAT YOU VOTE IN FAVOR OF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN. A LETTER FROM THE DEBTORS AND THE COMMITTEE RECOMMENDING THAT HOLDERS OF ALLOWED CLAIMS VOTE IN FAVOR OF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN IS ATTACHED HERETO AS <u>EXHIBIT A</u> AND IS INCLUDED IN THE SOLICITATION PACKAGE.**

ALL EXHIBITS TO THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

# INTRODUCTION

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") together with the official committee of unsecured creditors (the "**Committee**," and together with the Debtors, the "**Plan Proponents**"), hereby jointly propose this First Amended Combined Disclosure Statement and Plan ("**First Amended Combined Disclosure Statement and Plan**") pursuant to sections 1125 and 1129 of the Bankruptcy Code.

The plan proposed by the Plan Proponents (the "**Plan**") constitutes a liquidating chapter 11 plan for the Debtors that contemplates the establishment of various liquidating Debtor entities by and through which the Plan Administrator will marshal the remaining assets of the Debtors' estates, review the Claims, and make Distributions from the remaining assets of the estates to Holders of Allowed Claims and Allowed Interests, as set forth herein and consistent with the priority of claim provisions of the Bankruptcy Code. Upon the conclusion of Distributions under the Plan, the Plan Administrator shall wind down the Debtors' Estates, seek approval to close the Chapter 11 Cases, and dissolve the Debtors under applicable law.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XIV.B of this First Amended Combined Disclosure Statement and Plan, the Debtors expressly reserve the right to alter, amend, or modify the Plan, one or more times, before its substantial consummation.

Solicitation is being conducted at this time to obtain sufficient acceptances to enable the Plan to be confirmed by the Bankruptcy Court. This First Amended Combined Disclosure Statement and Plan sets forth, among other things, how Claims against, and Interests in, the Debtors will be treated and the process for winding down the Debtors' Estates. **YOU SHOULD READ THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN AND ALL OF THE RELATED EXHIBITS AND SCHEDULES IN THEIR ENTIRETY**.

This First Amended Combined Disclosure Statement and Plan is part of the solicitation package ("**Solicitation Package**") distributed to all Entities and persons that are entitled to vote on the Plan and contains the following:

- a copy of the Combined Hearing Notice;

- a copy of this First Amended Combined Disclosure Statement and Plan, together with the exhibits thereto;

- a copy of the Solicitation Procedures Order entered by the Bankruptcy Court that conditionally approved this First Amended Combined Disclosure Statement and Plan, established the voting procedures, scheduled hearing, and set the Voting Deadline and the deadline for objecting to confirmation of the Plan;

- a form of Ballot with instructions on how to complete the Ballot; and

- a letter prepared by the Plan Proponents recommending that Holders of Allowed Claims vote in favor of the proposed Plan.

The Debtors may, but are not required to, distribute this Combined Disclosure Statement and Plan and the Solicitation Procedures Order to Holders of Claims entitled to vote on the Plan in electronic format (*i.e.*, on a USB drive).

A. *Purpose, Limitations, and Structure of This First Amended Combined Disclosure Statement and Plan*

The purpose of this First Amended Combined Disclosure Statement and Plan is to provide the Holders of Claims against the Debtors who are entitled to vote on the Plan with adequate information to make an informed decision as to whether to accept or reject the Plan. The information in this First Amended Combined Disclosure Statement and Plan may not be relied upon for any other purpose, and nothing contained in this First Amended Combined Disclosure Statement and Plan will constitute an admission of any fact or liability, or as a stipulation or waiver by any party, or be deemed conclusive advice on the tax or other legal effects of the Plan.

This First Amended Combined Disclosure Statement and Plan contains, among other things, (i) a discussion of the Debtors' history and businesses, (ii) a summary of the events leading to these Chapter 11 Cases, (iii) the Chapter 11 Cases, (iv) risk factors, (v) a summary and analysis of this First Amended Combined Disclosure Statement and Plan, and (vi) certain other related matters.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

On September 1, 2023, after notice and a hearing, the Bankruptcy Court issued an order conditionally approving this First Amended Combined Disclosure Statement and Plan as containing adequate information of a kind and in sufficient detail to enable a hypothetical, reasonable investor typical in each Class of Claims being solicited to make an informed judgment whether to accept or reject the Plan. CONDITIONAL APPROVAL OF THIS FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

If you are eligible to vote, this First Amended Combined Disclosure Statement and Plan and all of its schedules and exhibits should have been delivered to you. There are certain documents and other materials identified in this First Amended Combined Disclosure Statement and Plan that are not attached to this First Amended Combined Disclosure Statement and Plan. Such documents and materials will be filed with the Plan Supplement. Once it is filed, the Plan Supplement may be accessed on the docket electronically maintained by the Clerk of the Bankruptcy Court or inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. You also may obtain a copy of the Plan Supplement once it is filed, or any of the schedules and exhibits to this First Amended Combined Disclosure Statement and Plan, free of charge, by accessing the Debtors' case website, at https://cases.stretto.com/FedNat or by contacting Stretto at the phone numbers and email below.

If you have any questions about the packet of materials you have received, you may contact Stretto by (i) calling 888-708-0592 (Toll-Free) or 949-861-5292 (International) or (ii) sending e-mail correspondence to teamfednat@stretto.com.

B. *Summary of Classification and Estimated Recoveries of Claims and Interests Under the Plan*

The following table summarizes the classification and estimated recoveries to Holders of Allowed Claims and Interests under the Plan[3]. All numbers illustrated herein represent estimates by the Debtors and the Committee, with assistance from their respective financial and legal advisors, as of August 25, 2023. The Debtors and the Committee reserve all rights to review, revise, and update the estimated recoveries upon obtaining any new information relevant to the outcomes of the estimated recoveries.

---

[3] These amounts represent amounts actually asserted by creditors in Proofs of Claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases and objections to such Claims have not been fully litigated. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. At present, the Debtors dispute claims totaling in excess of $228 million, broken down by Debtor as follows:

| | Filed Claims | Presently Undisputed Claims | Disputed Claims |
|---|---|---|---|
| Century Risk Insurance Services, Inc. | 2,872,346.25 | 2,811,750.00 | 60,596.25 |
| ClaimCor, LLC | 173,430,675.09 | 2,024,362.00 | 171,406,313.09 |
| FedNat Underwriters, Inc. | 8,452,128.80 | 5,081,817.00 | 3,370,311.80 |
| FedNat Holding Company | 183,131,591.87 | 129,728,192.56 | 53,403,399.31 |
| Insure-Link, Inc. | 4,845.06 | 4,845.06 | - |
| Total | 367,891,587.07 | 139,650,966.62 | 228,240,620.45 |
| | | | |

*Summary of Classification and Treatment of Classified Claims and Interests of FNHC*

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery[4] |
|---|---|---|---|---|---|
| 1 | FNHC Secured Claims | Unimpaired | No (deemed to accept) | $ -0- | 100% |
| 2 | FNHC Priority Claims | Unimpaired | No (deemed to accept) | $ -0- | 100% |
| 3 | Senior Notes Claims | Impaired | Yes | $127,550,016 | 8.09% - 15.58%[5] |
| 4 | FNHC General Unsecured Claims | Impaired | Yes | $  2,178,177 | 8.09% - 15.58%[6] |
| 5 | FNHC Preferred Stock Interests | Impaired | No (deemed to reject) | N/A | 0% |
| 6 | FNHC Common Stock Interests | Impaired | No (deemed to reject) | N/A | 0% |

*Summary of Classification and Treatment of Classified Claims and Interests of FNU*

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery |
|---|---|---|---|---|---|
| 1 | FNU Secured Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 2 | FNU Priority Claims | Unimpaired | No (deemed to accept) | $3,449 | 100% |
| 3 | FNU General Unsecured Claims | Impaired | Yes | $5,081,817 | 100% |
| 4 | FNU Stock Interests | Impaired | Yes | N/A | 0% |

*Summary of Classification and Treatment of Classified Claims and Interests of ClaimCor*

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery[7] |
|---|---|---|---|---|---|
| 1 | ClaimCor Secured Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 2 | ClaimCor Priority Claims | Unimpaired | No (deemed to accept) | $6,778 | 100% |
| 3 | ClaimCor General Unsecured Claims | Impaired | Yes | $2,024,362 | 100%[8] |
| 4 | ClaimCor Stock Interests | Impaired | Yes | N/A | N/A |

---

[4] The range of projected recoveries set forth herein considers the impact of the Tax Re-Allocation and Intercompany Settlements described in Article VI.J. As discussed in such Article, the Tax Re-Allocation and Intercompany Settlements may be challenged and, if a creditor is successful in unwinding the re-allocation, recovery for creditors of FNHC may be affected.

[5] In the event of such a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed Senior Notes Claims will be between 1.59% - 6.19 %.

[6] In the event of a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed FNHC General Unsecured Claims will be between 1.59% - 6.19 %.

[7] The range of projected recoveries set forth herein considers the impact of the Tax Re-Allocation and Intercompany Settlements described in Article VI.J. As discussed in such Article, the Tax Re-Allocation and Intercompany Settlements may be challenged and, if a creditor is successful in unwinding the re-allocation, recovery for creditors of ClaimCor may be affected.

[8] In the event of a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed ClaimCor General Unsecured Claims will be approximately 95.58%.

*Summary of Classification and Treatment of Classified Claims and Interests of CRIS*

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery[9] |
|---|---|---|---|---|---|
| 1 | CRIS Secured Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 2 | CRIS Priority Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 3 | CRIS General Unsecured Claims | Impaired | Yes | $2,811,750 | 100%[10] |
| 4 | CRIS Stock Interests | Impaired | Yes | N/A | N/A |

*Summary of Classification and Treatment of Classified Claims and Interests of Insure-Link*

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery[11] |
|---|---|---|---|---|---|
| 1 | Insure-Link Secured Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 2 | Insure-Link Priority Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 3 | Insure-Link General Unsecured Claims | Impaired | Yes | $4,845 | 74.29%[12] |
| 4 | Insure-Link Stock Interests | Impaired | Yes | N/A | N/A |

Although every reasonable effort was made to be accurate, the projections of recoveries are only estimates. The final amounts of Claims Allowed by the Bankruptcy Court may vary materially from the estimates in this First Amended Combined Disclosure Statement and Plan. As a result of the foregoing and other uncertainties inherent in the estimates, the estimated recoveries in this First Amended Combined Disclosure Statement and Plan may vary materially from the actual recoveries realized. In addition, the ability to receive Distributions under the Plan depends upon, among other things, the ability of the Debtors to obtain confirmation of the Plan and meet the conditions to confirmation and effectiveness of the Plan.

---

[9] The range of projected recoveries set forth herein considers the impact of the Tax Re-Allocation and Intercompany Settlements described in Article VI.J. As discussed in such Article, the Tax Re-Allocation and Intercompany Settlements may be challenged and, if a creditor is successful in unwinding the re-allocation, recovery for creditors of CRIS may be affected.

[10] In the event of a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed CRIS General Unsecured Claims will be approximately 52%.

[11] The range of projected recoveries set forth herein considers the impact of the Tax Re-Allocation and Intercompany Settlements described in Article VI.J. As discussed in such Article, the Tax Re-Allocation and Intercompany Settlements may be challenged and, if a creditor is successful in unwinding the re-allocation, recovery for creditors of Insure-Link may be affected.

[12] In the event of a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed Insure-Link General Unsecured Claims will be approximately 100%.

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the First Amended Combined Disclosure Statement and Plan, except as expressly provided or unless the context otherwise requires, (i) any capitalized term used in this First Amended Combined Disclosure Statement and Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (ii) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter, (iii) any reference in the First Amended Combined Disclosure Statement and Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (iv) any reference in the First Amended Combined Disclosure Statement and Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (v) unless otherwise specified, all references in the First Amended Combined Disclosure Statement and Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the First Amended Combined Disclosure Statement and Plan, (vi) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the First Amended Combined Disclosure Statement and Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the First Amended Combined Disclosure Statement and Plan, (vii) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the First Amended Combined Disclosure Statement and Plan, and (viii) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

As used in the First Amended Combined Disclosure Statement and Plan, the following terms have the following meanings:

A.    *Defined Terms*

1.    *"2029 Senior Notes"* means FNHC's senior notes due 2029.

2.    *"2029 Senior Notes Indenture"* means the indenture, dated as of March 5, 2019, First Supplemental Indenture, dated as of March 5, 2019, and Second Supplemental Indenture, dated as of April 19, 2021, each by and between FNHC and the 2029 Senior Notes Indenture Trustee.

3.    *"2029 Senior Notes Indenture Trustee"* means The Bank of New York Mellon, as indenture trustee with respect to the 2029 Senior Notes.

4.    *"Accrued Professional Compensation"* means, at any given moment, all fees and expenses claimed by Professionals pursuant to Sections 328, 330, 331, or 503 of the Bankruptcy Code, as of the Effective Date.

5.    *"Accrued Professional Reserve"* means a reserve fund established by the Plan Administrator on or as soon as practicable after the Effective Date, to pay any accrued and unpaid (a) Accrued Professional Compensation Claims; (b) Accrued Professional Compensation Claims incurred by a Professional and which has not yet been approved by the Bankruptcy Court.  The amounts deposited in the Accrued Professional Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in the Accrued Professional Reserve after payment of all Allowed Accrued Professional Compensation, such excess amounts shall be distributed in accordance with the Plan.

6.    *"Administrative Claim Bar Date"* means such deadline or deadlines as are established by the Bankruptcy Court by which requests for payment of Administrative Claims in the Chapter 11 Cases must be filed with the Bankruptcy Court. For Administrative Claims (excluding Accrued Professional Compensation), the Administrative Claims Bar Date shall be the date that is 45 days after the Effective Date.

7.    *"Administrative Claims"* means Claims that have been timely filed before the applicable Administrative Claim Bar Date (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Accrued Professional Compensation; (c) the value of any goods received by any of the Debtors within 20 days before the Petition Date in which the goods were sold to the Debtors in the ordinary course of business; (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; and (e) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

8.    *"Affiliate"* has the meaning set forth at section 101(2) of the Bankruptcy Code.

9.    *"Allowed"* means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that has been scheduled by one of the Debtors in its schedules of liabilities as other than disputed, contingent or unliquidated, unless a Proof of Claim has been timely filed, and as to which the Debtors, the Plan Administrator or other parties-in-interest have not Filed an objection by the Claims Objection Deadline; (b) a Claim or Interest that has been allowed by a Final Order; (c) a Claim or Interest that is allowed: (i) in any stipulation of the amount and nature of a Claim or Interest executed prior to the Effective Date and approved by the Bankruptcy Court; or (ii) in any stipulation with the Plan Administrator, of the amount and nature of a Claim or *Interest* executed on or after the Effective Date; (d) a Claim or Interest that is Allowed pursuant to the terms hereof;  (e) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline; or (f) a Claim or Interest that has been scheduled by one of the Debtors in its schedules of liabilities as other than disputed, contingent or unliquidated, unless a Proof of Claim has been timely filed, and as to which the Plan Administrator determines should be allowed in the amount filed or scheduled, as the case may be.

10. *"Allowed HGMA Claims"* means the Allowed Claims of HG Managing Agency, LLC as follows:

| Claim Number | Debtor | Allowed Amount |
|---|---|---|
| 181 | FNU | $609,771 |
| 182 | FNU | $500,000 |

11. *"Allowed Monarch Claims"* means the Allowed Claims of Monarch National Insurance Company as follows:

| Claim Number | Debtor | Allowed Amount |
|---|---|---|
| 183 | CRIS | $2,705,754 |
| 184 | FNHC | $232,766 |
| 185 | ClaimCor | $232,766 |
| 211 | FNU | $1,626,540.21 |

12. *"Avoidance Actions"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors, Liquidating FedNat or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

13. *"Ballot"* means the applicable voting form distributed to such Holder on which the Holder is to indicate, among other things, acceptance or rejection of this Plan in accordance with the instructions contained therein and make any other elections or representations required pursuant to this First Amended Combined Disclosure Statement and Plan.

14. *"Bank of New York"* means The Bank of New York Mellon.

15. *"Bankruptcy Code"* means title 11 of the United States Code, sections 101-1532 (as may be amended) and applicable portions of titles 18 and 28 of the United States Code.

16. *"Bankruptcy Court"* means the United States District Court for the Southern District of Florida, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States Bankruptcy Court for the Southern District of Florida.

17. *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. section 2075, the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, the Local Rules of the United States District Court for the Southern District of Florida, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

18.    *"Bar Date"* means, collectively, the Administrative Claims Bar Date, the General Bar Date, the Governmental Unit Bar Date, the Rejection Bar Date, and any other applicable deadline to filed Claims referenced in the Plan.

19.    *"Bar Date Order"* means the means the order of the Bankruptcy Court establishing the deadline by which proofs of Claim must be Filed, entered at [ECF No. 62].

20.    *"Benefit Plan"* means the FNHC 401(k) Profit Sharing Plan, the FNHC 2018 Omnibus Incentive Compensation Plan, and any other (i) oral or written employment or consulting agreement to or under which one or more of the Debtors is a party or has or may have any actual or contingent liability or obligation, and (ii) employee benefit plan, program or arrangement currently sponsored, maintained or contributed to by one or more of the Debtors, or with respect to which one or more of the Debtors has or may have any actual or contingent liability or obligation (including any such obligations under any terminated plan or arrangement), including but not limited to employee pension benefit plans, as defined in Section 3(2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), multi-employer plans, as defined in Section 3(37) of ERISA, employee welfare benefit plans, as defined in Section 3(1) of ERISA, deferred compensation plans, stock option or other equity compensation plans, stock purchase plans, phantom stock plans, bonus plans, fringe benefit plans, life, health, dental, vision, hospitalization, disability and other insurance plans, employee assistance programs, severance or termination pay plans and policies, and sick pay and vacation plans or arrangements, whether or not described in Section 3(3) of ERISA.

21.    *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

22.    *"Cash"* means legal tender of the United States of America or the equivalent thereof, and with respect to the Disputed Claims Reserve, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally-recognized rating service, or interest-bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

23.    *"Causes of Action"* means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of any kind or character whatsoever, whether known or unknown and whether arising before, on, or after the Petition Date.

24.     *"Chapter 11 Cases"* means the chapter 11 cases commenced when each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date, which are jointly administered under case number 22-19451 in the Bankruptcy Court.

25.     *"Chief Financial Officer"* means Richard B. Gaudet, in his capacity as chief financial officer of each of the Debtors during the Chapter 11 Cases, pursuant to the Order Authorizing the Engagement of GGG Partners, LLC [ECF No. 59], dated December 20, 2022.

26.     *"Chief Restructuring Officer"* means Katie S. Goodman, in her capacity as chief restructuring officer of each of the Debtors during the Chapter 11 Cases, pursuant to the Order Authorizing the Engagement of GGG Partners, LLC [ECF No. 59], dated December 20, 2022.

27.     *"Claim"* means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors.

28.     *"Claims Objection Deadline"* means the deadline for objecting to Claims against the Debtors, which shall be six (6) months after the Effective Date; *provided, however,* that the Plan Administrator may seek additional extensions of this date from the Bankruptcy Court for cause shown.

29.     *"Class"* means a category of Holders of Claims or Interests as set forth in Article V of the First Amended Combined Disclosure Statement and Plan pursuant to section 1122(a) of the Bankruptcy Code.

30.     *"Committee"* means the official committee of unsecured creditors of FedNat Holding Company, et al., appointed by the U.S. Trustee on January 9, 2023, pursuant to section 1102 of the Bankruptcy Code [ECF No. 92], and any additional members that be subsequently be appointed by the U.S. Trustee.

31.     *"Confirmation Date"* means the date on which the Confirmation Order is entered by the Bankruptcy Court.

32.     *"Confirmation Order"* means the order of the Bankruptcy Court confirming the First Amended Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code.

33.     *"Convertible Senior Notes Indenture"* means the Indenture, dated as of April 19, 2021, by and between FNHC and the Convertible Senior Notes Indenture Trustee.

34.     *"Convertible Senior Notes Indenture Trustee"* means The Bank of New York Mellon, as indenture trustee with respect to the Convertible Senior Notes.

35.     *"Convertible Senior Notes"* means FNHC's convertible senior notes due 2026.

36.     *"ClaimCor"* means ClaimCor, LLC, a Florida limited liability company.

37.     *"ClaimCor General Unsecured Claim"* means a General Unsecured Claim against ClaimCor.

38.    *"ClaimCor Priority Claims"* means a Priority Claim against ClaimCor.

39.    *"ClaimCor Secured Claim"* means a claim against Debtor ClaimCor that is Secured.

40.    *"ClaimCor Stock Interests"* means the issued and outstanding common stock of ClaimCor, 100% of which is held by FNHC.

41.    *"CRIS"* means Century Risk Insurance Services, Inc., a Florida corporation.

42.    *"CRIS Stock Interests"* means the issued and outstanding common stock of CRIS, 100% of which is held by FNHC.

43.    *"CRIS General Unsecured Claim"* means a General Unsecured Claim against CRIS.

44.    *"CRIS Priority Claims"* means a Priority Claim against CRIS.

45.    *"CRIS Secured Claim"* means a Claim against Debtor CRIS that is Secured.

46.    "*D&O*" means any current or former officer, director, member or manager of any of the Debtors, solely in his or her capacity as such.

47.    "*D&O Insurance Carriers*" means all carriers of insurance that provided coverage for directors' and officers' liability pursuant to any D&O Liability Insurance Policy.

48.    "*D&O Liability Insurance Policies*" means all insurance policies for directors' and officers' liability maintained by the Debtors issued prior to the Effective Date, including any such "tail" policies, in each case with any amendments, supplements or modifications including, without limitation, the policies described in a schedule to be filed with the Plan Supplement.

49.    "*D&O Release Opt Out Order*" means the *Order Regarding Plan Releases, Discharges, Injunctions, and Exculpations as to Non-Voting Present and Former Directors and Officers of Debtors* ECF 739 entered by the Bankruptcy Court on October 3, 2023.

50.    *"Debtors"* or *"Debtors in Possession"* means FNHC, FNU, ClaimCor, CRIS, and Insure-Link prior to the Effective Date.

51.    "*Debtor Released Claims*" shall have the meaning set forth in Article XII.B of the First Amended Combined Disclosure Statement and Plan.

52.    "*Debtor Releases*" shall have the meaning set forth in Article XII.B of the First Amended Combined Disclosure Statement and Plan.

53.    *"DFS Receiver"* means the Florida Department of Financial Services, in its capacity as receiver for FNIC, and includes FNIC and FNIC's receivership estate.

54.    *"Disputed Claim"* means any Claim that is not yet an Allowed Claim.

55. *"Disputed Claims Reserve"* means the reserve funds created pursuant to Article VIII.B.1 of the First Amended Combined Disclosure Statement and Plan.

56. *"Distributions"* means the distributions of Cash to be made in accordance with the First Amended Combined Disclosure Statement and Plan and/or the Plan Administrator Agreement.

57. *"Distribution Record Date"* means the record date for determining the entitlement of Holders of Claims to receive Distributions under the First Amended Combined Disclosure Statement and Plan on account of Allowed Claims. The Distribution Record Date shall be two Business Days after the Confirmation Date.

58. *"District Court"* means the United States District Court for the Southern District of Florida.

59. *"Effective Date"* means the date selected by the Debtors and the Committee that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article XI.A have been satisfied or waived.

60. *"Entity"* means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

61. *"Estate"* means the estate of each of the Debtors created on the Petition Date by section 541 of the Bankruptcy Code.

62. *"Exculpated Parties"* means, collectively, the Debtors, the Chief Restructuring Officer, the Chief Financial Officer, the D&Os, GGG, the Committee and the individual members thereof, the Senior Notes Indenture Trustees, and the Professionals (each of the foregoing in its individual capacity as such).

63. *"Executory Contract"* means any executory contract to which any of the Debtors are a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

64. *"File"* or *"Filed"* means, with respect to any pleading, entered on the docket of the Chapter 11 Cases and properly served in accordance with the Bankruptcy Rules or with respect to a Claim, a Claim for which a Proof of Claim has been properly and timely filed in accordance with the Bar Date Order.

65. *"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter: (i) which has not been reversed, stayed, modified or amended; (ii) as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice; and (iii) as to which no appeal or petition for reconsideration, review, rehearing or certiorari is pending.

66.     *"First Amended Combined Disclosure Statement and Plan"* or *"Plan"* means this combined disclosure statement and chapter 11 plan of liquidation including, without limitation, the Plan Supplement, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time in accordance with the terms hereof.

67.     *"FNIC"* means FedNat Insurance Company, a Florida corporation.

68.     *"FNHC"* means FedNat Holding Company, a Florida corporation.

69.     *"FNHC Class Common Stock Interest"* means a FNHC Stock Interest represented by the 50,000,000 authorized shares of FNHC's Common Stock, $0.01 par value per share, including, without limitation, one of the 17,695,200 shares of Common Stock, $0.01 par value per share, of FNHC issued and outstanding as of the Petition Date, or any interest or right to convert into such a FNHC Stock Interest or acquire any FNHC Stock Interest that was in existence immediately before or on the Petition Date.

70.     *"FNHC General Unsecured Claim"* means a General Unsecured Claim against FNHC.

71.     *"FNHC Priority Claims"* means a Priority Claim against FNHC.

72.     *"FNHC Preferred Stock Interest"* means a FNHC Stock Interest represented by the 1,000,000 authorized shares of FNHC's Preferred Stock, $0.01 par value per share, of FNHC issued and outstanding as of the Petition Date, or any interest or right to convert into such a FNHC Stock Interest or acquire any FNHC Stock Interest that was in existence immediately before or on the Petition Date.

73.     *"FNHC Secured Claim"* means a Claim against Debtor FNHC that is Secured.

74.     *"FNHC Stock Interest"* means the interest of any holder of one or more of the equity securities of FNHC (including, without limitation, the FNHC Common Stock Interests, the FNHC Preferred Stock Interests and voting rights, if any, related to such equity securities) that existed immediately prior to the Petition Date, represented by issued and outstanding shares of common or preferred stock or other instruments evidencing a present ownership interest in FNHC, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including, without limitation, unvested restricted stock.

75.     *"FNU"* means FedNat Underwriters, Inc., a Florida corporation.

76.     *"FNU General Unsecured Claim"* means a General Unsecured Claim against FNU.

77.     *"FNU Priority Claims"* means a Priority Claim against FNU.

78.     *"FNU Sale"* shall have the meaning set forth in Article II.B.8.

79.     *"FNU Secured Claim"* means a Claim against Debtor FNU that is Secured.

80.    *"FNU Stock Interests"* means the issued and outstanding common stock of FNU, 100% of which is held by FNHC.

81.    *"General Bar Date"* means February 21, 2023, as established in the Bar Date Order.

82.    *"General Unsecured Claim"* means a Claim against a Debtor, other than a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Claim, Interests, but including Intercompany Claims.

83.    *"GGG"* means GGG Partners, LLC.

84.    *"Governmental Unit"* shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

85.    *"Governmental Bar Date"* means June 9, 2023, which is the deadline for Governmental Units to file proofs of claim on account of pre-petition Claims against any of the Debtors, as established in the Bar Date Order.

86.    *"Hale Related Parties"* means Monarch, HP Managing Agency, LLC, EVOLV Claim Solutions, LLC, HG Managing Agency, LLC, HP Holding Company, LLC, Hale Partnership Capital Management, LLC, Hale Partnership Capital Advisors, LLC, Hale Partnership Fund, L.P., MGEN II – Hale Fund, L.P., Clark-Hale Fund L.P., Smith-Hale Fund, L.P., Dickinson – Hale Fund, L.P., and Steven A. Hale.

87.    *"Holder"* means any Entity holding a Claim against or an Interest in one or more of the Debtors.

88.    *"Impaired"* means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

89.    "*Insurance Causes of Action*" means, collectively, any Cause of Action which may be asserted against any D&O or against any D&O Insurance Carriers, including without limitation, all Causes of Action which are or may be covered by any D&O Liability Insurance Policies.

90.    "*Insurance Injunction*" shall have the meaning set forth in Article XII.F of the First Amended Combined Disclosure Statement and Plan..

91.    *"Insure-Link"* means Insure-Link, Inc., a Florida corporation.

92.    *"Insure-Link General Unsecured Claim"* means a General Unsecured Claim against Insure-Link.

93.    *"Insure-Link Priority Claims"* means a Priority Claim against Insure-Link.

94.    *"Insure-Link Sale"* shall have the meaning set forth in Article II.B.6 of the First Amended Combined Disclosure Statement and Plan.

95. *"Insure-Link Secured Claim"* means a Claim against Debtor Insure-Link that is Secured.

96. *"Insure-Link Stock Interests"* means the issued and outstanding common stock of Insure-Link, 100% of which is held by CRIS.

97. *"Intercompany Claim"* means any Claim asserted by a Debtor against one or more of the other Debtors.

98. *"Interests"* means, collectively, FNHC Stock Interests, FNU Stock Interests, CRIS Stock Interests, and Insure-Link Stock Interests.

99. *"Initial Distribution Date"* means the date on which the Plan Administrator shall make an initial Distribution, which shall be a date selected by the Plan Administrator as soon as reasonably practicable after the Effective Date.

100. *"Lien"* shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

101. *"Liquidating ClaimCor"* means ClaimCor on or after the Effective Date.

102. *"Liquidating CRIS"* means CRIS on or after the Effective Date.

103. *"Liquidating FedNat"* means Liquidating FNHC, Liquidating ClaimCor, Liquidating CRIS, Liquidating FNU, and Liquidating Insure-Link, collectively. For the avoidance of doubt, the term "Liquidating FedNat" shall not include FNIC, FNIC's receivership estate, or the DFS Receiver.

104. *"Liquidating FNHC"* means FNHC on or after the Effective Date.

105. *"Liquidating FNU"* means FNU on or after the Effective Date.

106. *"Liquidating Insure-Link"* means Insure-Link on or after the Effective Date.

107. *"Monarch"* means Monarch National Insurance Company.

108. *"Monarch Litigation"* means the adversary proceeding styled <u>Monarch National Insurance Company, et al. v. FedNat Underwriters, Inc.</u>, Adversary No. 23-01053 (Bankr. S.D. Fla.), and any and all counterclaims held by the Debtors that may be asserted therein.

109. *"Net Free Cash"* means, the amount of Liquidating FedNat's Cash after full payment or satisfaction of, or appropriate reserve for: Allowed, Secured, Administrative, Priority Tax and Priority Claims; the costs of administering and implementing the First Amended Combined Disclosure Statement and Plan; and ordinary business expenses of the Plan Administrator and the Wind Down, *provided, however,* that Net Free Cash shall be determined, maintained and distributed on a Debtor-by-Debtor basis.

110. *"Petition Date"* means December 11, 2022, the date on which the Debtors commenced the Chapter 11 Cases.

111.    *"Plan Administrator"* means the Entity or individual appointed by the Committee and identified in the Plan Supplement, which shall be reasonably acceptable to the Debtors. To the extent the initial Plan Administrator either resigns, or is otherwise no longer able serve in such capacity, counsel for the Plan Administrator may file a motion with the Bankruptcy Court to appoint a successor Plan Administrator.

112.    *"Plan Administrator Agreement"* means the agreement governing, among other things, the duties of the Plan Administrator, as described in Article VII.D hereof and attached hereto as **Exhibit B**.

113.    *"Plan Proponents"* shall mean the Debtors and the Committee.

114.    *"Plan Proponents Solicitation Letter"* means that certain letter from the Plan Proponents urging Holders of Allowed Claims to vote in favor of the First Amended Combined Disclosure Statement and Plan. A copy of the Plan Proponents Solicitation Letter is attached to this First Amended Combined Disclosure Statement and Plan as **Exhibit A**.

115.    *"Plan Supplement"* shall mean the compilation of documents and forms of documents, agreements, schedules, and exhibits to this First Amended Combined Disclosure Statement and Plan, which shall be in form and substance acceptable to the Plan Proponents, and which shall include, among other things: (i) a list of Executory Contracts and Unexpired Leases, if any, to be assumed; (ii) the schedule of the D&O Liability Insurance Policies; (iii) the Schedule of Retained Causes of Action; and (iv) the identity and proposed compensation of the Plan Administrator.

116.    *"Priority Claims"* means all Claims entitled to priority under sections 507(a)(3) through (a)(7) of the Bankruptcy Code.

117.    *"Priority Tax Claims"* means Claims of Governmental Units of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

118.    *"Pro Rata"* means the ratio of the amount of an Allowed General Unsecured Claim to the aggregate amount of all General Unsecured Claims that have not yet been disallowed as to each of the Debtors individually.

119.    *"Professional"* means any person or Entity employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

120.    *"Proof of Claim"* means a proof of Claim Filed against the Debtors in the Chapter 11 Cases.

121.    *"Quarterly Distribution Date"* means the first Business Day after the end of each quarterly calendar period *(i.e.,* March 31, June 30, September 30 and December 31 of each calendar year) unless such other date is determined by the Debtors or the Plan Administrator in their discretion.

122.    *"Rejection Bar Date"* means the deadline to file a proof of claim for damages relating to the rejection of an Executory Contract or Unexpired Lease, which is: (a) in respect of an Executory Contract or Unexpired Lease previously rejected by a motion of the Debtors, the date established in the Final Order authorizing such rejection; and (b) in respect of an Executory Contract or Unexpired Lease rejected pursuant to the First Amended Combined Disclosure Statement and Plan, thirty (30) days after the Effective Date.

123.    *"Release Opt-Out"* means the election, to be made solely through validly-submitted Ballots, to opt-out of the release provisions.

124.    *"Released Party"* means, collectively, and in each case in its capacity as such, (a) the Debtors, (b) the Senior Notes Indenture Trustees, (c) the Committee, (d) the Hale Related Parties; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity's managers, managing members, principals, partners, members, employees, agents, financial and other advisors, attorneys, accountants, investment bankers, consultants, representatives and other Representatives.  For the avoidance of doubt, "Released Party" shall not include (i) any D&O; (ii) any person or Entity that is subject to, party to, or related to any Insurance Cause of Action; or (iii) any person or Entity that is subject to the Tax Refund Dispute in each case regardless of whether any person or Entity subject to clauses (i) through (iii) would otherwise fall within the definition of "Released Party; provided for the avoidance of doubt, none of the Hale Related Parties nor their Representatives are included within or subject to any of (i) – (iii) above.

125.    *"Releasing Parties"* means, collectively, and in each case in its capacity as such: (a) the Debtors, (b) the Senior Notes Indenture Trustees, (c) the Committee, (d) each Holder of a Claim that accepts or is deemed to accept the First Amended Combined Disclosure Statement and Plan, (e) each other Holder of a Claim that is entitled to vote on the First Amended Combined Disclosure Statement and Plan that does not both (1) vote to reject the First Amended Combined Disclosure Statement and Plan or abstain from voting to accept or reject the First Amended Combined Disclosure Statement and Plan and (2) elect the Release Opt-Out on its Ballot, and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entity's current or former subsidiaries and Affiliates, and its and their managed accounts or funds, managers, managing members, principals, partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Representatives and predecessors and successor in interest of any such party.  For the avoidance of doubt, the DFS Receiver is not a Releasing Party irrespective of whether they are the Holder of a Claim or Interest. For the further avoidance of doubt, the D&Os are not a Releasing Party irrespective of whether they are the Holder of a Claim or Interest.

126.    *"Representatives"* means, with regard to the Debtors, an Entity or the Committee, any and all members, employees, advisors, attorneys, accountants and agents, and their respective professional firms.

127.    *"Retained Causes of Action"* means, collectively, all Causes of Action which may be asserted by or on behalf of the Debtors or the Estates, a nonexclusive list of which is set forth in the Plan Supplement, against any Person or Entity, including without limitation any third parties, investors, individuals, or insiders that any of the Debtors or the Estates owns or has an interest in or can assert in any fashion, whether prepetition or post-petition, including, without limitation,

20

litigation claims, whether such causes of action arise from contract, tort theories of liability, insurance claims (including Insurance Causes of Action), statutory claims or other claims, objections to Claims, adversary proceedings, and Avoidance Actions against any Person or Entity, including without limitation those identified on the Statement of Financial Affairs of any Debtor as a recipient of a payment made or property transferred by or on behalf of such Debtor prior to the Petition Date, in each case, that have not been expressly released, exculpated, waived, settled or barred pursuant to Section XII of this Plan.

128.    *"Sales"* mean, collectively, the FNU Sale and the Insure-Link Sale.

129.    *"Schedules"* mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs, as may be amended from time to time, filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

130.    *"Schedule of Retained Causes of Action"* means the schedule of Causes of Action to be retained by the Estates and vested in the appropriate entity comprising Liquidating FedNat, which shall be included in the Plan Supplement.

131.    *"SEC"* means the United States Securities and Exchange Commission.

132.    *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Estate of the particular Debtor against which such Claim exists, has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the First Amended Combined Disclosure Statement and Plan as a Secured Claim.

133.    *"Senior Notes"* means, collectively, the 2029 Senior Notes and the Convertible Senior Notes.

134.    *"Senior Notes Claims"* means Claims held on account of the Senior Notes.

135.    *"Senior Indentures"* means, collectively, the Convertible Senior Notes Indenture and the 2029 Senior Notes Indenture.

136.    *"Senior Notes Indenture Trustees"* means, collectively, the Convertible Senior Notes Indenture Trustee and the 2029 Senior Notes Indenture Trustee.

137.    *"Senior Notes Indenture Trustee Charging Liens"* means any Lien or encumbrance or other priority in payment to which the Senior Notes Indenture Trustee is entitled under the terms of the Senior Indentures.

138.    *"Senior Notes Indenture Trustees Fees"* means, with respect to each Senior Notes Indenture Trustee, the fees and expenses (including reasonable fees and expenses of counsel) due and payable to such Senior Notes Indenture Trustee in accordance with the applicable Senior Indenture.

139.     *"Settlement Agreement"* means that certain Settlement and Mutual Release Agreement among the Debtors, the Committee, and the Hale Related Parties dated July 27, 2023 and approved by the Bankruptcy Court pursuant to the Order Granting *Expedited* Joint Motion of the Debtors and the Official Committee of Unsecured Creditors to Approve Compromise Among: (I) the Debtors; (II) the Official Committee of Unsecured Creditors; and (III) the Hale Related Parties entered on August 11, 2023 ECF No. 537

140.     *"Solicitation Procedures Order*" shall mean this Court's Order approving the Joint Motion of the Plan Proponents (i) Approving on an Interim Basis the Adequacy of Disclosures in the First Amended Combined Disclosure Statement and Plan, (ii) Scheduling the Confirmation Hearing and Deadline for Filing Objections, (iii) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the First Amended Combined Disclosure Statement and Plan, and Approving the Form Of Ballot And Solicitation Package, and (iv) Approving the Notice Provisions entered on September 1, 2023 [ECF No. 590] and amended on September 8, 2023 [ECF No. 630].

141.     *"Tax Allocation Agreement"* shall mean the Income Tax Allocation Agreement originally dated February 4, 2013, as modified thereafter, including Addendum Number 2 dated January 1, 2020.

142.     *"Tax Re-Allocation and Intercompany Settlements"* shall have the meaning set forth in Article VI.J.

143.     *"Tax Refund(s)"* shall mean any tax refunds that any of the Debtors or Liquidating FedNat have sought or may seek, including without limitation: (i) that certain tax refund for tax year 2018 in the approximate amount of $12.7 million due from the IRS; and (ii) any tax refund in respect of an employee retention tax credit.

144.     *"Tax Refund Dispute"* shall mean any dispute, contest or challenge between the Debtors or Liquidating FedNat and the DFS Receiver regarding the person or Entity that is entitled to any of the Tax Refunds.

145.     *"Third Party Released Claims*" shall have the meaning set forth in Article XII.C.

146. *"Unimpaired"* means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section1124 of the Bankruptcy Code.

145.     *"Unexpired Leases"* means a lease to which a Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

146.     *"U.S. Trustee"* means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Southern District of Florida.

147.     *"Voting Agent*" means Stretto, Inc.

148.     *"Voting Deadline*" shall mean **October 2, 2023 at 4:00 pm** (prevailing eastern time), the date and time by which Ballots to accept or reject the First Amended Combined

Disclosure Statement and Plan must be received by the Voting Agent in order to be counted, as set forth by the Solicitation Procedures Order.

149.    "*Voting Record Date*" means the date fixed by the Bankruptcy Court as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive Ballots and vote on the Plan.

150.    "*Wind Down*" means the wind down and dissolution of Liquidating FedNat following the Effective Date as set forth in Article VII.E hereof.

B.    *Rules of Interpretation*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the First Amended Combined Disclosure Statement and Plan in its entirety rather than to a particular portion of the First Amended Combined Disclosure Statement and Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (i) any reference to an authorization given or action taken by the Plan Administrator, on behalf of Liquidating FedNat also means an authorization given or action taken by the Plan Administrator,.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or Allowed hereby.

3.    All references herein to monetary figures shall refer to currency of the United States of America.

C.    *Exhibits*

The Plan Supplement shall include, among other things: (i) a list of Executory Contracts and Unexpired Leases, if any, to be assumed; (ii) the schedule of the D&O Liability Insurance Policies; (iii) the Schedule of Retained Causes of Action; and (iv) the identity and proposed compensation of the Plan Administrator.  The initial Plan Supplement shall be filed with the Clerk of the Bankruptcy Court on the earlier of seven (7) days prior to (i) the Voting Deadline or (ii) the deadline to object to confirmation of the First Amended Combined Disclosure Statement and Plan, or such later date as may be approved by the Bankruptcy Court, as may be amended or supplemented by additional documents Filed in the Chapter 11 Case prior to the Effective Date as

amendments to the Plan Supplement. Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court and shall also be posted by the Debtors' notice and solicitation agent, Stretto, Inc., at https://cases.stretto.com/FedNat. Holders of Claims or Interests may also obtain a copy of such exhibits, once filed, by calling Stretto, Inc. at 888-708-0592 (Toll-Free), by e-mail to teamfednat@stretto.com or by a written request sent to the following addresses:

Stretto, Inc.
Attn: FedNat
410 Exchange, Ste 100
Irvine, CA 92602

# ARTICLE II

# BACKGROUND

A.    *General Background*[13]

    1.    <u>The Debtors' History and Organizational Structure and History</u>

FNHC is a regional insurance holding company that controls substantially all aspects of the insurance underwriting, distribution and claims processes through subsidiaries and contractual relationships with independent agents and general agents. FNHC, through its wholly owned subsidiaries, are authorized to underwrite, and/or place homeowners multi-peril ("homeowners"), federal flood and other lines of insurance in Florida and other states.

Prior to the Petition Date, FNHC owned three insurance subsidiaries which included: FNIC, Maison Insurance Company ("<u>MIC</u>")[14], and Monarch .  Monarch is a Florida Property Insurance company licensed to write homeowners property and casualty insurance in Florida.  As of the Petition Date, Monarch was owned 70% by a group of investors managed by Hale Partnership Capital Management LLC and 30% by FNHC (as discussed below in conjunction with the **"**<u>Monarch Transaction</u>**"**).

On September 21, 2022, the Florida Office of Insurance Regulation ("<u>OIR</u>") notified the Florida Department of Financial Services of OIR's determination that one or more grounds existed for the initiation of receivership proceedings against FNIC. In response to OIR's notification, on

---

[13] Further information regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in detail in the *Declaration of Katie S. Goodman, Chief Restructuring Officer of FedNat Holding Company, In Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") [ECF No.14], which is incorporated by reference herein. Copies of the First Day Declaration and all other filings in the Chapter 11 Cases can be obtained (and viewed) free of charge on the Debtors' case website at: https://cases.stretto.com/FedNat.

[14] MIC merged into FNIC on August 11, 2022, with FNIC being the surviving Entity.

September 23, 2022, the DFS Receiver petitioned the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida (the "State Court"), for an order appointing the DFS Receiver as receiver for FNIC, in the action styled *State of Florida ex rel., Dep't of Fin. Servs. v. FedNat Insurance Company*, Case No. 2022-CA-001688 (the "Receivership Proceedings"). On September 27, 2022, the State Court in the Receivership Proceedings entered a *Consent Order Appointing the Florida Department of Financial Services as Receiver of FedNat Insurance Company for Purposes of Liquidation, Injunction, and Notice of Automatic Stay* (the "Receivership Order").

Through FNHC's wholly-owned subsidiary, FNU, FNHC served as managing general agent for Monarch (and prior to entry of the Receivership Order, FNIC). ClaimCor, a wholly-owned subsidiary, is a claims solutions company that, prior to entry of the Receivership Order, processed claims for FNIC[15]. CRIS is a wholly-owned subsidiary that provides services and reinsurance brokerage. In turn, CRIS wholly owns Insure-Link, an insurance agency. The Debtors' organizational structure (after the Monarch Transaction, discussed below) is as follows:



2.    Events Leading to Bankruptcy Filings

As an industry, the Florida property insurance industry lost over $1.6 billion in 2020 and over $1.5 billion in 2021, driven by catastrophe losses, higher catastrophe reinsurance costs, and an adverse claims environment stemming in large part from litigation abuse and other forms of

---

[15] ClaimCor, along with MIC, were purchased by FNHC on December 2, 2019, from 1347 Property Insurance Holdings, Inc. ("PIH"). Specifically, FNHC purchased from PIH all of the outstanding equity of MIC and ClaimCor (collectively, the "Maison Companies"). The Maison Companies provide multi-peril and wind/hail only coverage to personal residential dwellings and manufactured/mobile homes in Louisiana, Texas and Florida. The acquisition enabled FNHC to increase geographic diversification of its book of business outside of Florida and generate additional business with operating synergies and general and administrative expense savings. On August 11, 2022, MIC merged into FNIC, with FNIC being the surviving Entity.

social inflation of claim costs[16].  Indeed, in 2022 alone, five other Florida insurance companies have been put into receivership by the OIR.

The Debtors' financial results for 2021 reflect the impact of an elevated number of severe weather events, including seven named storms that made landfall in the United States.  During this period, the Debtors were impacted by notable weather events impacting Florida, Texas, Louisiana, and South Carolina, particularly losses associated with Winter Storm Uri, which caused heavy residential damage in Texas, primarily associated with freezing temperatures causing widespread instances of burst water pipes.  The total impact of 2021 catastrophe losses on the Debtors was over $800 million on a gross basis, which was reduced to $86 million, pre-tax, net of amounts ceded to the Debtors' reinsurance partners and other recoveries including related claims handling revenues.  Over 80% of these net catastrophe losses stemmed from the Debtors' non-Florida books of business, despite those books representing less than 40% of the Debtors' gross written premiums.

Further, during the first quarter of 2022, the Debtors reported a net loss of $31.3 million, with the Debtors' losses and loss adjustment expenses increasing 22.4%.  These net losses were primarily driven by larger net catastrophe losses and lower gross premiums earned.

In April 2022, the Demotech[17] rating of FNIC was downgraded from an "A" rating to an "S" rating, which adversely impacted FNHC's ability to obtain excess-of-loss reinsurance for coverage beginning July 1, 2022 and placed FNIC in non-compliance with the OIR.

In order to recapitalize, on May 23, 2022, FNHC entered into an agreement with Hale Partnership Capital Management, LLC ("HPCM"), whereby, among other things, HPCM and its affiliates invested $15 million into Monarch, which caused HPCM to become the majority owner of Monarch (the "Monarch Transaction").  FNHC also invested $10 million into Monarch for the remainder of Monarch's common stock and retains two seats on Monarch's board of directors.

Pursuant to the Monarch Transaction, Monarch assumed approximately 83,000 policies insuring Florida insureds from FNIC effective June 1, 2022.  FNIC's remaining Florida policies

---

[16] An example is the frivolous lawsuits plaguing assignment of benefits ("AOB") property insurance litigation and the one-way attorney's fees involving these suits.  Under an AOB, a policyholder assigns his or her right to file a claim under a homeowners' policy to a third-party contractor, who begins work to repair property damage as quickly as possible.  The contractor then files a claim against the insurer, who has never had an opportunity to assess the loss or determine if any unnecessary repairs were performed or whether repair costs were inflated.  If the insurer denied the contractor's claim, Florida's one-way attorney's fee statute (which allowed courts to order the insurer to pay attorney's fees if the plaintiff prevailed, but would not allow the insurer to collect attorney's fees in successfully defending against such lawsuits) incentivized aggressive plaintiff's lawyers to file lawsuits against insurers without the risk of having to pay the insurer's legal fees if they did not prevail.

Florida, which accounts for just 9% of property insurance claims, generates 79% of the nation's homeowner lawsuits.  This entire scheme has been described as "a blizzard of 'frivolous' lawsuits by shady contractors who wield the threat of attorney fee multipliers after homeowners sign over their benefits."  *See* https://www.floridabar.org/the-florida-bar-news/governor-signs-property-insurance-reforms-and-condo-safety-measures/

[17] Demotech, Inc. is an American insurance rating agency headquartered in Columbus, Ohio, that focuses on independent, regional and specialty companies in the Property and Casualty insurance industry.

were canceled effective June 29, 2022, with unearned premiums being remitted to policyholders. Further, FNHC cancelled the remaining policies of MIC effective June 29, 2022. Policy servicing and claims administration with respect to policies transferred to Monarch continued to be performed by FNU. Finally, all FNIC business written in states other than Florida (*i.e.*, Alabama, Mississippi, South Carolina, and Texas) was transferred to and assumed by a SageSure Insurance Managers, LLC ("SageSure")[18] carrier partner, and with all Louisiana policies being canceled by FNIC effective July 1, 2022, with policyholders receiving an offer of replacement coverage from a SageSure carrier partner effective upon cancellation of the FNIC policy.

Thus, through the Monarch Transaction, FNHC materially exited non-Florida markets[19]. In doing so, the Debtors reduced their exposure to catastrophe losses and earnings volatility and re-focused on Florida operations, where the Debtors' approved rates have increased substantially, and where recent legislative actions have begun to improve the claims litigation environment.

On September 8, 2022, FNHC and HPCM entered into a Stock Purchase Agreement (the "Stock Purchase Agreement") and closed the sale of 30,000 shares of the common stock of Monarch held by FNHC to HPCM and its affiliates for $2.5 million. As a result of this transaction, HPCM and its affiliates increased their ownership of Monarch's outstanding common stock to 70% and FNHC reduced its ownership of Monarch's common stock to 30%.

As discussed above, on September 27, 2022, the State Court in the Receivership Proceedings entered the Receivership Order. Following entry of the Receivership Order, the DFS Receiver took over control of FNIC.

As mandated by the Receivership Order, FNIC's insurance policies were canceled on October 27, 2022 and were rewritten on other insurance companies. The DFS Receiver will service the "run-off" of the FNIC policies in-house and through contracts with other third-party administrators. These services were previously rendered by FNHC.

Thus, after the entry of the Receivership Order, FNHC's primary business consisted of its servicing functions for Monarch under the MGA Agreement. As a result, FNHC experienced a significant loss of revenue, an impairment of its cash flow, and an immediate deterioration in its enterprise value.

---

[18] FNHC is a party to a managing general underwriting agreement with SageSure to facilitate its FNIC homeowners business outside of Florida. As a percentage of the total homeowners premiums, 11.7% and 24.5% of FNHC's premiums were underwritten by SageSure, for the three months ended March 31, 2022 and 2021, respectively. As part of FNHC's partnership with SageSure, previously FNHC entered into a profit share agreement, whereby FNHC shared 50% of net profits of this line of business through June 30, 2020, as calculated per the terms of the agreement, subject to certain limitations, which included limits on the net losses that SageSure could realize.

[19] FNHC is a party to an insurance agency master agreement with Ivantage Select Agency, Inc. ("ISA"), an affiliate of Allstate Insurance Company ("Allstate"), pursuant to which FNHC has been authorized by ISA to appoint Allstate agents to offer FNIC homeowners insurance products to consumers in Florida. As a percentage of the total homeowners premiums FNHC underwrote, 17.4% and 19.6% were from Allstate's network of Florida agents, for the three months ended March 31, 2022 and 2021, respectively.

  
Moreover, in addition to the problems emanating from FNIC's demise, FNHC was in default under the terms of the Senior Notes Indentures.

Finally, on September 23, 2022, Monarch emailed[20] FNHC and FNU a Notice of Default and Violation; Demand for Payment; Reservations of Rights letter (the "Monarch Default Notice").  In the Monarch Default Notice, Monarch alleged that FNHC and FNU: (i) were in breach of various provisions of the MGA Agreement; and (ii) that FNIC, FNU and FNHC owe approximately $4.1 million to Monarch for various items allegedly required to be paid to Monarch under various provisions of the MGA Agreement.  The Debtors disputed the Monarch Default Notice and further contended that Monarch is indebted to them in the approximate amount of $2.6 million after amounts between the companies were setoff.

Subsequently, however, on October 31, 2022, FNHC and FNU received from Monarch a notice of termination as to the MGA Agreement effective January 1, 2022.

B.      *The Chapter 11 Cases*

Under chapter 11 of the Bankruptcy Code, a debtor is authorized to liquidate its assets for the benefit of its creditors and estates. In addition to permitting the liquidation of a debtor, another goal of chapter 11 is to promote the equality of treatment of similarly situated creditors and equity interest holders with respect to the distribution of a debtor's assets. In furtherance of these two goals, section 362 of the Bankruptcy Code generally provides for, upon the filing of a petition for relief under chapter 11, an automatic stay of substantially all acts and proceedings against a debtor and its property, including all attempts to collect claims or enforce liens that arose prior to the commencement of the debtor's chapter 11 case.

The commencement of a case under chapter 11 creates an estate comprising all of the debtor's legal and equitable interests as of the petition date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession."

The consummation of a plan is the principal objective of a chapter 11 case. A chapter 11 plan sets forth the means for satisfying claims against and interests in the debtor. Confirmation of a plan by the bankruptcy court makes the plan binding, subject to the occurrence of an effective date, upon the debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor or equity interest holder of a debtor.

The following is a brief description of certain material events that have occurred during these Chapter 11 Cases.

---

[20] The Debtors contend that pursuant to the MGA Agreement, the Monarch Default Notice did not provide proper notice to the Debtors, and is thus an ineffective notice.  However, on October 13, 2022, counsel for Monarch confirmed that the Monarch Default Notice was not an actual notice of termination under Article 8 of the MGA Agreement and that Monarch did not intend that the MGA Agreement would be terminated within 30 days of the Monarch Default Notice.

1.      The Debtors' Bankruptcy Filings and First Day Motions

On the Petition Date, each of the Debtors filed a voluntary chapter 11 bankruptcy petition. Substantially contemporaneously with the filing the petitions, the Debtors filed a number of "first day" motions, including (i) a motion for an order authorizing the continued use of the Debtors' cash management system, including authorizing the Debtors to maintain existing bank accounts and business forms; (ii) a motion for an order authorizing the Debtors to pay all pre-petition employee obligations; (iii) a motion for an order authorizing the Debtors to maintain their existing insurance coverage; (iv) a motion for an order authorizing the Debtors to establish procedures for the restriction of transfers of interest in the Debtors estates (collectively, the "First Day Motions"). On December 16 and 20, 2022, the Court granted each of the First Day Motions on an interim basis, and each of the First Day Motions was subsequently approved on a final basis on January 27, 2023.

2.      Retention of Professionals

On January 27, 2023, the Bankruptcy Court entered an order authorizing the Debtors to retain and compensate Nelson Mullins Riley & Scarborough LLP, as bankruptcy counsel [ECF No. 137].  On May 19, 2023, the Bankruptcy Court entered an order authorizing the Debtors to retain and compensate Aprio, LLP for providing tax services to the Debtors in the Chapter 11 Cases [ECF No. 351].

3.      Appointment of the Committee

On January 9, 2023, the Office of the U.S. Trustee appointed the Committee consisting of five members: (i) TierPoint, LLC; (ii) Lead Adjusting, LLC; (iii) Links Insurance Services; (iv) The Bank of New York Mellon; and (v) Sawgrass Commerce Center. The Committee selected Pachulski Stang Ziehl & Jones LLP and Bast Amron LLP as its legal counsel.  To assist the Committee in carrying out its duties, the Committee retained AlixPartners, LLP as its financial advisor, which retentions were all approved by the Bankruptcy Court on March 1, 2023 [ECF Nos. 205, 207, and 209]. On July 17, 2023, the Bankruptcy Court approved the employment of MFSolomon Tax Consulting LLC as special tax counsel for the Committee effective as of May 1, 2023 [ECF No. 450].

4.      Section 341(a) Meeting of Creditors

On January 12, 2023, the U.S. Trustee presided over the section 341(a) meeting of creditors in the Chapter 11 Cases.

5.      Schedules and Statements

On January 5, 2023, as amended on January 13, 2023 the Debtors filed their Schedules in compliance with section 521 of the Bankruptcy Code and Bankruptcy Rule 1007. The Schedules set forth, among other things, the Debtors' assets and liabilities and executory contracts and unexpired leases.

6.      Debtors' Motion to Sell Substantially All of Debtor Insure-Link's Assets under Section 363 of the Bankruptcy Code

On December 27, 2022, the Debtors filed their Motion Pursuant to 11 U.S.C. Sections 105, 363, 365, 503 and 507 and Bankruptcy Rules 2002, 6004 and 6006 for (i) Entry of an Order (a) Establishing Bid and Auction Procedures Related to the Sale of Substantially all of Debtor Insure-Link, Inc.'s Assets; (b) Approving Related Bid Protections; (c) Scheduling an Auction and Sale Hearing; (d) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assumed and Assigned; and (e) Granting Related Relief; and (ii) Entry of an Order (a) Approving the Sale of Substantially all of Debtor Insure-Link, Inc.'s Assets Free and Clear of all Liens, Claims, Encumbrances and Interests; and (b) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Filed by Debtor FedNat Holding Company [ECF No. 79] (the "Insure-Link Sale Motion").

On January 27, 2023, the Bankruptcy Court entered an order approving certain bidding procedures in connection with the Insure-Link Sale Motion [ECF No. 143].

On February 23, 2023, the Bankruptcy Court entered an order approving Insure-Link Sale Motion [ECF No. 191], pursuant to which the assets were sold to NSI Insurance Group, LLC for a purchase price of $1,890,000 (the "Insure-Link Sale").

7.      Debtors' Motion to Sell Excess Computer and Office Equipment

On January 27, 2023, the Debtors filed their Motion to Authorize the Sale of Excess Computer and Office Equipment [ECF No. 141] (the "Excess Equipment Sale Motion").

On March 1, 2023, the Bankruptcy Court entered an order approving the Excess Equipment Sale Motion [ECF No. 211], and the Debtors' excess computer and office equipment have been sold pursuant to the Excess Equipment Sale Motion.

8.      Debtors' Motion to Sell Certain Assets of Debtor FNU under Section 363 of the Bankruptcy Code

On February 27, 2023, the Debtors filed their Emergency Motion Pursuant to 11 U.S.C. Sections 105, 363, 365, 503 and 507 and Bankruptcy Rules 2002, 6004 and 6006 for (i) Entry of an Order (a) Establishing Bid and Auction Procedures Related to the Sale of Certain of Debtor FedNat Underwriters, Inc.'s Assets; (b) Approving Related Bid Protections; (c) Scheduling an Auction and Sale Hearing; (d) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases to be Assumed and Assigned; and (e) Granting Related Relief; and (ii) Entry of an Order (a) Approving the Sale of Certain of Debtor FedNat Underwriters, Inc.'s Assets Free and Clear of all Liens, Claims, Encumbrances and Interests; and (b) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Filed by Debtor FedNat Holding Company  [ECF No. 197] (the "FNU Sale Motion").

On March 10, 2023, the Bankruptcy Court entered an order approving certain bidding procedures in connection with the FNU Sale Motion [ECF No. 227].

On March 30, 2023, the Bankruptcy Court entered an order approving FNU Sale Motion [ECF No. 285], pursuant to which the assets were sold to NSI Insurance Group, LLC for a purchase price of $2,000,000 (the "FNU Sale").

9.     Rejection of Executory Contracts and Unexpired Leases

To date, the Debtors have filed one motion seeking rejection of an executory contract [ECF No. 48] which was granted by the Bankruptcy Court [ECF No. 131] and one omnibus motion seeking rejection of unexpired leases [ECF No. 65] which was granted by the Bankruptcy Court [ECF No. 136].

10.     TierPoint Rejection Motion

On February 7, 2023, TierPoint, LLC ("TierPoint") filed a Motion to (A) Assume or Reject Debtor's Executory Contract with TierPoint Pursuant to 11 U.S.C. § 365, or in the Alternative, (B) Grant TierPoint Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) [ECF No. 163] (the "TierPoint Rejection Motion").  In the Rejection Motion, TierPoint seeks to either compel the Debtors to reject the Master Services Agreement dated July 10, 2018 between TierPoint and FNU ("MSA") or relief from the automatic stay to terminate the MSA.

The Debtors and TierPoint consensually resolved the TierPoint Rejection Motion, by entry of an agreed order on May 15, 2023 [ECF No. 350] which provided for rejection of the MSA as of June 30, 2023.

11.     Monarch Adversary Proceeding

On March 15, 2023, Monarch and HP Managing Agency, LLC filed a complaint initiating Adversary Proceeding Number 23-01053 (the "Monarch Adversary Complaint").  The Monarch Adversary Complaint alleged various causes of action against FNU.

On May 15, 2023, the Debtors filed their Answer, Counterclaims and Third-Party Complaint.

12.     CHW Adversary Proceeding

On May 9, 2023, FNHC filed a complaint against CHW Group, Inc. initiating Adversary Proceeding Number 23-01111 (the "CHW Complaint").  The CHW Complaint alleged breach of contract against CHW Group, Inc. and sought judgment in the amount of $122,073.72 plus attorney's fees and costs.

CHW Group, Inc. failed to answer or otherwise respond to the CHW Complaint by the applicable deadline and, as a result, the clerk of the Bankruptcy Court entered a notice of default on July 19, 2023. On July 31, 2023, the Debtors filed a motion for default judgment seeking a judgment in the amount of $122,073.72 plus attorney's fees in the amount of $8,662, and costs in the amount of $350. A hearing on the motion for default judgment has been scheduled for August 24, 2023.

13.    <u>Monarch's Motion for Appointment of an Examiner</u>

On June 20, 2023, Monarch and HP Managing Agency, LLC filed a Motion for Appointment of Examiner Pursuant to Section 104(c) of the Bankruptcy Code (the "<u>Examiner Motion</u>").  es of action against FNU.

14.    <u>Settlement Agreement with Hale Related Parties</u>

On July 27, 2023, the Debtors (through the Chief Restructuring Officer), the Committee, and the Hale Related Parties entered into the Settlement Agreement.  The Settlement Agreement, among other things, fully resolves the Monarch Adversary Complaint, the Examiner Motion, provides for the Allowed Monarch Claims and the Allowed HGMA Claims, and provides for the sale of FNHC's remaining interest in Monarch for the sum of $3,000,000.00. The Settlement Agreement was approved by the Bankruptcy Court on August 11, 2023 [ECF No. 537].

15.    <u>Remaining Assets to Liquidate</u>

As of the filing of this First Amended Combined Disclosure Statement and Plan, the Debtors have few, if any, meaningful assets left to liquidate by way of a sale to a third-party. The Debtors have marketed the assets of ClaimCor (which consist primarily of goodwill and intellectual property) extensively since the Petition Date but have received no interest from potential purchasers.

Pursuant to the terms of this First Amended Combined Disclosure Statement and Plan, the Plan Administrator will succeed to the rights to these assets on the Effective Date and any further marketing of such assets will be the Plan Administrator's determination.

This Amended First Amended Combined Disclosure Statement and Plan is the product of the Debtors and the Committee's efforts with respect to a process for the Debtors to exit from chapter 11 that maximizes the value of the Debtors' estates.

**ARTICLE III**

**CONFIRMATION PROCEDURES AND VOTING PROCEDURES**

A.    *Confirmation Procedures*

On September 1, 2023, the Court entered the Solicitation Procedures Order, as later amended on September 8, 2023. Among other things, the Solicitation Procedures Order, approved the adequacy of disclosures in the First Amended Combined Disclosure Statement and Plan on an interim basis and set certain deadlines for the solicitation of the First Amended Combined Disclosure Statement and Plan, voting on the First Amended Combined Disclosure Statement and Plan, filing objections to the First Amended Combined Disclosure Statement and Plan and a hearing to consider approval of the First Amended Combined Disclosure Statement and Plan. The Solicitation Procedures Order also fixed the Voting Record Date as **August 3, 2023.**  The Confirmation Hearing has been scheduled for **October 10, 2023 at 10:00 a.m.** (prevailing eastern time) at the Bankruptcy Court, 299 East Broward Blvd., Courtroom 301, Ft. Lauderdale, FL 33301 to consider (a) final approval of the First Amended Combined Disclosure Statement and Plan as

providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) Confirmation of the First Amended Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

B.    *Procedures for Objections*

Any objection to final approval of the First Amended Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or Confirmation of the First Amended Combined Disclosure Statement and Plan must be made in writing and Filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **September 27, 2023 at 4:00 p.m. (prevailing Eastern time)** upon (i) the Debtors' counsel, Nelson Mullins Riley & Scarborough LLP, Shane G. Ramsey, 1222 Demonbreun Street, Suite 1700, Nashville, TN, 37203 E-Mail: shane.ramsey@nelsonmullins.com; (ii) the Office of the United States Trustee for the Southern District of Florida, (a) 51 SW First Avenue, Room 1204, Miami, FL 33130; and (b) J. Steven Wilkes, 501 East Polk Street, Suite 1200, Tampa, Florida 33602, E-Mail: Steven.Wilkes@usdoj.gov; and (iii) counsel to the Official Committee of Unsecured Creditors, (a) Bradford J. Sandler, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, E-Mail: bsandler@pszjlaw.com, and (b) Paul Labov, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, E-Mail: plabov@pszjlaw.com. Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

C.    *Requirements for Confirmation*

The Bankruptcy Court will confirm the First Amended Combined Disclosure Statement and Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code, as follows:

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Debtors have complied with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means proscribed by law;

- Any payment made or promised by the Debtors or by an Entity acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

- The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a successor to the Debtors under the Plan, and the

appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity holders and with public policy;

- With respect to each Class of Claims or Interests, each Holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan on account of such Holder's Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. *See* discussion of "Best Interests Test," below;

- Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Priority Claims will be paid in full, in Cash, on or as soon as reasonably practical after the Effective Date and that Holders of Priority Tax Claims may receive on account of such Claims deferred Cash payments, over a period not exceeding five years after the Petition Date, of a value as of the Effective Date, equal to the Allowed amount of such Claims with interest from the Effective Date;

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class;

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor of the Debtors under the Plan unless such liquidation or reorganization is proposed in the Plan. *See* discussion of "Feasibility," below; and

- All Statutory Fees payable under section 1930 of title 28, as determined by the Bankruptcy Court at the Combined Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date.

- The Debtors believe that the Plan complies, or will comply, with all such requirements.

1.      Feasibility:  Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors (unless such liquidation or reorganization is proposed in the First Amended Combined Disclosure Statement and Plan). Inasmuch as the Debtors' assets have principally been liquidated and the First Amended Combined Disclosure Statement and Plan provides for the distribution of all of the Cash proceeds of the Debtors' assets to Holders of Claims that are Allowed as of the Effective Date in accordance with the Plan, for purposes of this test, the Plan Proponents have analyzed the ability of Liquidating FedNat to meet its obligations under the First Amended Combined Disclosure Statement and Plan. Based on the Plan Proponents' analysis, the Plan Administrator will have sufficient assets to accomplish its tasks under the First Amended Combined Disclosure Statement and Plan. Therefore, the Plan Proponents believes that the liquidation pursuant to the First Amended Combined Disclosure Statement and Plan will meet the feasibility requirements of the Bankruptcy Code.

34

2.    <u>Best Interests Test and Liquidation Analysis</u>:  Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code. To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to chapter 7 cases under the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtors' unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class. <u>See</u> Liquidation Analysis attached as **<u>Exhibit C</u>** to this First Amended Combined Disclosure Statement and Plan.

Because the First Amended Combined Disclosure Statement and Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the First Amended Combined Disclosure Statement and Plan. However, the Plan Proponents believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in chapter 7.

The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee. The Plan Proponents believe such amount would exceed the amount of expenses that would be incurred in implementing the First Amended Combined Disclosure Statement and Plan and winding up the affairs of the Debtors. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for Professionals) that are allowed in the chapter 7 case. Conversion also would likely delay the liquidation process and ultimately distribution of whatever value remains in the Estates.

Accordingly, the Plan Proponents believe that Holders of Allowed Claims would receive less than anticipated under the First Amended Combined Disclosure Statement and Plan if the Chapter 11 Cases were converted to chapter 7 cases, and therefore, the classification and treatment of Claims and Interests in the First Amended Combined Disclosure Statement and Plan complies with section 1129(a)(7) of the Bankruptcy Code.

D.     *Requirements of Section 1129(b) of the Bankruptcy Code: Confirmation Without Necessary Acceptances; Cramdown*

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because Holders of Claims and Interests in FNHC Classes 5 and 6 are deemed to reject the First Amended Combined Disclosure Statement and Plan, the Plan Proponents will seek Confirmation of the First Amended Combined Disclosure Statement and Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. The Plan Proponents believe that such requirements are satisfied, as no Holder of a Claim or Interest junior to those in FNHC Classes 5 and 6, respectively, will receive or retain any property under the First Amended Combined Disclosure Statement and Plan.

A plan does not "discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Plan Proponents believe that, under the First Amended Combined Disclosure Statement and Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class. Accordingly, the Plan Proponents believe that the First Amended Combined Disclosure Statement and Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

(a) <u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

(b) <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

(c) <u>Interests</u>. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan. As discussed above, the Plan Proponents believe that the Distributions provided under the Plan satisfy the absolute priority rule, where required.

E.     *Classification of Claims Interests*

Section 1122 of the Bankruptcy Code requires the First Amended Combined Disclosure Statement and Plan to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class. The First Amended Combined Disclosure Statement and Plan creates separate Classes to deal respectively with secured Claims, unsecured Claims and Interests. The Debtors believe that the First Amended Combined Disclosure Statement and Plan's classifications place substantially similar Claims or Interests in the same Class and thus, meet the requirements of section 1122 of the Bankruptcy Code.

F.     *Impaired Claims or Interests*

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes impaired by the First Amended Combined Disclosure Statement and Plan and receiving a payment or Distribution under the First Amended Combined Disclosure Statement and Plan may vote on the First Amended Combined Disclosure Statement and Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be impaired if the First Amended Combined Disclosure Statement and Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Interests treated in such Class. The Holders of Claims in Classes not impaired by the First Amended Combined Disclosure Statement and Plan are deemed to accept the First Amended Combined Disclosure Statement and Plan and do not have the right to vote on the First Amended Combined Disclosure Statement and Plan. The Holders of Claims or Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the First Amended Combined Disclosure Statement and Plan are deemed to reject the First Amended Combined Disclosure Statement and Plan and do not have the right to vote. Finally, the Holders of Claims or Interests whose Claims or Interests are not classified under the First Amended Combined Disclosure Statement and Plan are not entitled to vote on the First Amended Combined Disclosure Statement and Plan.

G.     *Eligibility to Vote on First Amended Combined Disclosure Statement and Plan*

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in FNHC Classes 3 and 4, FNU Classes 3 and 4, ClaimCor Classes 3 and 4, CRIS Classes 3 and 4, and Insure-Link Classes 3 and 4 may vote on the First Amended Combined Disclosure Statement and Plan. Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, only the Holders of Allowed Claims in FNHC Classes 3 and 4, FNU Classes 3 and 4, ClaimCor Classes 3 and 4, CRIS Classes 3 and 4, and Insure-Link Classes 3 and 4 are Impaired and entitled to vote to accept or reject the First Amended Combined

Disclosure Statement and Plan (or be the Holder of a Claim in such one of such Classes that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

H.       *Procedure/Voting Deadlines*

In order for your Ballot to count, you must either (1) complete an electronic Ballot at https://balloting.stretto.com/ or (2) complete, date, sign and properly mail, courier or personally deliver a paper Ballot (please note that envelopes are not included with the Ballot) to the Voting Agent at the following address: FedNat Ballot Processing, c/o Stretto, Inc., 410 Exchange, Ste 100, Irvine, CA 92602.

Ballots must be submitted electronically, or the Voting Agent must RECEIVE physically original Ballots by mail or overnight delivery, on or before **October 2, 2023 at 4:00 p.m (prevailing Eastern time)** (the "Voting Deadline"). Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a Ballot is submitted electronically or the Voting Agent receives your original paper Ballot.

Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection, or abstention, as the case may be, of the First Amended Combined Disclosure Statement and Plan.

Holders of Claims or Interests that wish to opt out of the release, injunction, and related provisions contained in Article XII may do so by selecting the opt out option on the Ballot. The election of a Holder of a Claim or Interest to opt out of the release, injunction, and related provisions contained in Article XII of the First Amended Combined Disclosure Statement and Plan shall not impair or otherwise affect such Holder's claim(s), interest(s), or right or entitlement to receive a distribution under the First Amended Combined Disclosure Statement and Plan.

I.       *Acceptance of First Amended Combined Disclosure Statement and Plan*

As a Creditor, your acceptance of the First Amended Combined Disclosure Statement and Plan is important. In order for the First Amended Combined Disclosure Statement and Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and at least two-thirds in dollar amount of the Claims voting (of each impaired Class of Claims) must vote to accept the First Amended Combined Disclosure Statement and Plan. At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the First Amended Combined Disclosure Statement and Plan. The Debtors urge that you vote to accept the First Amended Combined Disclosure Statement and Plan. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY SUBMIT YOUR BALLOT. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

J.       *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim

temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the First Amended Combined Disclosure Statement and Plan for all purposes, including for purposes of determining acceptance of the First Amended Combined Disclosure Statement and Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV

## ADMINISTRATIVE AND PRIORITY CLAIMS

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Interest qualifies within the description of that Class; and (ii) the Claim or Interest has not been paid, released, or otherwise compromised before the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Accrued Professional Compensation Claims, and Priority Tax Claims are not classified under the Plan and are excluded from the following Classes.

A.    *Administrative Claims*

Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, the Plan Administrator shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (iii) at such later time as may be agreed upon by such Holder and the Plan Administrator; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

B.    *Priority Tax Claims*

The Plan Administrator shall pay each Holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim in Cash, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed Priority Tax Claim becomes Allowed; and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

C.    *Accrued Professional Compensation Claims*

1.    Final Fee Applications

All final requests for compensation or reimbursement of Professionals retained in these Chapter 11 Cases for Accrued Professional Compensation, incurred on or before the Effective Date shall be filed and served on: (a) the Plan Administrator; (b) the Debtors' counsel, Nelson Mullins Riley & Scarborough LLP, Shane G. Ramsey, 1222 Demonbreun Street, Suite 1700, Nashville, TN 37203, E-Mail: shane.ramsey@nelsonmullins.com; (c) counsel to the Official Committee of Unsecured Creditors, (i) Bradford J. Sandler, Pachulski Stang Ziehl & Jones LLP,

919 North Market Street, 17th Floor, Wilmington, DE 19801, E-Mail: bsandler@pszjlaw.com, and (ii) Paul Labov, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, E-Mail: plabov@pszjlaw.com, (d) the Office of the United States Trustee for the Southern District of Florida, (i) 51 SW First Avenue, Room 1204, Miami, FL 33130; and (ii) J. Steven Wilkes, 501 East Polk Street, Suite 1200, Tampa, Florida 33602, E-Mail: Steven.Wilkes@usdoj.gov; and (e) such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, by no later than **December 19, 2023 at 4:00 p.m. (ET)**, unless otherwise agreed by the he Plan Administrator.  Objections to any Accrued Professional Compensation Clams must be filed with the Bankruptcy Court and served on the Plan Administrator and the applicable Professional no later than **January 8, 2024 at 4:00 p.m. (ET)**, unless otherwise ordered by the Bankruptcy Court. After notice and opportunity for a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Accrued Professional Compensation Clams shall be determined by the Bankruptcy Court and once approved by the Bankruptcy Court, shall be promptly paid by the Plan Administrator in Cash. Nothing herein affects, impairs, supersedes, or excuses the Professionals' responsibilities or obligations under§§ 327-331 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Rule 2016-1, and the Court's *Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases*.

On the Effective Date, or as soon as practicable thereafter, the Plan Administrator shall establish an appropriate Accrued Professional Reserve based upon estimates of anticipated fees provided by Professionals for services rendered and expenses incurred prior to the Effective Date, including estimated fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Accrued Professional Compensation pending on the Effective Date or filed and/or served after the Effective Date.  The Plan Administrator shall supplement the Accrued Professional Reserve if the amount originally established is insufficient to pay Allowed Accrued Professional Compensation.  Upon approval of the fee applications by the Bankruptcy Court for all Accrued Professional Compensation, the Plan Administrator shall pay Professionals all of their respective accrued and Allowed fees and reimburse Allowed expenses arising prior to the Effective Date.

Notwithstanding anything else to the contrary in this First Amended Combined Disclosure Statement and Plan or the Confirmation Order, any party in interest may object to (i) any application by any Professional for compensation or the reimbursement of expenses; and/or (ii) the amount, propriety, allowability, or allocation of any professional fees or expenses of any Professional, whether such fees or expenses were awarded on an interim basis, or sought on a final basis by any Professional.

2.    Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and, subject to the Plan Administration Agreement, the Plan Administrator may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to, or action,

order, or approval of, the Court.  To the extent the Plan Administrator requests or requires the services of any Exculpated Party after the Effective Date, the Plan Administrator shall execute a new engagement letter with such Exculpated Party which shall govern such post-Effective Date engagement.

## ARTICLE V

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES

A.    *Summary*

This First Amended Combined Disclosure Statement and Plan constitutes a chapter 11 plan for each of the Debtors, FedNat Holding Company, FedNat Underwriters, Inc., ClaimCor, LLC, Century Risk Insurance Services, Inc., and Insure-Link, Inc. Except for Administrative Claims and Priority Tax Claims, all Claims against and Interests in each of the Debtors are placed in Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, the First Amended Combined Disclosure Statement and Plan does not classify Administrative Claims or Priority Tax Claims, as described in Article IV. In addition, these Chapter 11 Cases have been consolidated for administrative purposes only. No substantive consolidation has been sought or is otherwise proper. The treatment for each Claim set forth below identifies the particular Estate from which such claim is to be satisfied. The assets of each Estate shall be used to satisfy only the claims of that Estate and shall not be used to satisfy or otherwise reduce the Claims of any other Estate.

Each of the tables in Article V.A.1, Article V.A.2, Article V.A.3, Article V.A.4 and Article V.A.5 classifies Claims against and Interests in each of the Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The First Amended Combined Disclosure Statement and Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class, other than for voting purposes, only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including related to the amount of proofs of claims that are filed after the applicable Bar Date, and the amount of Claims that exist after the claims reconciliation process, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distributions received by Creditors. The projected recoveries are based on information available to the Plan Proponents as of the date hereof and reflect the Plan Proponents' best estimates as of the date hereof only. In addition to the cautionary notes contained elsewhere in the First Amended Combined Disclosure Statement and Plan, it is underscored that the **Plan Proponents make no representation as to the accuracy of these recovery estimates**. The Plan Proponents expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered). A

41

Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

### 1.    Summary of Classification and Treatment of Classified Claims and Interests of FNHC

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery[21] |
|---|---|---|---|---|---|
| 1 | FNHC Secured Claims | Unimpaired | No (deemed to accept) | $ -0- | 100% |
| 2 | FNHC Priority Claims | Unimpaired | No (deemed to accept) | $ -0- | 100% |
| 3 | Senior Notes Claims | Impaired | Yes | $127,550,016 | 8.09% - 15.58%[22] |
| 4 | FNHC General Unsecured Claims | Impaired | Yes | $  2,178,177 | 8.09% - 15.58%[23] |
| 5 | FNHC Preferred Stock Interests | Impaired | No (deemed to reject) | N/A | 0% |
| 6 | FNHC Common Stock Interests | Impaired | No (deemed to reject) | N/A | 0% |

### 2.    Summary of Classification and Treatment of Classified Claims and Interests of FNU

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery |
|---|---|---|---|---|---|
| 1 | FNU Secured Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 2 | FNU Priority Claims | Unimpaired | No (deemed to accept) | $3,449 | 100% |
| 3 | FNU General Unsecured Claims | Impaired | Yes | $5,081,817 | 100% |
| 4 | FNU Stock Interests | Impaired | Yes | N/A | 0% |

### 3.    Summary of Classification and Treatment of Classified Claims and Interests of ClaimCor

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery[24] |
|---|---|---|---|---|---|
| 1 | ClaimCor Secured Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |

---

[21] The range of projected recoveries set forth herein considers the impact of the Tax Re-Allocation and Intercompany Settlements described in Article VI.J. As discussed in such Article, the Tax Re-Allocation and Intercompany Settlements may be challenged and, if a creditor is successful in unwinding the re-allocation, recovery for creditors of FNHC may be affected.

[22] In the event of such a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed Senior Notes Claims will be between 1.59% - 6.19 %.

[23] In the event of a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed FNHC General Unsecured Claims will be between 1.59% - 6.19 %.

[24] The range of projected recoveries set forth herein considers the impact of the Tax Re-Allocation and Intercompany Settlements described in Article VI.J. As discussed in such Article, the Tax Re-Allocation and Intercompany Settlements may be challenged and, if a creditor is successful in unwinding the re-allocation, recovery for creditors of ClaimCor may be affected.

| | | | | | |
|---|---|---|---|---|---|
| 2 | ClaimCor Priority Claims | Unimpaired | No (deemed to accept) | $6,778 | 100% |
| 3 | ClaimCor General Unsecured Claims | Impaired | Yes | $2,024,362 | 100%[25] |
| 4 | ClaimCor Stock Interests | Impaired | Yes | N/A | N/A |

### 4. Summary of Classification and Treatment of Classified Claims and Interests of CRIS

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery[26] |
|---|---|---|---|---|---|
| 1 | CRIS Secured Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 2 | CRIS Priority Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 3 | CRIS General Unsecured Claims | Impaired | Yes | $2,811,750 | 100%[27] |
| 4 | CRIS Stock Interests | Impaired | Yes | N/A | N/A |

### 5. Summary of Classification and Treatment of Classified Claims and Interests of Insure-Link

| Class | Claim | Status | Voting Rights | Estimated Claims Pool | Projected Recovery[28] |
|---|---|---|---|---|---|
| 1 | Insure-Link Secured Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 2 | Insure-Link Priority Claims | Unimpaired | No (deemed to accept) | $-0- | 100% |
| 3 | Insure-Link General Unsecured Claims | Impaired | Yes | $4,845 | 74.29%[29] |
| 4 | Insure-Link Stock Interests | Impaired | Yes | N/A | N/A |

## B. Classification and Treatment of Claims and Interests of FNHC

### 1. Class 1—FNHC Secured Claims

---

[25] In the event of a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed ClaimCor General Unsecured Claims will be approximately 95.58%.

[26] The range of projected recoveries set forth herein considers the impact of the Tax Re-Allocation and Intercompany Settlements described in Article VI.J. As discussed in such Article, the Tax Re-Allocation and Intercompany Settlements may be challenged and, if a creditor is successful in unwinding the re-allocation, recovery for creditors of CRIS may be affected.

[27] In the event of a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed CRIS General Unsecured Claims will be approximately 52%.

[28] The range of projected recoveries set forth herein considers the impact of the Tax Re-Allocation and Intercompany Settlements described in Article VI.J. As discussed in such Article, the Tax Re-Allocation and Intercompany Settlements may be challenged and, if a creditor is successful in unwinding the re-allocation, recovery for creditors of Insure-Link may be affected.

[29] In the event of a successful challenge to the Tax Re-Allocation and Intercompany Settlements, the Plan Proponents estimate that the projected recovery for Holders of Allowed Insure-Link General Unsecured Claims will be approximately 100%.

(a) *Classification:* Class 1 consists of all FNHC Secured Claims.

(b) *Impairment and Voting:* Class 1 is Unimpaired by the First Amended Combined Disclosure Statement and Plan. Each Holder of a FNHC Secured Claim is presumed to accept and therefore is not entitled to vote to accept or reject the First Amended Combined Disclosure Statement and Plan.

(c) *Treatment:* Except to the extent that a Holder of a FNHC Secured Claim agrees to a less favorable treatment for such Holder, in exchange for full and final satisfaction, settlement, release and discharge of each FNHC Secured Claim, each Holder of an Allowed FNHC Secured Claim shall, at the sole option of the Plan Administrator: (i) be paid in full in Cash, (ii) receive the collateral securing its Allowed FNHC Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code, or (iii) receive other treatment rendering such FNHC Secured Claim Unimpaired, in each case on the later of the Effective Date and the date such FNHC Secured Claim becomes an Allowed FNHC Secured Claim, or as soon as practicable thereafter.

2. *Class 2—FNHC Priority Claims*

(a) *Classification:* Class 2 consists of all FNHC Priority Claims.

(b) *Impairment and Voting:* Class 2 is Unimpaired by the Plan. Each Holder of a FNHC Priority Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c) *Treatment:* On or as soon as practicable after the Effective Date, the Plan Administrator shall pay each Holder of an Allowed FNHC Priority Claim, in full and final satisfaction of such Allowed FNHC Priority Claim, Cash equal to the full amount of its Claim, unless the Holder otherwise agrees to less favorable treatment, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed FNHC Priority Claim becomes Allowed; and (iii) the date such Allowed FNHC Priority Claim is payable under applicable non-bankruptcy law.

3. *Class 3—Senior Notes Claims*

(a) *Classification:* Class 3 consists of all Senior Notes Claims.

(b) *Impairment and Voting:* Class 3 is Impaired by the Plan. Each Holder of a Claim that, if Allowed, would constitute a Senior Notes Claim, is entitled to vote to accept or reject the Plan.

(c) *Allowance:* The Senior Notes Claims shall be Allowed in the aggregate amount of $127,145,833, comprised of: (a) $21,656,250 on account of the Convertible Senior Notes, and (b) $105,489,583 on account of the 2029 Senior Notes. The Allowed Senior Notes Claims shall not be subject to any

reductions, setoff, recharacterization, subordination (equitable, contractual or otherwise), counterclaim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation, *provided, however,* that nothing set forth in this paragraph or elsewhere in this Plan is intended to waive, release or otherwise compromise Avoidance Actions, if any, arising under chapter 5 of the Bankruptcy Code, or objections, if any, to Senior Notes Claims pursuant to section 502(d) of the Bankruptcy Code.

(d) *Treatment:* The Plan Administrator shall distribute to the appropriate Senior Notes Indenture Trustee, for the benefit of the Holders of Allowed Senior Notes Claims, on the Initial Distribution Date and each Quarterly Distribution Date thereafter, a Pro Rata Distribution of Net Free Cash as such Net Free Cash is available on such distribution date. The distribution described in this section shall be in full satisfaction, settlement, release and compromise of and in exchange for each Senior Notes Claim against the Debtors' Estates.

4.    *Class 4—FNHC General Unsecured Claims*

(a) *Classification:* Class 4 consists of all FNHC General Unsecured Claims.

(b) *Impairment and Voting:* Class 4 is Impaired by the Plan. Each Holder of a Claim that, if Allowed, would constitute a FNHC General Unsecured Claim, is entitled to vote to accept or reject the Plan.

(c) *Treatment:* The Plan Administrator shall distribute to each Holder of an Allowed FNHC Unsecured Claim on the Initial Distribution Date and each Quarterly Distribution Date thereafter a Pro Rata Distribution of Net Free Cash as such Net Free Cash is available on such distribution date. The distribution described in this section shall be in full satisfaction, settlement, release and compromise of and in exchange for each FNHC General Unsecured Claim against the Debtors' Estates

5.    *Class 5—FNHC Preferred Stock Interests*

(a) *Classification:* Class 5 consists of all FNHC Preferred Stock Interests.

(b) *Impairment and Voting:* Class 5 is Impaired by the Plan. Each Holder of a FNHC Preferred Stock Interest in Class 6 is conclusively presumed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(c) *Treatment:* No Holder of FNHC Preferred Stock Interests shall receive any Distribution. As set forth in Article VII.F, immediately upon the Effective Date, the FNHC Preferred Stock Interests shall be cancelled, terminated and of no further force or effect.

6.    *Class 6—FNHC Common Stock Interests*

(a)  *Classification:* Class 6 consists of all FNHC Common Stock Interests.

(b)  *Impairment and Voting:* Class 6 is Impaired by the Plan. Each Holder of a FNHC Common Stock Interest in Class 7 is conclusively presumed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(c)  *Treatment:* No Holder of FNHC Common Stock Interests shall receive any Distribution. Pursuant to Article VII.F, immediately upon the Effective Date, the FNHC Common Stock Interests shall be cancelled, terminated and of no further force or effect.

C.  *Classification and Treatment of Claims and Interests of FNU*

  1.  *Class 1—FNU Secured Claims*

(a)  *Classification:* Class 1 consists of all FNU Secured Claims.

(b)  *Impairment and Voting:* Class 1 is Unimpaired by the Plan. Each Holder of a FNU Secured Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)  *Treatment:* Except to the extent that a Holder of a FNU Secured Claim agrees to a less favorable treatment for such Holder, in exchange for full and final satisfaction, settlement, release and discharge of each FNU Secured Claim, each Holder of an Allowed FNU Secured Claim shall, at the sole option of the Plan Administrator: (i) be paid in full in Cash, (ii) receive the collateral securing its Allowed FNU Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code, or (iii) receive other treatment rendering such FNU Secured Claim Unimpaired, in each case on the later of the Effective Date and the date such FNU Secured Claim becomes an Allowed FNU Secured Claim, or as soon as practicable thereafter.

  2.  *Class 2—FNU Priority Claims*

(a)  *Classification:* Class 2 consists of all FNU Priority Claims.

(b)  *Impairment and Voting:* Class 2 is Unimpaired by the Plan. Each Holder of a FNU Priority Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)  *Treatment:* On or as soon as practicable after the Effective Date, the Plan Administrator shall pay each Holder of an Allowed FNU Priority Claim, in full and final satisfaction of such Allowed FNU Priority Claim, Cash equal to the full amount of its Claim, unless the Holder otherwise agrees to less favorable treatment, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed FNU Priority Claim

becomes Allowed; and (iii) the date such Allowed FNU Priority Claim is payable under applicable non-bankruptcy law.

3.   *Class 3—FNU General Unsecured Claims*

(a)   *Classification:* Class 3 consists of all FNU General Unsecured Claims.

(b)   *Impairment and Voting:* Class 3 is Impaired by the Plan. Each Holder of a Claim that, if Allowed, would constitute a FNU General Unsecured Claim, is entitled to vote to accept or reject the Plan.

(c)   *Treatment:* The Plan Administrator shall distribute to each Holder of an Allowed FNU Unsecured Claim on the Initial Distribution Date and each Quarterly Distribution Date thereafter a Pro Rata Distribution of Net Free Cash as such Net Free Cash is available on such distribution date. The distribution described in this section shall be in full satisfaction, settlement, release and compromise of and in exchange for each FNU General Unsecured Claim against the Debtors' Estates.

4.   *Class 4—FNU Stock Interests*

(a)   *Classification:* Class 4 consists of all FNU Stock Interests.

(b)   *Impairment and Voting:* Class 4 is Impaired by the Plan. FNHC, as sole Holder of the FNU Stock Interests in Class 3, is entitled to vote to accept or reject the Plan.

(c)   *Treatment:* If, and only if, Net Free Cash remains in FNU after satisfaction of all Allowed Claims against FNU, FNHC, as sole holder of the FNU Stock Interests, shall receive a Distribution of all remaining Net Free Cash of FNU and any other Assets comprising the FNU Estate. If no Net Free Cash remains in FNU after satisfaction of all Allowed Claims against FNU, then, on the earliest date following the Effective Date upon which a determination can be made that no Net Free Cash remains in FNU, all FNU Stock Interests shall be transferred to the Plan Administrator.

D.   *Classification and Treatment of Claims and Interests of ClaimCor*

1.   *Class 1—ClaimCor Secured Claims*

(a)   *Classification:* Class 1 consists of all ClaimCor Secured Claims.

(b)   *Impairment and Voting:* Class 1 is Unimpaired by the Plan. Each Holder of a ClaimCor Secured Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)    *Treatment:* Except to the extent that a Holder of a ClaimCor Secured Claim agrees to a less favorable treatment for such Holder, in exchange for full and final satisfaction, settlement, release and discharge of each ClaimCor Secured Claim, each Holder of an Allowed ClaimCor Secured Claim shall, at the sole option of the Plan Administrator : (i) be paid in full in Cash, (ii) receive the collateral securing its Allowed ClaimCor Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code, or (iii) receive other treatment rendering such ClaimCor Secured Claim Unimpaired, in each case on the later of the Effective Date and the date such ClaimCor Secured Claim becomes an Allowed ClaimCor Secured Claim, or as soon as practicable thereafter.

2.    *Class 2—ClaimCor Priority Claims*

(a)    *Classification:* Class 2 consists of all ClaimCor Priority Claims.

(b)    *Impairment and Voting:* Class 2 is Unimpaired by the Plan. Each Holder of a ClaimCor Priority Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)    *Treatment:* On or as soon as practicable after the Effective Date, the Plan Administrator , shall pay each Holder of an Allowed ClaimCor Priority Claim, in full and final satisfaction of such Allowed ClaimCor Priority Claim, Cash equal to the full amount of its Claim, unless the Holder otherwise agrees to less favorable treatment, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed ClaimCor Priority Claim becomes Allowed; and (iii) the date such Allowed ClaimCor Priority Claim is payable under applicable non-bankruptcy law.

3.    *Class 3—ClaimCor General Unsecured Claims*

(a)    *Classification:* Class 3 consists of all ClaimCor General Unsecured Claims.

(b)    *Impairment and Voting:* Class 3 is Impaired by the Plan. Each Holder of a Claim that, if Allowed, would constitute a ClaimCor General Unsecured Claim, is entitled to vote to accept or reject the Plan.

(c)    *Treatment:* The Plan Administrator shall distribute to each Holder of an Allowed ClaimCor Unsecured Claim on the Initial Distribution Date and each Quarterly Distribution Date thereafter a Pro Rata Distribution of Net Free Cash as such Net Free Cash is available on such distribution date. The distribution described in this section shall be in full satisfaction, settlement, release and compromise of and in exchange for each ClaimCor General Unsecured Claim against the Debtors' Estates.

4.    *Class 4—ClaimCor Stock Interests*

(a)    *Classification:* Class 4 consists of all ClaimCor Stock Interests.

(b)    *Impairment and Voting:* Class 4 is Impaired by the Plan. FNHC, as sole Holder of the ClaimCor Stock Interests in Class 4, is entitled to vote to accept or reject the Plan.

(c)    *Treatment:* If, and only if, Net Free Cash remains in ClaimCor after satisfaction of all Allowed Claims against ClaimCor, FNHC, as sole holder of the ClaimCor Stock Interests, shall receive a Distribution of all remaining Net Free Cash of ClaimCor and any other Assets comprising the ClaimCor Estate. If no Net Free Cash or any other Assets remain in ClaimCor after satisfaction of all Allowed Claims against ClaimCor, then, on the earliest date following the Effective Date upon which a determination can be made that no Net Free Cash or any other Assets remain in ClaimCor, all ClaimCor Stock Interests shall be transferred to the Plan Administrator.

E.    *Classification and Treatment of Claims and Interests of CRIS*

    1.    *Class 1—CRIS Secured Claims*

(a)    *Classification:* Class 1 consists of all CRIS Secured Claims.

(b)    *Impairment and Voting:* Class 1 is Unimpaired by the Plan. Each Holder of a CRIS Secured Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)    *Treatment:* Except to the extent that a Holder of a CRIS Secured Claim agrees to a less favorable treatment for such Holder, in exchange for full and final satisfaction, settlement, release and discharge of each CRIS Secured Claim, each Holder of an Allowed CRIS Secured Claim shall, at the sole option of the Plan Administrator (i) be paid in full in Cash, (ii) receive the collateral securing its Allowed CRIS Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code, or (iii) receive other treatment rendering such CRIS Secured Claim Unimpaired, in each case on the later of the Effective Date and the date such CRIS Secured Claim becomes an Allowed CRIS Secured Claim, or as soon as practicable thereafter.

    2.    *Class 2—CRIS Priority Claims*

(a)    *Classification:* Class 2 consists of all CRIS Priority Claims.

(b)    *Impairment and Voting:* Class 2 is Unimpaired by the Plan. Each Holder of a CRIS Priority Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)    *Treatment:* On or as soon as practicable after the Effective Date, the Plan Administrator shall pay each Holder of an Allowed CRIS Priority Claim, in full and final satisfaction of such Allowed CRIS Priority Claim, Cash equal to the full amount of its Claim, unless the Holder otherwise agrees to less

favorable treatment, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed CRIS Priority Claim becomes Allowed; and (iii) the date such Allowed CRIS Priority Claim is payable under applicable non-bankruptcy law.

3.    *Class 3—CRIS General Unsecured Claims*

(a)    *Classification:* Class 3 consists of all CRIS General Unsecured Claims.

(b)    *Impairment and Voting:* Class 3 is Impaired by the Plan. Each Holder of a Claim that, if Allowed, would constitute a CRIS General Unsecured Claim, is entitled to vote to accept or reject the Plan.

(c)    *Treatment:* The Plan Administrator shall distribute to each Holder of an Allowed CRIS General Unsecured Claim on the Initial Distribution Date and each Quarterly Distribution Date thereafter a Pro Rata Distribution of Net Free Cash as such Net Free Cash is available on such distribution date. The distribution described in this section shall be in full satisfaction, settlement, release and compromise of and in exchange for each CRIS General Unsecured Claim against the Debtors' Estates.

4.    *Class 4—CRIS Stock Interests*

(a)    *Classification:* Class 4 consists of all CRIS Stock Interests.

(b)    *Impairment and Voting:* Class 4 is Impaired by the Plan. FNHC, as sole Holder of the CRIS Stock Interests in Class 4, is entitled to vote to accept or reject the Plan.

(c)    *Treatment:* If, and only if, Net Free Cash remains in CRIS after satisfaction of all Allowed Claims against CRIS, FNHC, as sole holder of the CRIS Stock Interests, shall receive a Distribution of all remaining Net Free Cash of CRIS and any other Assets comprising the CRIS Estate. If no Net Free Cash or any other Assets remain in CRIS after satisfaction of all Allowed Claims against CRIS, then, on the earliest date following the Effective Date upon which a determination can be made that no Net Free Cash or any other Assets remain in CRIS, all CRIS Stock Interests shall be transferred to the Plan Administrator.

F.    *Classification and Treatment of Claims and Interests of Insure-Link*

1.    *Class 1—Insure-Link Secured Claims*

(a)    *Classification:* Class 1 consists of all Insure-Link Secured Claims.

(b)    *Impairment and Voting:* Class 1 is Unimpaired by the Plan. Each Holder of a Insure-Link Secured Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)  *Treatment:* Except to the extent that a Holder of a Insure-Link Secured Claim agrees to a less favorable treatment for such Holder, in exchange for full and final satisfaction, settlement, release and discharge of each Insure-Link Secured Claim, each Holder of an Allowed Insure-Link Secured Claim shall, at the sole option of the Plan Administrator e: (i) be paid in full in Cash, (ii) receive the collateral securing its Allowed Insure-Link Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code, or (iii) receive other treatment rendering such Insure-Link Secured Claim Unimpaired, in each case on the later of the Effective Date and the date such Insure-Link Secured Claim becomes an Allowed Insure-Link Secured Claim, or as soon as practicable thereafter.

2.  *Class 2—Insure-Link Priority Claims*

(a)  *Classification:* Class 2 consists of all Insure-Link Priority Claims.

(b)  *Impairment and Voting:* Class 2 is Unimpaired by the Plan. Each Holder of a Insure-Link Priority Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)  *Treatment:* On or as soon as practicable after the Effective Date, the Plan Administrator, shall pay each Holder of an Allowed Insure-Link Priority Claim, in full and final satisfaction of such Allowed Insure-Link Priority Claim, Cash equal to the full amount of its Claim, unless the Holder otherwise agrees to less favorable treatment, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed Insure-Link Priority Claim becomes Allowed; and (iii) the date such Allowed Insure-Link Priority Claim is payable under applicable non-bankruptcy law.

3.  *Class 3—Insure-Link General Unsecured Claims*

(a)  *Classification:* Class 3 consists of all Insure-Link General Unsecured Claims.

(b)  *Impairment and Voting:* Class 3 is Impaired by the Plan. Each Holder of a Claim that, if Allowed, would constitute a Insure-Link General Unsecured Claim, is entitled to vote to accept or reject the Plan.

(c)  *Treatment:* The Plan Administrator shall distribute to each Holder of an Allowed Insure-Link General Unsecured Claim on the Initial Distribution Date and each Quarterly Distribution Date thereafter a Pro Rata Distribution of Net Free Cash as such Net Free Cash is available on such distribution date. The distribution described in this section shall be in full satisfaction, settlement, release and compromise of and in exchange for each Insure-Link General Unsecured Claim against the Debtors' Estates.

4.  *Class 4—Insure-Link Stock Interests*

(a)     *Classification:* Class 4 consists of all Insure-Link Stock Interests.

(b)     *Impairment and Voting:* Class 4 is Impaired by the Plan. CRIS, as sole Holder of the Insure-Link Stock Interests in Class 4, is entitled to vote to accept or reject the Plan.

(c)     *Treatment:* If, and only if, Net Free Cash remains in Insure-Link after satisfaction of all Allowed Claims against Insure-Link, CRIS, as sole holder of the Insure-Link Stock Interests, shall receive a Distribution of all remaining Net Free Cash of Insure-Link and any other Assets comprising the Insure-Link Estate. If no Net Free Cash or any other Assets remain in Insure-Link after satisfaction of all Allowed Claims against Insure-Link, then, on the earliest date following the Effective Date upon which a determination can be made that no Net Free Cash or any other Assets remain in Insure-Link, all Insure-Link Stock Interests shall be transferred to the Plan Administrator.

## ARTICLE VI

## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

A.     *The Plan May Not be Accepted*

The Debtors can make no assurances that the requisite acceptances to the Plan will be received, and the Debtors may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Plan.

B.     *The Plan May Not be Confirmed*

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan. Even if the Bankruptcy Court determined that the First Amended Combined Disclosure

Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation had not been met. Moreover, there can be no assurance that modifications to the First Amended Combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

C.    *Distributions to Holders of Allowed Claims under the Plan May be Inconsistent with Projections*

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

D.    *Objections to Classification of Claims*

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors would seek to (i) modify the Plan to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires resolicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules, it would be required to resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder. The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors believe that the Plan complies with the requirement of equal treatment.

To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny Confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the Confirmation and Consummation of the Plan and could increase the risk that the Plan will not be consummated.

E.    *Failure to Consummate the Plan*

The Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be consummated.

F.    *Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan*

There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual Allowed amounts of Claims may differ from the estimates. The estimated amounts are based on certain assumptions with respect to a variety of factors, including with respect to the Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of General Unsecured Claims under the Plan.

G.    *The Plan Releases May Not Be Approved*

There can be no assurance that the releases, as provided in Article XII of the Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

H.    *Delay In Liquidating Estate Causes of Action*

Distributions to Holders of Allowed Claims under the Plan are partly dependent on the Plan Administrator's ability to litigate to judgment and/or settle the Estate Causes of Action. The Debtors cannot predict the ultimate outcome regarding the liquidation and/or settlement of the Estate Causes of Action. Even if the Estate Causes of Action are ultimately liquidated and/or settled, the Debtors cannot predict the time necessary to accomplish that result. Any delay in liquidating and/or the Plan Administrator's inability to liquidate the Estate Causes of Action may negatively impact Distributions to Holders of Allowed Claims under the Plan.

I.    *Certain Tax Considerations*

There are a number of material income tax considerations, risks and uncertainties associated with the plan of liquidation of the Debtors described in this First Amended Combined Disclosure Statement and Plan.

1.      Brief Overview and Disclosure

The following is a general discussion based upon present law of certain U.S. federal income tax considerations relevant to the implementation of the Plan to Holders of Claims entitled to vote on the Plan. This discussion is based on the current provisions of title 26 of the United States Code, applicable Treasury Regulations, judicial authority, and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, no ruling from the IRS has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below. This discussion does not address the federal income tax consequences to Holders of Claims or Interests who are Unimpaired, or Holders who are not entitled to vote because they are deemed to accept or reject the Plan or Holders subject to special treatment under U.S. federal income tax laws, such as brokers or dealers in securities or currencies, certain securities traders, tax-exempt entities, financial institutions, insurance companies, foreign persons, partnerships and other passthrough entities, Holders that have a "functional currency" other than the United States dollar, Holders that hold Claims as a position in a "straddle" or as part of a "synthetic currency," "hedging," "conversion," or other integrated transaction, or Holders that have acquired Claims in connection with the performance of services. In addition, this discussion does not address U.S. federal taxes other than income taxes.

Legislative, judicial, or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to the Holders of Claims or the Debtors. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences described herein.

This summary is not a comprehensive description of all of the U.S. federal tax consequences that may be relevant with respect to the Plan. We urge you to consult your own tax advisor regarding your particular circumstances and the U.S. federal tax consequences to you with respect to the Plan, as well as any tax consequences arising under the laws of any state, local, or foreign tax jurisdiction and the possible effects of changes in U.S. federal or other tax laws. The following summary assumes that the Claims are held by Holders as "capital assets" within the meaning of section 1221 of the Tax Code and that all Claims denominated as indebtedness are properly treated as debt for U.S. federal income tax purposes.

The tax treatment of Holders of Claims and the character, amount, and timing of income, gain, or loss recognized as a consequence of the Plan and the Distributions provided for under the Plan may vary, depending upon, among other things: (a) whether the Claim (or portion thereof) constitutes a Claim for principal or interest; (b) the type of consideration received by the Holder in exchange for the Claim and whether the Holder receives Distributions hereunder in more than one taxable year; (c) whether the Holder is a citizen or resident of the United States for tax purposes, is otherwise subject to U.S. federal income tax on a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (d) the manner in which the Holder acquired the Claim; (e) the length of time that the Claim has been held; (f) whether the Claim was acquired at a discount; (g) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years;

55

(h) whether the Holder has previously included in income accrued but unpaid interest with respect to the Claim; (i) the method of tax accounting of the Holder; (j) whether the Claim is an installment obligation for U.S. federal income tax purposes; and (k) whether the "market discount" rules are applicable to the Holder. Therefore, each Holder should consult a tax advisor for information that may be relevant to its particular situation and circumstances, and the particular tax consequences to such Holder of the transactions contemplated by the Plan.

**The following discussion is intended only as a summary of certain U.S. federal tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The following discussion is for informational purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a Holder's particular circumstances. Accordingly, each Holder is strongly urged to consult a tax advisor regarding the U.S. federal, state, local, and applicable non-U.S. income and other tax consequences of the Plan.**

2.      <u>U.S. Federal Income Tax Consequences to the Debtors</u>

In general, absent an exception, a debtor will realize and recognize cancellation of debt ("<u>COD</u>") income upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of COD incurred is generally the amount by which the indebtedness discharged exceeds the value of any consideration given in exchange therefor. Certain statutory or judicial exceptions may apply to limit the amount of COD incurred for U.S. federal income tax purposes. Under section 108 of the Tax Code, subject to limited exceptions, COD income of a debtor generally is excluded from gross income if the debtor is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding. As a consequence of such exclusion, a debtor generally must reduce its tax attributes by the amount of COD income that it excluded from gross income. In general, tax attributes of the debtor are reduced in the following order: (a) net operating losses ("<u>NOLs</u>"); (b) general business credit carryovers; (c) alternative minimum tax credit carryovers; (d) capital loss carryovers; (e) tax basis in assets, which includes the stock of subsidiaries; (f) passive activity loss and credit carryovers; and (g) foreign tax credit carryovers. In applying this attribute reduction rule to the tax basis in assets, the tax law limits the reduction in tax basis to the amount by which the tax basis exceeds the debtor's liabilities after the effective date of the plan (often referred to as the "liability floor"). If advantageous, the debtor can elect to reduce the basis of depreciable property prior to any reduction in its NOL carryforwards or other tax attributes. If the amount of excluded COD income exceeds available tax attributes, the excess generally is not subject to U.S. federal income tax and has no other U.S. federal income tax impact. Where the debtor joins in the filing of a consolidated U.S. federal income tax return, applicable Treasury regulations require, in certain circumstances, that the tax attributes of the consolidated subsidiaries of the debtor and other members of the group must also be reduced. Any reduction in tax attributes in respect of COD generally does not occur until after the determination of the debtor's net income or loss for the taxable year in which the COD is incurred.

Under the Plan, Holders of certain Allowed Claims are expected to receive less than full payment on their Claims. As a result, the Debtors' liability to Holders of such Claims in excess of the amount satisfied by Distributions under the Plan will be canceled, and therefore will result

56

in COD income to the Debtors. Certain COD income triggered under the Plan will not be recognized as income under section 108 of the Tax Code and the Debtors must reduce their tax attributes by the amount of such excluded income. As a result, the Debtors' tax attributes are expected to be substantially reduced or potentially eliminated; provided, however, such reduction in tax attributes will not occur until the end of the Debtors' taxable year.

Under the Tax Code, any NOL carryforwards, disallowed interest expense carryforwards and certain other tax attributes of a corporation (collectively, "Pre-Change Losses") may be subject to an annual limitation if the corporation undergoes an "ownership change" within the meaning of section 382 of the Tax Code. These limitations apply in addition to, and not in lieu of, the attribute reduction that may result from the COD arising in connection with the Plan. Under section 382 of the Tax Code, if a corporation (or consolidated group) undergoes an "ownership change" and the corporation does not qualify for (or elects out of) the special bankruptcy exception in section 382(l)(5) of the Tax Code, the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally are subject to an annual limitation.

The Debtors may have up to and approximately $178 million of NOLs as of the end of the Debtors' 2022 taxable year.   The cancellation of the Interests in the Debtors could result in an ownership change, which would have the effect of limiting the NOLs available to offset income from the disposition of assets.

Following the Effective Date, the Debtors may recognize corporate entity-level income or gain in connection with administering the Plan, winding down the Debtors, and disposing of any Estate Assets. Although any such amounts are expected to be de minimis, such amounts may be taxable to the Debtors and, if applicable would reduce the amount of Cash available to distribute to Holders of Allowed Claims. Such gain or income may be offset, in whole or in part, by expenses of the Debtors and other tax attributes available to offset gain, including any current losses or NOLs. However, the availability of the Debtors' tax attributes is expected to be limited as a result of the reductions described above as well as certain other limitations under the Tax Code that may result from the Plan and accordingly, the Debtors may be subject to tax. On final wind down, the Debtors are not expected to recognize and be taxable on any COD income, due to either the bankruptcy exception referenced above or a similar exception when the debtor is insolvent, which is expected to apply following the completion of the liquidation of the Debtors.

3.   Certain U.S. Federal Income Tax Treatment with Respect to U.S. Holders of Allowed Claims

As used in discussion herein, the term "U.S. Holder" means a beneficial owner of an Allowed Claim that is for U.S. federal income tax purposes:

- an individual who is a citizen or resident of the United States;

- a corporation, or other Entity taxable as a corporation for U.S. federal income tax purposes, created or organized in or under the laws of the United States, any state thereof, or the District of Columbia;

- an estate the income of which is subject to U.S. federal income taxation regardless of its source; or

- a trust, if a court within the United States is able to exercise primary jurisdiction over its administration and one or more U.S. Persons have authority to control all of its substantial decisions, or if the trust has a valid election in effect under applicable Treasury Regulations to be treated as a U.S. Person.

If a partnership or other Entity taxable as a partnership for U.S. federal income tax purposes holds an Allowed Claim, the tax treatment of a partner generally will depend upon the status of the partner and the activities of the partnership. Partners in a partnership holding any such instruments are urged to consult their own tax advisors.

A U.S. Holder of an Allowed Claim will generally recognize gain or loss equal to the difference between the U.S. Holder's adjusted basis in its Allowed Claim and the amount realized by the U.S. Holder in respect of its Allowed Claim. Over time and on a cumulative basis, the amount realized generally will equal the aggregate amount of the Cash (and the fair market value of property, if any) distributed to the U.S. Holder by the Plan Administrator, less the amount, if any, attributable to accrued but unpaid interest. However, in the event that a U.S. Holder of an Allowed Claim receives Distributions over more than one tax year, the timing of such U.S. Holder's recognition of such gain or loss is not free from doubt. For instance, there may be circumstances in which a U.S. Holder of an Allowed Claim (a) may recognize gain only after Distributions have been made to the U.S. Holder in excess of such U.S. Holder's basis in its Allowed Claim or (b) or allocate a portion of Distributions in a given year between a return of basis and gain or loss. Alternatively, a U.S. Holder of an Allowed Claim may be required to recognize gain or loss on the Effective Date even if there is not complete certainty as to the full amount of Distributions that will be received by such U.S. Holder pursuant to the Plan. In this case, such U.S. Holder could then be required to adjust the amount of gain or loss ultimately realized when the full amount of the Distribution has been made and the full calculation of total gain or loss can be completed. These rules are complex and U.S. Holders of Allowed Claims are advised to consult with their own tax advisors as to the timing rules described above in connection with the Plan and the tax consequences to them under such rules.

4. Certain U.S. Federal Income Tax Treatment with Respect to Non-U.S. Holders of Allowed Claims

For purposes of this discussion, a "Non-U.S. Holder" means a beneficial owner of an Allowed Claim that is not a U.S. Holder, other than any partnership (or other Entity treated as a partnership or other pass-through Entity for U.S. federal income tax purposes) the tax treatment of which will depend on the status of the partners and activities of the partnership. The following discussion includes only certain U.S. federal income tax consequences of the Plan to Non-U.S. Holders. This discussion does not include any non-U.S. tax considerations. The rules governing the U.S. federal income tax consequences to Non-U.S. Holders are complex. Each Non-U.S. Holder is urged to consult its own tax advisor regarding the U.S. federal, state, local, non-U.S., and non-income tax consequences of the consummation of the Plan to such Non-U.S. Holder.

### a. *Gain Recognition*

Any gain realized by a Non-U.S. Holder in respect of its Allowed Claim (the excess of the Non-U.S. Holder's adjusted tax basis in its Allowed Claim and the amount realized by such Non-U.S. Holder) generally will not be subject to U.S. federal income taxation unless (a) the Non-U.S. Holder is an individual who was present in the United States for 183 days or more during the taxable year in which the Effective Date occurs and certain other conditions are met or (b) such gain is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the United States (and, if an income tax treaty applies, such gain is attributable to a permanent establishment maintained by such Non-U.S. Holder in the United States).

If the first exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30% (or at a reduced rate or exemption from tax under an applicable income tax treaty) on the amount by which such Non-U.S. Holder's capital gains allocable to U.S. sources exceed capital losses allocable to U.S. sources during such taxable year. If the second exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax with respect to any gain realized if such gain is effectively connected with the Non-U.S. Holder's conduct of a trade or business in the United States in the same manner as a U.S. Holder (except that the Medicare tax would generally not apply) instead of being subject to withholding. In order to claim an exemption from withholding, such Non-U.S. Holder will be required to provide a properly executed IRS Form W-8ECI (or such successor form as the IRS designates). In addition, if such Non-U.S. Holder is a corporation, it may be subject to a branch profits tax equal to 30% (or a lower rate provided by an applicable income tax treaty) of its effectively connected earnings and profits for the taxable year, subject to certain adjustments.

### b. *FATCA*

Under legislation commonly referred to as the Foreign Account Tax Compliance Act ("FATCA"), foreign financial institutions and certain other foreign entities must report certain information with respect to their U.S. account holders and investors or be subject to withholding at a rate of 30% on the receipt of "withholdable payments." For this purpose, "withholdable payments" are generally U.S. source payments of fixed or determinable, annual or periodical income, and, subject to the paragraph immediately below, also include gross proceeds from the sale of any property of a type that can produce U.S. source interest or dividends. FATCA withholding will apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding.

FATCA withholding rules were previously scheduled to take effect on January 1, 2019, which would have applied to payments of gross proceeds from the sale or other disposition of property of a type that can produce U.S. source interest or dividends. However, such withholding has effectively been suspended under proposed Treasury Regulations that may be relied on until final regulations become effective. Nonetheless, there can be no assurance that a similar rule will not go into effect in the future prior to the Debtors' final Distribution to Non-US Holders.

Each Non-U.S. Holder should consult its own tax advisor regarding the possible impact of FATCA withholding rules on such Non-U.S. Holder.

5.   Withholding on Distributions and Information Reporting

All Distributions to U.S. Holders of Allowed Claims under the Plan are subject to any applicable tax withholding, including employment tax withholding (if applicable). In addition, under U.S. federal income tax law, interest, dividends, and other reportable payments may be subject to "backup withholding" at the then applicable withholding rate if a U.S. Holder (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding.

Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions. Holders of Allowed Claims are urged to consult their tax advisors regarding the Treasury Regulations governing backup withholding and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations.

Treasury Regulations may also require participation of certain transactions to be disclosed by a U.S. Holder on its U.S. federal income tax return, including, among other types of transactions, transactions that result in the U.S. Holder claiming a loss in excess of specified thresholds. U.S. Holders subject to the Plan are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these rules. Non-U.S. Holders are urged to consult their tax advisors regarding potential withholdings on Distributions by the Debtors.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

J.   *Recoveries under the Plan are Based on a Post-Petition Tax Re-Allocation and Intercompany Settlements*

Commencing in February 2023, the Chief Restructuring Officer and the Chief Financial Officer undertook a review of historical practices in connection with the tax allocation and intercompany settlements among the Debtors as provided for under the Debtors' books and records and the Tax Allocation Agreement (including all amendments thereto) (the "Tax Re-Allocation and Intercompany Settlements"). The review process included reviewing historical tax returns and financial data to calculate the amount of tax payment that would have been due from each company if that company had been treated as a standalone Entity for tax filing purposes. Next, pursuant to the Tax Allocation Agreement, the amount of each company's tax liability was determined as that company's pro-rata share of the consolidated tax liability. When amended returns were filed for

tax years 2018 and 2019 allowing carry back of losses to prior years, the refund was again allocated to each company that had been assessed a tax liability in the amount charged to that company, effectively providing refund of all tax allocated during the 2014 thru 2021 timeframe. When the result of this analysis was compared to the actual intercompany transfers made pursuant to the Tax Allocation Agreement, it was discovered that prior management had improperly determined the amounts due to or from affiliates, resulting in some companies receiving tax benefits significantly greater than they would have received as standalone entities and other entities assessed for tax liabilities significantly greater than would have been due if that company were a standalone Entity. On or about April 30, 2023, adjusting entries were made to accurately reflect each Entity's appropriate obligation under the Tax Allocation Agreement and, where appropriate, recovering any excess amount paid to a given Entity. Thus, on a re-allocated basis, FNIC has a current net balance due from FNHC of approximately $17.6 million, less the $29.6 million reversal of the FNHC payable to FNIC, leaving a net payable from FNIC to FNHC of approximately $12 million. Additionally, the current Tax Refund, once received, will be reallocated to those entities that had been over-assessed for tax liabilities to partially offset the historic incorrect assessments. The Debtors and Committee believe that the Tax Re-Allocation and Intercompany Settlements as provided for below accurately reflect the appropriate allocation as set forth in the Debtors' books and records and as provided for under the Tax Allocation Agreement.

Summary of Tax Re-Allocation and Intercompany Settlements:[30]

| 2014 - 2021 Tax | FNIC | FNU/FNA | CRIS | ILINK | MNIC | MIC | CC | MMI | Total |
|---|---|---|---|---|---|---|---|---|---|
| Historical: Net Payable to(from) FNHC in tax allocations | (29,642,058) | 63,069,187 | 16,467,049 | (1,552,176) | (1,131,342) | (7,076,627) | 976,415 | (481,598) | 40,628,850 |
| Revised: Stand alone tax liability | - | - | - | - | - | | | | |
| Benefit of Corrected tax allocation to (from) FNHC | 29,642,058 | (63,069,187) | (16,467,049) | 1,552,176 | 1,131,342 | 7,076,627 | (976,415) | 481,598 | (40,628,850) |
| | | | | | | | | | |
| Original balance due to (from) FNHC | 17,646,477 | (1,611,490) | 79,250 | (1,428,227) | (266,099) | - | (203,489) | | 14,216,422 |
| Corrected balance due to (from) FNHC | 11,995,581 | (61,457,697) | (16,546,299) | 2,980,403 | 1,397,441 | 7,076,627 | (772,926) | 481,598 | (54,845,272) |
| | | | | | | | | | |
| Application of pending Refund (1) | - | 9,900,478 | 2,665,513 | - | - | - | 124,514 | - | 12,690,504 |
| | | | | | | | | | |
| 1) Based on pending tax refund of $12,690,504 allocated ratably by net payable to FNHC over 2014 - 2021 | | | | | | | | | |

Notwithstanding the foregoing, the DFS Receiver expressly disputes the above-referenced review, accounting adjustments, and re-allocations by the Chief Restructuring Officer and the Chief Financial Officer of the historical practices in connection with the tax allocation and intercompany settlements among the Debtors. The DFS Receiver also expressly disputes that such review, accounting adjustments, and re-allocations were or are at all consistent with applicable law, the Tax Allocation Agreement, the Debtors' accounting practices, or the Debtors' prior conduct or representations concerning the tax allocations and intercompany settlements among the Debtors. Accordingly, the DFS receiver reserves all rights with respect to such review, accounting adjustments, and re-allocations, including without limitation, the right to object to and challenge any adjustments or re-allocations all of which are set forth by the Debtors without any presumption that the Debtors' proposed Tax Re-Allocation is correct, lawful or appropriate. **If the DFS Receiver prevails in the Tax Refund Dispute, recovery for creditors of all or certain Debtors may be negatively affected.**

---

[30] As a result of the Settlement Agreement with the Hale Related Parties, the tax receivable due from Monarch (MNIC) under the Tax Re-Allocation and Intercompany Settlements has been reduced to $0.00.

**For the avoidance of doubt, <u>nothing</u> in the First Amended Combined Disclosure Statement and Plan or the Confirmation Order, including, without limitation, the settlement, release, injunction, and exculpation provisions of Article XII of this Plan, shall: (i) affect the Tax Allocation Agreement; (ii) affect, impair, release, or otherwise constitute or be deemed a waiver of, any cause of action, claim, or defense that the DFS Receiver may hold concerning the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refund Dispute, or the Tax Refunds; (iii) constitute a judicial determination concerning the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refund Dispute, or the Tax Refunds; or (iv) constitute *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, or estoppel (judicial, equitable or otherwise) concerning any aspect of the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refund Dispute, or the Tax Refunds. Nor shall any calculations, figures, statements, or findings made in connection with this First Amended Combined Disclosure Statement and Plan or the Confirmation Order constitute findings of facts or conclusions of law with respect to the rights, title and interest of the parties to the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refunds, or the Tax Refund Dispute. For the avoidance of doubt, all disputes concerning the Tax Allocation Agreement, the Tax Re-Allocation and Intercompany Settlements, the Tax Refunds, and the Tax Refund Dispute and all positions, claims or defenses of the parties to the Tax Allocation Agreement in all respects and for all purposes are expressly preserved.**

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Appointment of a Plan Administrator*

On the Effective Date, the Plan Administrator shall be appointed without any further action. The duties, powers and obligations of the Plan Administrator shall be set forth in the Plan Administrator Agreement. Among other things, the Plan Administrator shall be responsible for implementing the Plan, including, without limitation, monetizing or abandoning all of Liquidating FedNat's assets, pursuing or abandoning all Causes of Action, resolving all Claims, and distributing Net Free Cash pursuant to the Plan. The Plan Administrator Agreement is attached hereto as **Exhibit B**.

B.    *Fees and Expenses of Plan Administrator*

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees or expenses of the Plan Administrator, (including, without limitation, the reasonable fees and expenses of professionals retained by the Plan Administrator), shall be paid in accordance with the Plan Administrator Agreement.

C.    *Directors/Officers/Equity/Assets of the Debtors on the Effective Date*

On the Effective Date, the persons then acting as directors and officers of each of the Debtors shall (i) be relieved and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Debtors or the Chapter 11 Cases; and (ii) deemed to

have resigned or be terminated as to their positions with the applicable Debtors without any further action. For the avoidance of doubt, nothing contained in this Article VII.C is intended to or shall release the Debtors' D&Os from Claims.

D.    *Plan Administrator*

1.    On the Effective Date, the Plan Administrator shall succeed to such powers as would have been applicable to the Debtors' officers, directors and shareholders and Liquidating FedNat shall be authorized to be (and, upon the conclusion of the Wind Down, shall be) dissolved by the Plan Administrator. All property of the Debtors' Estates not Distributed to the Holders of Claims or Interests on the Effective Date shall vest in Liquidating FedNat consistent with paragraph I below and shall be managed and Distributed by the Plan Administrator in accordance with the provisions of this First Amended Combined Disclosure Statement and Plan.

2.    As provided in the Plan Administrator Agreement, the Entity chosen to be the Plan Administrator shall have such qualifications and experience to enable it to perform its obligations under the Plan and under the Plan Administrator Agreement. Following the Effective Date and in the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Plan Administrator, counsel for the former Plan Administrator may file a motion with the Bankruptcy Court requesting the appointment a successor Plan Administrator and to become fully vested with all of the rights, powers, duties and obligations of the predecessor Plan Administrator. The Plan Administrator's reasonable fees, costs and expenses shall be compensated and reimbursed by the assets held by Liquidating FedNat as set forth in, and in accordance with, the Plan Administrator Agreement.

3.    The Plan Administrator shall be deemed the representative of each of the Debtors' Estates in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Plan Administrator Agreement, including, without limitation (and except as otherwise provided in the Plan Administrator Agreement), the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, including, without limitation, the right to (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Plan Administrator Agreement,

(a)    Investigate, prosecute, settle, abandon or compromise any Causes of Action,

(b)    make Distributions contemplated hereby,

(c)    establish and administer the Disputed Claims Reserve,

(d)    object to Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court objections to such claims,

(e)    liquidate Liquidating FedNat's assets,

(f)    employ and compensate professionals and other agents, including one or more of the Professionals in accordance with the Plan Administrator Agreement, and

(g)     effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Plan and the Plan Administrator Agreement.

E.     *Wind Down and Dissolution of the Debtors*

After the Effective Date, Liquidating FedNat shall remain in existence for the sole purpose of liquidation, distribution, and dissolution. On and after the Effective Date, the Plan Administrator shall make Distributions under the Plan and shall implement the dissolution of each of the entities comprising Liquidating FedNat and monetization of any assets of Liquidating FedNat pursuant to the Plan Administrator Agreement, any other provision of the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve each of the entities comprising Liquidating FedNat. As soon as practicable after the Effective Date, the Plan Administrator shall: (a) take any action reasonably necessary to effectuate the Wind Down; (b) file for each of the entities comprising Liquidating FedNat, a certificate of dissolution, together with all other necessary corporate and company documents, to effect the dissolution of Liquidating FedNat under applicable non-bankruptcy law; (c) complete and file all final or otherwise required federal, state and local tax returns of the Debtors or Liquidating FedNat, as applicable, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the entities comprising Liquidating FedNat, the Debtors or their Estates for any tax incurred during the administration of the Chapter 11 Cases, as determined under applicable tax laws; (d) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan; and (e) comply with any regulatory requirements imposed on Liquidating FedNat under applicable law. The filing by the Plan Administrator of certificates of dissolution on behalf of each of the entities comprising Liquidating FedNat shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the board of directors of the Debtors or Liquidating FedNat, as applicable.

F.     *Payment of Senior Notes Indenture Trustee Fees*

The Senior Notes Indenture Trustees have asserted informally that (a) the Senior Notes Claims can be charged against all of the Debtors and (b) the fees and expenses of the Senior Notes Indenture Trustees for the post-petition period are entitled to administrative claim priority on account of services provided pursuant to the Senior Indentures. Following discussions with the Senior Notes Indenture Trustees and considering the potential impact on the creditors of Debtors other than FNHC of the Senior Notes Claims being asserted against those Debtors, the Debtors and the Committee have agreed to provide for the payment of the fees and expenses of the Senior Notes Indenture Trustees on the Effective Date of the Plan.

On the Effective Date, the Plan Administrator shall pay in Cash all reasonable and documented unpaid Senior Notes Indenture Trustee Fees incurred after the Petition Date that are required to be paid under the Senior Indentures, without the need for the Senior Notes Indenture Trustees to file fee applications with the Bankruptcy Court.  From and after the Effective Date, the Plan Administrator shall pay in Cash any and all reasonable and documented Senior Notes Indenture Trustee Fees, including, without limitation, all Senior Notes Indenture Trustee Fees

incurred in connection with the cancellation and discharge of the Senior Indentures. Nothing herein shall in any way affect or diminish the right of the Senior Notes Indenture Trustees to exercise their Senior Notes Indenture Trustee Charging Liens against distributions on account of the Senior Notes Claims with respect to any unpaid Senior Notes Indenture Trustee Fees, as applicable.

G.    *Cancellation of Existing Securities and Agreements; Claims of Subordination; Release and Discharge of Senior Notes Indenture Trustees*

1.    Except for the purpose of evidencing a right to a distribution under this Plan or as otherwise provided in this Plan, the Confirmation Order or any agreement, instrument, or other document incorporated in this Plan, the Confirmation Order, or the Plan Supplement, on the Effective Date, (1) any certificate, security, share, note, bond, credit agreement, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing, relating to, or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest or to any rights or obligations relating to any Claims against or Interests in the Debtors (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) and any rights of any Holder in respect thereof shall be cancelled without any need for a Holder to take further action with respect thereto, and the duties and obligations of all parties thereto, including the Debtors or Liquidating FedNat, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full, canceled, released, discharged, and of no force or effect; and (2) the obligations of the Debtors or Liquidating FedNat pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged.

2.    On the Effective Date, notwithstanding anything to the contrary in the Plan, all of the Senior Notes, the Senior Notes Indentures, and any other document, agreement, or instrument evidencing any Claim or Interest, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under the Senior Notes, the Senior Indentures, or other such documents, agreements, or instruments evidencing such Claims and Interests, as the case may be, shall be deemed extinguished, and the Senior Notes Indenture Trustees, and their respective agents, successors and assigns shall each be automatically and fully released and discharged of and from all duties to the holders of Senior Notes Claims under the relevant Senior Indentures; provided, that, the provisions of each Senior Indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in full force and effect solely to the extent necessary to (i) allow holders of Senior Notes Claims or other such Claims or Interests to receive distributions under the Plan (and all distribution provisions in any such agreement shall terminate completely upon completion of all such distributions); (ii) allow holders of Senior Notes Claims to retain their respective rights and obligations vis-à-vis other holders of Senior Notes Claims; (iii) preserve all rights, protections, and powers of the Senior Notes Indenture Trustee as against the holders of Senior Notes Claims under

the Senior Indentures; (iv) allow the Senior Notes Indenture Trustee to enforce any obligations owed to it individually under the Plan; (v) preserve the Senior Notes Trustee's rights to compensation and indemnification under the Senior Indentures, as against any money or property distributable to holders of Senior Notes Claims, including permitting the Senior Notes Indenture Trustee to maintain, enforce, and exercise a Senior Notes Trustee Charging Lien against such distributions; and (vi) preserve all rights, including rights of enforcement, of the Senior Notes Indenture Trustee against any Person other than the Debtors, the Plan Administrator, or a Released Party, including but not limited to claims for indemnification or contribution from the holders of Senior Notes Claims pursuant and subject to the relevant Senior Indentures.

3.      On the Effective Date, each holder of a certificate or instrument evidencing a Claim that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument in accordance with the applicable indenture or agreement that governs the rights of such holder of such Claim.  Such surrendered certificate or instrument shall be deemed canceled as set forth in, and subject to the exceptions set forth in, this Article VII.

4.      Notwithstanding Article VII.F.1, the Plan Administrator shall be deemed the holder  of all equity interests in Liquidating FedNat on and after the Effective Date solely to effectuate the terms hereof, provided, however, that, notwithstanding any provisions to the contrary contained in the Plan or Plan Administrator Agreement, the Plan Administrator shall not sell, convey or otherwise transfer any equity interest in Liquidating FedNat absent: (a) the filing of a motion with the Bankruptcy Court; (b) entry of any order by the Bankruptcy Court authorizing any such sale, conveyance or other transfer in accordance with Article VII.D.3; (c) the filing of all appropriate forms by the Plan Administrator, prior to any such sale, conveyance or transfer, terminating any continuing reporting obligations under the Securities and Exchange Act of 1934, and any regulations promulgated thereunder; (d) confirmation that such sale, conveyance or transfer would not result in Liquidating FedNat becoming a public reporting company under the Securities and Exchange Act of 1934, and any regulations promulgated thereunder; and (e) compliance with federal securities laws.

H.      *Committee*

As of the Effective Date, the Committee shall be deemed dissolved without any further action, and its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases. The retention and employment of the Professionals retained by the Committee shall terminate as of the Effective Date, *provided, however,* that the Committee shall exist, and its Professionals shall be retained, after such date solely with respect to applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code.

I.      *Vesting of Assets in Liquidating FedNat*

Except as otherwise provided in this Plan or in any agreement, instrument or other document relating thereto, on or after the Effective Date pursuant to section 1141 of the Bankruptcy Code, all property of the Debtors' Estates including, without limitations, all Causes of Action, and any property acquired by the Debtors pursuant hereto shall vest in the appropriate Entity comprising Liquidating FedNat, free and clear of all Liens, Claims, charges or other

encumbrances. For the avoidance of doubt, all property of the Estate of Debtor FNHC shall vest in Liquidating FNHC, all property of the Estate of Debtor FNU shall vest in Liquidating FNU, all property of the Estate of Debtor ClaimCor shall vest in Liquidating ClaimCor, all property of the Estate of Debtor Insure-Link shall vest in Liquidating Insure-Link and all property of the Estate of Debtor CRIS shall vest in Liquidating CRIS, subject to the terms of this Plan. Except as may be provided in this Plan, the Plan Administrator Agreement or the Confirmation Order, on and after the Effective Date, Liquidating FedNat may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Further, all of the Debtors' evidentiary privileges, including the attorney/client privilege, shall be deemed transferred to Liquidating FedNat. This First Amended Combined Disclosure Statement and Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. Upon such transfer, the Debtors shall have no other further rights or obligations with respect thereto. Nothing herein shall be deemed a waiver of the Debtors' rights of privilege. For the avoidance of doubt, nothing herein shall create any obligation by the Debtors or the Debtors' or Committee's Professionals to turnover or produce any documents, records or communications (privileged or otherwise). To the extent the Debtors' or Committee's Professionals are required to turnover any documents, records or communications (privileged or otherwise), such professionals shall be entitled to compensation at their normal hourly rates (and reimbursement of out-of-pocket expenses) from Liquidating FedNat for reasonable amounts of their time they incur.

J.      *Deregistration*

As soon after the Effective Date as is practicable, the Plan Administrator shall take such action as is reasonably necessary to relieve Liquidating FedNat of any obligation to file periodic reports with the United States Securities and Exchange Commission or to otherwise comply with the statutory or regulatory requirements of a publicly traded company, including, but not limited to, seeking to deregister the FNHC Stock Interests.

K.      *Intercompany Claims*

Intercompany Claims shall be preserved, unless otherwise agreed or resolved between the parties to a given Intercompany Claim or otherwise released by operation of the Plan. Any such transaction may be effected without any further action by the stockholders of any of the Debtors. Notwithstanding the foregoing, any proposed settlement, compromise, waiver, extinguishment, or resolution of any Intercompany Claim shall be subject to approval of the Bankruptcy Court, and the Plan Administrator shall not propose any compromise, waiver, extinguishment, or resolution of any Intercompany Claim that would unfairly negatively impact, impair, reduce, or diminish in any respect the treatment on account of the Allowed Monarch Claims and the Allowed HGMA Claims as projected in the Chapter 11 Plan for each Debtor, nor conflict in any manner with or violate the Settlement Agreement.

L.    *Merger/Dissolution/Consolidation*

On or as of the Effective Date or as soon as practicable thereafter, and without the need for any consent or approval not expressly set forth herein, the Plan Administrator may, in its sole and absolute discretion, (i) take appropriate corporate action in its capacity as the sole shareholder of each of the entities comprising Liquidating FedNat, FNHC, FNU, CRIS, ClaimCor, and Insure-Link, to replace or appoint officers and directors and any other appropriate actions, including, but not limited to, dismissing the Chapter 11 Cases of any of the Liquidating FedNat subsidiaries or converting the Chapter 11 Cases of any of the Liquidating FedNat subsidiaries to a case under chapter 7 of the Bankruptcy Code; (ii) cause any of the Liquidating FedNat subsidiaries to be merged, dissolved, or otherwise consolidated with each other or with Liquidating FNHC, or (iii) engage in any other transaction with respect to the Liquidating FedNat entities in furtherance of the Plan. Notwithstanding the foregoing, in the event that Liquidating FedNat and/or the Plan Administrator were to seek to merge, consolidate, or effect any similar corporate action that would have the effect of disregarding or eliminating the separateness of one or more of the entities comprising Liquidating FedNat, that any such proposed corporate action by the Plan Administrator is subject to approval of the Bankruptcy Court, and the Plan Administrator shall not seek to effectuate any such merger if such transfer negatively impacts, impairs, reduces, or diminishes in any respect the treatment on account of the Allowed Monarch Claims and the Allowed HGMA Claims as projected in the Chapter 11 Plan for each Debtor, nor conflict in any manner with or violate the Settlement Agreement.

Any allocation by the Plan Administrator and/or Liquidating FedNat of fees to the individual entities comprising Liquidating FedNat shall be subject to Bankruptcy Court approval and shall not unfairly negatively impact, impair, reduce, or diminish in any respect the treatment on account of the Allowed Monarch Claims and the Allowed HGMA Claims as projected in the Chapter 11 Plan for each Debtor, nor conflict in any manner with or violate the Settlement Agreement.

M.    *Termination of Voting Agent*

At any time following the Effective Date, the Plan Administrator shall be authorized to terminate the services of the Voting Agent by providing advance written notice to the Voting Agent, without need for order of the Bankruptcy Court or any other party. Following termination, the Voting Agent shall provide the Plan Administrator and the Bankruptcy Court with a copy of the claims register and a copy of all filed Proofs of Claim. No later than thirty (30) days after its termination, the Voting Agent shall provide the Plan Administrator with a final invoice, and unless the Plan Administrator has any issues with respect to the Voting Agent's fees or expenses, the Plan Administrator will be authorized to remit payment of the final invoice within fifteen (15) days of receipt. The Bankruptcy Court will retain jurisdiction to hear any dispute in the event that the Plan Administrator and Voting Agent cannot agree upon the amount of fees and expenses sought by the Voting Agent.

N.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator is authorized to, and may issue, execute, deliver, file, or record, such contracts, instruments, releases, and other agreements or

documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Plan Administrator, shall make the Distributions required to be made under the Plan.

B.    *Disputed Claims Reserve*

    1.    Establishment of Disputed Claims Reserve

On the Initial Distribution Date, and after making all Distributions required to be made on such date under the Plan, the Plan Administrator shall establish a separate Disputed Claims Reserve, in an amount to be determined in the sole discretion of the Plan Administrator, for Disputed Claims, which Disputed Claims Reserve shall be administered by the Plan Administrator. On each Initial or Quarterly Distribution Date after the Effective Date in which the Plan Administrator makes Distributions to Holders of Allowed Claims, the Plan Administrator shall retain on account of Disputed Claims an amount the Plan Administrator estimates would be necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Plan Administrator (or such other amount as may be estimated by the Bankruptcy Court in accordance with Article IX.D hereof).

    2.    Maintenance of Disputed Claims Reserve

To the extent that the property placed in the Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account, the Plan Administrator, shall hold Cash in the Disputed Claims Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed. The Plan Administrator shall, in its sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Plan Administrator Agreement, as such Disputed Claims are resolved by a Final Order, and such amounts will be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date. Each Disputed Claims Reserve shall be closed (or deemed closed) by the Plan Administrator when all distributions have been made pursuant to the Plan.  Upon closure of a Disputed Claim Reserve, all Cash and other property held therein shall revest in the appropriate Liquidating FedNat Debtor and shall be distributed in accordance with the Plan and Plan Administrator Agreement.

C.    *Quarterly Distributions*

On each Quarterly Distribution Date or as soon thereafter as is reasonably practicable (or such other date that may be selected by the Plan Administrator, in his or her discretion), the Plan

Administrator shall make the Distributions required to be made under the Plan on such date. Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by Liquidating FedNat as applicable, in the Disputed Claims Reserve pursuant to Article VIII.B.2 and Distributed on the first Quarterly Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution paid on a Quarterly Distribution Date in accordance with this Article VIII.C.

D.      *Record Date for Distributions*

        Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date The Plan Administrator shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Plan Administrator shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Plan Administrator, as of the Distribution Record Date.

E.      *Delivery of Distributions*

        1.      General Provisions; Undeliverable Distributions

         Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Plan Administrator at (i) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim Filed by such Holder or (ii) the last known address of such Holder if no Proof of Claim is Filed or if the Plan Administrator, has been notified in writing of a change of address; *provided, however,* that Distributions paid by the Plan Administrator for the benefit of Holders of Senior Notes Claims shall be made to the appropriate Senior Notes Indenture Trustee under the respective Senior Notes Indenture documents for such obligations. If any Distribution is returned as undeliverable, the Plan Administrator may, in his or her  discretion, make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Plan Administrator deems appropriate, but no Distribution to any such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made without interest. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Plan Administrator until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in Article VIII.E.2 of the Plan.  The Plan Administrator shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided*, *however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or Plan Administrator Agreement.

2.      Unclaimed Property

Except with respect to property not distributed because it is being held in the Disputed Claim Reserve, Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or thirty (30) days after the date on which a check is voided pursuant to Article VIII.G of the Plan, shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the applicable Liquidating FedNat Debtor, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that period, the claim of any Entity to those Distributions shall be disallowed and forever barred. Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any holder of an Allowed Claim.  All funds or other property that vest or revest in the Liquidating FedNat Debtor pursuant to this Article shall be distributed by the Plan Administrator to the other holders of Allowed Claims or Interests in accordance with the provisions of the Plan or the Plan Administrator Agreement.

F.      *Manner of Cash Payments Under the Plan or the Plan Administrator Agreement*

Cash payments made pursuant to the Plan or the Plan Administrator Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator.

G.      *Time Bar to Cash Payments by Check*

Checks issued by Liquidating FedNat on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article VIII.G shall be made directly to the Plan Administrator by the Holder of the Allowed Claim to whom the check was originally issued. Any claim in respect of such voided check shall be made in writing on or before the later of six months after the Effective Date or 60 days after the date on which such check was issued. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of Liquidating FedNat as unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Article VIII.E.2.

H.      *No Payments of Fractional Dollars*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

I.      *No Cash Payments Less Than $50 on Account of Allowed Claims*

Notwithstanding anything herein to the contrary, except with respect to Administrative, Priority Tax Claims and Priority Claims, if a Distribution to be made to a Holder of an Allowed Claim on the Initial Distribution Date or any Quarterly Distribution Date would be $50 or less in the aggregate, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Plan Administrator.  If such request is made, such Cash shall be held for such

Holder until the earlier of (i) the next time a Quarterly Distribution is made to the Holders of Allowed Claims (unless the Distribution would still be less than $50, in which case this Section shall again apply), or (ii) subject to Section J] below, the date on which final Distributions are made to the Holders of Allowed Claims.

J.    *Withholding Taxes*

In connection with making Distributions under this Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Plan Administrator may withhold the entire Distribution to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Plan Administrator to the appropriate authority. If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months after the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated in accordance with Article VIII.E.2of the Plan.

K.    *Interest on Claims*

To the extent all Allowed General Unsecured Claims are fully and indefeasibly paid, such claims shall be entitled to post-petition interest from the Petition Date at the applicable federal judgment rate and prior to any distributions made to any Interest Holders.

L.    *No Distribution in Excess of Allowed Amount of Claim*

Except to the extent required under the Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

M.    *Setoff and Recoupment*

The Plan Administrator may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that applicable Debtor, the Estate or Liquidating FedNat may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, or Liquidating FedNat of any right of setoff or recoupment that any of them may have against the Holder of any Claim.

# ARTICLE IX

# DISPUTED CLAIMS

A.    *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Plan Administrator shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

B.    *Resolution of Disputed Claims*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Plan Administrator shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. The costs of pursuing the objections to Claims incurred by the Plan Administrator shall be paid from the assets of Liquidating FedNat.

C.    *Objection Deadline*

All objections to Disputed Claims shall be Filed and served upon the Holders of each such Claim on or before the Claims Objection Deadline, as such deadline may be extended by order of the Bankruptcy Court, unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

D.    *Estimation of Claims*

At any time, subsequent to the Effective Date, the Plan Administrator may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors (prior to the Effective Date) or, the Plan Administrator has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.

E.    *Disallowance of Claims*

Except as otherwise agreed, any and all Proofs of Claim Filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

# ARTICLE X

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

1.    All Executory Contracts and Unexpired Leases listed in the Plan Supplement as Executory Contracts or Unexpired Leases to be assumed or are to be assumed pursuant to the terms hereof, shall be deemed assumed by the applicable Debtor as of immediately prior to the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

2.    The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases not listed as assumed Executory Contracts or Unexpired Leases in the Plan Supplement, and neither the Debtors nor Liquidating FedNat shall have no further liability thereunder except with respect to Claims created by the rejection as set forth in Article X.B. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Any and all Claims for damages created by or arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Article X.B of the Plan, or the expiration or termination of any Executory Contract or Unexpired Lease prior to the Effective Date, other than Claims, if any, held by a D&O related to an indemnification obligation of a Debtor, must be filed against the applicable Debtor or Debtors with the Bankruptcy Court and served on the Plan Administrator no later than thirty (30) days after the Effective Date. Other than Claims, if any, held by a D&O related to an indemnification obligation of a Debtor, any Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Article X.A for which a Proof of Claim is not timely filed within that time period will be forever barred from assertion against the Debtors, Liquidating FedNat, the Debtors' Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims, other than Claims, if any, held by a D&O related to an indemnification obligation of a Debtor, shall, as of the Rejection Bar Date, be subject to the permanent injunction set forth in Article XII.F.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated under the Plan as General Unsecured Claims against the applicable Debtor or Debtors against whom the Claim is filed and shall be subject to the provisions of Article V of the Plan.  For avoidance of doubt, nothing in this Plan shall be deemed to extend the period to file any Rejection Damage Claims for all Executory Contracts or Unexpired Leases previously rejected pursuant to any prior orders entered by the Bankruptcy Court authorizing such rejections. For the further avoidance of doubt, the Claims, if any, held by a D&O related to an indemnification obligation of a Debtor must be filed against the applicable Debtor or Debtors with the Bankruptcy Court and served on the Plan Administrator no later than thirty (30) days after any civil action or

proceeding seeking to recover on Causes of Action against the D&O has been properly served on the D&O.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

A.    *Conditions to Confirmation:*

The following are conditions precedent to entry of the Confirmation Order that must be satisfied or waived in accordance with Article XI.C:

1.    The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code in form reasonably acceptable to the Committee.

2.    All objections to confirmation of the Plan are either withdrawn, resolved or overruled.

3.    The most current version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed.

4.    The Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Committee.

B.    *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived in accordance with Article XI.C:

1.    The Confirmation Order shall not be stayed and shall be in full force and effect.

2.    The Benefit Plans shall have been terminated in accordance with applicable law.

3.    The Plan Administrator shall have been appointed in accordance with the terms of the Plan and the Plan Administrator Agreement.

4.    The Confirmation Order in form reasonably acceptable to the Committee shall have been entered.

C.    *Waiver of Conditions Precedent*

The Committee may waive the occurrence of or modify any condition precedent in this Article XI. Any such written waiver of a condition precedent set forth in this Article XI may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. The failure of the Committee to

exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

D.    *Binding Effect of Plan*

The provisions of the confirmed Plan shall bind each of the Debtors, the Plan Administrator, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in these Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to this Plan. This Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

## ARTICLE XII

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.  In accordance with the provisions of the Plan and except as otherwise provided herein, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtors or their Estates and Causes of Action against other Entities.

B.    *Releases by the Debtors*

**Subject to the exceptions established by the D&O Release Opt Out Order and other provisions of this Plan protecting the rights of the D&Os who were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and**

exculpation provisions proposed in the First Amended Combined Disclosure Statement and Plan, but are now included as Exculpated Parties in the exculpation provisions in the Plan, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, the Released Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever been released and discharged by the Debtors and the Estates from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively, "*Debtor Released Claims*") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the First Amended Combined Disclosure Statement and Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the First Amended Combined Disclosure Statement and Plan, the Plan Supplement, the Plan Administrator Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the First Amended Combined Disclosure Statement and Plan or the Distributions and related documents or other property under the First Amended Combined Disclosure Statement and Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing. For the avoidance of doubt, nothing in the foregoing "*Debtor Releases*" or the First Amended Combined Disclosure Statement and Plan shall operate to waive or release (i) any Causes of Action of any Debtor arising from any act or omission of a Released Party that constitutes fraud, gross negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the First Amended Combined Disclosure Statement and Plan or any document, instrument, or agreement executed in connection with the First Amended Combined Disclosure Statement and Plan; (iii) any Causes of Action against any insurer arising out of or relating to matters for which the Debtors would otherwise be liable or suffer an insurable loss, including without limitation, any Causes of Action against any D&O Insurance Carrier; or (iv) any claims of the Debtors, FNIC or the DFS Receiver against any D&O; (v) any Insurance Causes of Action; (vi) any claims or Causes of Action that the DFS Receiver may hold concerning the Tax Allocation Agreement, the Tax Refund Dispute, or the Tax Refund(s); or (vii) any Retained  Causes of Action and any claims, rights, suits, damages, Causes of Action or remedies with respect to the Retained Causes of Action.

C.      *Releases by Holders of Claims and Interests*

**Notwithstanding anything contained herein to the contrary, subject to the exceptions established by the D&O Release Opt Out Order and other provisions of this Plan protecting the rights of the D&Os who were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and exculpation provisions proposed in the First Amended Combined Disclosure Statement and Plan, but are now included as Exculpated Parties in the exculpation provisions in the Plan, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, effective on and after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors and the other Released Parties from any and all past or present Claims, Interests, indebtedness and obligations, rights, suits, losses, damages, injuries, costs, expenses, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, asserted or unasserted, suspected or unsuspected, accrued or unaccrued, fixed, contingent, pending or threatened, existing or hereafter arising, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state laws or otherwise, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (collectively "_Third Party Released Claims_") based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the First Amended Combined Disclosure Statement and Plan, the business or contractual arrangements between any Debtor or any other Released Party, on one hand, and any Releasing Party, on the other hand, the restructuring of Claims and Interests prior to or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the First Amended Combined Disclosure Statement and Plan, the Plan Supplement, the Plan Administrator Agreement or any related agreements, instruments, or other documents, the pursuit of Confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of the First Amended Combined Disclosure Statement and Plan or the Distributions and related documents or other property under the First Amended Combined Disclosure Statement and Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing (the "_Third Party Releases_").  For the avoidance of doubt, nothing in the Third Party Releases or the First Amended Combined Disclosure Statement and Plan shall operate to waive or release (i) any Causes of Action of any Releasing Party arising from any act or omission of a Released Party that constitutes fraud, gross negligence, or willful misconduct, (ii) any post-Effective Date obligations of any party under the First Amended Combined Disclosure Statement and Plan or any document, instrument, or agreement executed in connection with the First Amended Combined Disclosure Statement and Plan; (iii) any Causes of Action against any insurer arising out of or relating to matters for which the Debtors would otherwise be liable or suffer an insurable loss, including without limitation, any Causes of Action against any D&O Insurance Carrier; (iv) any claims of the Debtors,**

FNIC, or the DFS Receiver against any D&O; (iv) any Insurance Causes of Action; (vi) any claims or Causes of Action that the Receiver may hold concerning the Tax Allocation Agreement, the Tax Refund Dispute, or the Tax Refund(s); or (vii) any Retained Causes of Action and any claims, rights, damages, or remedies with respect to any such Retained Causes of Action.

For the avoidance of doubt, nothing in this Article XII.C is intended to, shall or does alter the exceptions established by the D&O Release Opt Out Order and other provisions of this Plan protecting the rights of the D&Os who were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and exculpation provisions proposed in the First Amended Combined Disclosure Statement and Plan.

Notwithstanding any language to the contrary contained in the First Amended Combined Disclosure Statement and Plan or Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-Debtor person or non-Debtor Entity in any forum.

D.    *Exculpation*

Notwithstanding anything contained in this First Amended Combined Disclosure Statement and Plan to the contrary, an Exculpated Party, and any property of an Exculpated Party, shall not have or incur any liability to any Entity for (a) any prepetition act taken or omitted to be taken in connection with, related to or arising from the Debtors' authorizing, preparing for or filing the Chapter 11 Cases , or (b) any post-petition act arising prior to or on the Effective Date taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this First Amended Combined Disclosure Statement and Plan, the Plan Supplement, or any contract, instrument, or other agreement or document created or entered into in connection with this First Amended Combined Disclosure Statement and Plan or the Chapter 11 Cases, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the Chapter 11 Cases, or the confirmation or consummation of this Plan, including but not limited to (i) the Sales; (ii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this First Amended Combined Disclosure Statement and Plan (including soliciting acceptances or rejections thereof if necessary), or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with this First Amended Combined Disclosure Statement and Plan; or (iii) any Distribution made pursuant to this First Amended Combined Disclosure Statement and Plan, except for acts determined by a Final Order to constitute willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this First Amended Combined Disclosure Statement and Plan. Notwithstanding the foregoing, or anything contrary in this First Amended Combined Disclosure Statement and Plan, and for the avoidance of doubt, this section of the First Amended Combined Disclosure Statement and Plan shall not (i) exculpate or release any Exculpated Party from anything other than as expressly identified in the preceding sentence, (ii) prevent or limit the ability of the Debtors or the Plan Administrator to object

to a Claim of an Exculpated Party on any basis other than matters exculpated or released in this section, (iii) exculpate or release any Exculpated Party, Person, or Entity from any Insurance Causes of Action; (iv) exculpate or release any Exculpated Party, Person, or Entity from any claims or Causes of Action that the Receiver may hold concerning the Tax Allocation Agreement, the Tax Refund Dispute, or the Tax Refund(s); (v) exculpate or release any Exculpated Party from any Retained Causes of Action and any claims, rights, damages, or remedies with respect to any such Retained Causes of Action; or (vi) prevent or limit the ability of the Debtors or the Plan Administrator to object to, or defend against, on any basis, or any Administrative Claim of an Exculpated Party for substantial contribution. For the avoidance of doubt, nothing herein is intended to, shall or does release any Person or Entity, including an Exculpated Party, from (i) any Insurance Cause of Action or (ii) any prepetition conduct other than any act taken or omitted to be taken in connection with, related to or arising from the Debtors' authorizing, preparing for or filing the Chapter 11 Cases, all of which claims are expressly reserved and preserved for the Debtors' estates.

E.    *Injunction*

Subject to the exceptions established by the D&O Release Opt Out Order and other provisions of this Plan protecting the rights of the D&Os who were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and exculpation provisions proposed in the First Amended Combined Disclosure Statement and Plan, but are now included as Exculpated Parties in the exculpation provisions in the Plan, and except as otherwise expressly provided in the First Amended Combined Disclosure Statement and Plan or in the Confirmation Order, (including the limitations on the release and exculpation provisions set forth in Article XII(B), (C), and (E) above), or for obligations issued pursuant to the First Amended Combined Disclosure Statement and Plan, from and after the Effective Date, all Entities who hold or may hold Claims or Interests and all Entities acting on behalf of such Holders and the Releasing Parties are permanently enjoined from taking any of the following actions against the Debtors, Liquidating FedNat, the Released Parties, and Plan Administrator:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims, Interests and Causes of Action released, exculpated, waived, settled or barred pursuant to this First Amended Combined Disclosure Statement and Plan, which for the avoidance of doubt include the Third Party Releases, Debtor Releases and Exculpated Claims set forth herein, (6) commencing or continuing in any manner any action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Insurance

Cause of Action (the injunction set forth in this clause (6), the "*Insurance Injunction*"). Nothing in the First Amended Combined Disclosure Statement and Plan or the Confirmation Order shall: (A) preclude any Entity from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds so long as the Plan Administrator and any such Entity agree in writing that such Entity will:  (a) waive all Claims against the Debtors and the Estates related to such action and (b) enforce any judgment on account of such Claim solely against applicable insurance proceeds, if any; or (B) enjoin, preclude, or otherwise restrict (i) any claim or Cause of Action concerning the Tax Allocation Agreement, the Tax Refund Dispute, the Tax Refund(s); (ii) any Insurance Causes of Action; (iii) any Retained Causes of Action; or (iv) any claims or Causes of Action against or in any way involving any D&O, who is subject to the exceptions established by the D&O Release Opt Out Order and other provisions of this Plan protecting the rights of those D&Os who were deemed to have elected out of, not granted, and not been bound by the releases, discharges, injunctions, and exculpation provisions proposed in the First Amended Combined Disclosure Statement and Plan, but is now included as an Exculpated Party subject to the exculpation provisions of the Plan.  Notwithstanding the foregoing, the Injunctions in this paragraph shall apply only to claims expressly released or exculpated under the First Amended Combined Disclosure Statement and Plan.

F.      *No Release of Co-Obligor or Joint Tortfeasor*

No provision of this First Amended Combined Disclosure Statement and Plan, including without limitation, any release or exculpation provision, shall modify, release, or otherwise limit the liability of any Entity other than the Released Parties and the Exculpated Parties, including without limitation, any Entity that is a co-obligor, guarantor or joint tortfeasor of a Released Party or an Exculpated Party or that otherwise is liable under theories of vicarious or other derivative liability.

G.      *Preservation of Insurance*

Notwithstanding anything to the contrary under the First Amended Combined Disclosure Statement and Plan, the First Amended Combined Disclosure Statement and Plan shall not diminish or impair the enforceability of the D&O Liability Insurance Policies.  The Plan Administrator shall keep the D&O Liability Insurance Policies in full force and effect for the benefit of such directors and officers covered thereunder, and in no event shall the Plan Administrator, directly or indirectly, unwind, transfer, monetize or tender any of the D&O Liability Insurance Policies for cancellation, or otherwise limit the coverage available thereunder.

H.      *Preservation of Rights of Action*

1.      *Vesting of Retained Causes of Action*

(a)     Except as otherwise provided in the First Amended Combined Disclosure Statement and Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtors may hold against any Entity shall vest upon the Effective Date in Liquidating FedNat.

(b)    Except as otherwise provided in the First Amended Combined Disclosure Statement and Plan or Confirmation Order, after the Effective Date, the Plan Administrator shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Retained Causes of Action, in accordance with the terms of the Plan Administrator Agreement and without further order of the Bankruptcy Court (provided however that this authorization shall not preclude the Plan Administrator from seeking, in his or her sole discretion, Bankruptcy Court approval of any such settlement or compromise), in any court or other tribunal, including, without limitation, in an adversary proceeding filed in any of the Chapter 11 Cases. Without limiting the generality of the foregoing, upon the Effective Date, the Plan Administrator, on behalf of the applicable Debtor shall be deemed substituted for the relevant Debtor (or the Committee) in any pending adversary proceedings to which one or more of the Debtors (or the Committee) were a party, and any appeals arising out of such adversary proceedings.

(c)    Retained Causes of Action and any recoveries therefrom shall remain the sole property of Liquidating FedNat (for the sole benefit of Entities entitled to Distributions under the First Amended Combined Disclosure Statement and Plan), as the case may be, and Holders of Claims shall have no right to any such recovery.

2.    _Preservation of All Retained Causes of Action Not Expressly Settled or Released_

(a)    Confirmation of this First Amended Combined Disclosure Statement and Plan effects no settlement, compromise, waiver or release of any Retained Cause of Action unless this First Amended Combined Disclosure Statement and Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or nondiscussion of any particular Retained Cause of Action is not and shall not be construed as a settlement, compromise, waiver, or release of any such Retained Cause of Action.

(b)    **Unless a Retained Cause of Action against a Holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Plan Administrator, on behalf of Liquidating FedNat, expressly reserves all Retained Causes of Action for later adjudication (including, without limitation, Retained Causes of Action not specifically identified or described in the First Amended Combined Disclosure Statement and Plan or elsewhere or of which the Debtors, or the Plan Administrator may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors or the Plan Administrator at this time or facts or circumstances which may change or be different from those the Debtors, or the Plan Administrator now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of _res judicata,_ collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or occurrence of the Effective Date based on the First Amended Combined Disclosure Statement and Plan or Confirmation Order, except where such Retained Causes of Action have been released in the First Amended Combined Disclosure Statement and Plan or any other Final Order (including the Confirmation Order). In addition, the Plan Administrator expressly reserves the right to pursue or adopt any claims**

**alleged in any lawsuit in which one or more of the Debtors is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.**

(c)     Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that any such obligation, transfer, or transaction may be reviewed by the Plan Administrator subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a Proof of Claim against the Debtors in their Chapter 11 Cases; (ii) the Debtors (prior to the Effective Date) or the Plan Administrator have objected to any such Entity's Proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors (prior to the Effective Date) or the Plan Administrator have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors or the Plan Administrator as disputed, contingent or unliquidated.

I.    *Release and Injunction*

The rights afforded in the First Amended Combined Disclosure Statement and Plan and the treatment of all Claims and Interests in the First Amended Combined Disclosure Statement and Plan shall be in exchange for and in complete satisfaction of Claims and Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against any of the Debtors' Estates, or any of the assets or properties of Liquidating FedNat or the Debtors' Estates. On the Effective Date, all such Claims against, and Interests in, the Debtors' Estates shall be satisfied and released in full. Notwithstanding the foregoing, the FNHC Stock Interests are not subject to this paragraph.

J.    *Releases of Liens*

Except as otherwise provided in the First Amended Combined Disclosure Statement and Plan or in any contract, instrument, release or other agreement or document created pursuant to the First Amended Combined Disclosure Statement and Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate shall be fully released and discharged (except for the charging Liens of the Senior Notes Indenture Trustees to the extent any fees owed to the Senior Notes Indenture Trustees under the Indentures are not paid pursuant to the First Amended Combined Disclosure Statement and Plan) and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to Liquidating FedNat and administered by the Plan Administrator.

K.    *No Discharge for the Debtors*

In accordance with the First Amended Combined Disclosure Statement and Plan, the Debtors are not obtaining a discharge pursuant to section 1141(d)(1) of the Bankruptcy Code, and nothing in this First Amended Combined Disclosure Statement and Plan shall be interpreted as giving or providing the Debtors with such a discharge.

# ARTICLE XIII

# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, Liquidating FedNat, the Plan Administrator and the First Amended Combined Disclosure Statement and Plan as is legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which they are a party or with respect to which the Debtors or Liquidating FedNat, as applicable, may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XIV.B adding Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.    ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Plan Administrator after the Effective Date, *provided, however,* that the Plan Administrator shall reserve the right to commence actions in all appropriate jurisdictions;

6.  adjudicate, decide, or resolve any and all matters related to Retained Causes of Action and the Tax Refund Dispute;

7.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the First Amended Combined Disclosure Statement and Plan or the Plan Supplement;

8.    resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the First Amended Combined Disclosure Statement and Plan or any Entity's obligations incurred in connection with the First Amended Combined Disclosure Statement and Plan;

9.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the First Amended Combined Disclosure Statement and Plan, except as otherwise provided in the First Amended Combined Disclosure Statement and Plan;

10.      enforce Article XII.A and Article XII.B;

11.      enforce the injunction set forth in Article XII.F;

12.      resolve any cases, controversies, suits or disputes with respect to the provisions contained in Article XII, and enter such orders as may be necessary or appropriate to implement or enforce all such provisions;

13.      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.      resolve any other matters that may arise in connection with or relate to the Plan Administrator Agreement, First Amended Combined Disclosure Statement and Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the First Amended Combined Disclosure Statement and Plan; and

15.      enter an order and/or the decree contemplated in section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

A.    *Payment of Statutory Fees*

Notwithstanding any other provision of this First Amended Combined Disclosure Statement and Plan, the Plan Administrator, shall, on behalf of Liquidating FedNat, timely pay all fees incurred and required under 28 U.S.C. § 1930(a)(6) attributable to the Debtors for the period ending on the Effective Date. For the period commencing on the Effective Date through the earlier of (a) the closing of the Chapter 11 Cases by the issuance of a final decree by the Bankruptcy Court and (b) entry of an order dismissing or converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, the Plan Administrator shall (x) file with the Bankruptcy Court the required quarterly operating reports regarding Liquidating FedNat for the post-confirmation period and (y) pay all required fees incurred under 28 U.S.C. § 1930(a)(6) based on the disbursements made pursuant to the First Amended Combined Disclosure Statement and Plan.

B.    *Modification of First Amended Combined Disclosure Statement and Plan*

Subject to the limitations contained in the First Amended Combined Disclosure Statement and Plan: (1) the Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the First Amended Combined Disclosure Statement

and Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Committee, or the Plan Administrator, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the First Amended Combined Disclosure Statement and Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the First Amended Combined Disclosure Statement and Plan in such manner as may be necessary to carry out the purpose and intent of the First Amended Combined Disclosure Statement and Plan.

C.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the First Amended Combined Disclosure Statement and Plan in good faith and in compliance with the Bankruptcy Code and any applicable non- bankruptcy law, and pursuant to section 1125(e), the Plan Proponents and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, including, if applicable, in the offer, issuance, sale and purchase of any First Amended Combined Disclosure Statement and Plan securities (if any) provided under the First Amended Combined Disclosure Statement and Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the First Amended Combined Disclosure Statement and Plan.

D.    *Revocation of First Amended Combined Disclosure Statement and Plan*

The Plan Proponents reserve the right to withdraw the First Amended Combined Disclosure Statement and Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans. If the Plan Proponents withdraw the First Amended Combined Disclosure Statement and Plan, then: (1) the First Amended Combined Disclosure Statement and Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the First Amended Combined Disclosure Statement and Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the First Amended Combined Disclosure Statement and Plan shall: (a) constitute a waiver or release of any claims by or against, or any Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Committee, the Debtors or any other Entity; or (c) constitute an admission of any sort by the Committee, the Debtors or any other Entity.

E.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

F. *Governing Law*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof.

G. *Reservation of Rights*

Except as expressly set forth herein, the First Amended Combined Disclosure Statement and Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of the First Amended Combined Disclosure Statement and Plan, any statement or provision contained herein, nor the taking of any action by the Plan Proponents or any Entity with respect to the First Amended Combined Disclosure Statement and Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Committee; (ii) the Debtors with respect to the Holders of Claims or Interests or other parties-in-interest; or (iii) any Holder of a Claim or other party-in-interest prior to the Effective Date.

H. *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

I. *Further Assurances*

The Plan Administrator shall, be authorized to prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

J. *Venue of Proceedings.*

Without limiting in any way the effect of Article XII hereof, should any Holder of a Claim or Interest or other party in interest file an action against any of the Debtors, any officer or employee of the Debtors during the Chapter 11 Cases, the Committee and the individual members thereof, Liquidating FedNat, the Plan Administrator or (or any professional retained or employed by any of the Plan Administrator) in connection with any Claim or Cause of Action arising after the Petition Date from or related to the Chapter 11 Cases, including this First Amended Combined Disclosure Statement and Plan, venue of any such action shall lie only in the Bankruptcy Court.

K.    *Service of Documents*

Any pleading, notice or other document required by the First Amended Combined Disclosure Statement and Plan to be served on or delivered to the Debtors or the Committee shall be sent by first class U.S. mail, postage prepaid as follows:

To the Debtors:

FedNat Holding Company
c/o GGG Partners
1 East Broward
Suite 700
Fort Lauderdale, FL 33301
Attention: Katie S. Goodman, Chief Restructuring Officer
E-Mail: kgoodman@gggmgt.com

*with a copy to:*

Nelson Mullins Riley & Scarborough LLP
1222 Demonbreun Street, Suite 1700
Nashville, TN 37203
Attn: Shane G. Ramsey
E-Mail: shane.ramsey@nelsonmullins.com

-and-

Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
Attn: Frank B.B. Knowlton
E-mail: frank.knowlton@nelsonmullins.com

To the Committee:

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Attn: Bradford J. Sandler
Attn: Paul Labov
Attn: Cia H. Mackle
Email: bsandler@pszjlaw.com
Email: plabov@pszjlaw.com
Email: cmackle@pszjlaw.com

-and-

BAST AMRON LLP
One Southeast Third Avenue
Suite 2410
Miami, Florida 33131
Attn: Jeffrey P. Blast
Attn: Hayley G. Harrison
Facsimile: 786.206.8740
Email: jbast@bastamron.com
Email: hharrison@bastamron.com

<u>To the Plan Administrator</u>:

Thomas A. Pitta, Esq.
c/o Emmet, Marvin & Martin, LLP
120 Broadway, 32nd Floor
New York, NY 10271
Email: tpitta@emmetmarvin.com
Telephone: (212)-238-3148

L.      *Filing of Additional Documents*

On or before the Effective Date, the Committee or the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

M.      *Aid and Recognition*

The Plan Administrator shall, as needed to effect the terms hereof, be authorized to request the aid and recognition of any court or judicial, regulatory or administrative body in any nation, province or state.

N.      *Document Retention*

From and after the Effective Date, the Plan Administrator, and any transferee of the Debtors' Documents, as the case may be, shall preserve and maintain all of the Documents, whether retained by the Debtors or any successor to the Debtors, or transferred Plan Administrator, on behalf of Liquidating FedNat, pursuant to the Plan Administrator Agreement, or such other transferee pursuant to the First Amended Combined Disclosure Statement and Plan; and any successors to the Debtors, Liquidating FedNat, the Plan Administrator and/or such other transferee shall not destroy or otherwise abandon any such Documents absent further order of this Court or a court of competent jurisdiction after a hearing upon notice to parties in interest with an opportunity to be heard.

Fort Lauderdale, Florida

Dated: October 10, 2023

                                     Respectfully Submitted,

                                       FEDNAT HOLDING COMPANY, *et al.*

                                       -AND-

                                       THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FEDNAT HOLDING COMPANY, *et al.*

# EXHIBIT A

(Plan Proponents Solicitation Letter)

## JOINT LETTER TO UNSECURED CREDITORS RECOMMENDING THAT THEY VOTE TO ACCEPT THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN

**Re: In re FedNat Holding Company, *et al.* (the "Debtors"),[31] Case No.: 22-19451-PDR (Bankr. S.D. Fla.)**

Dear Unsecured Creditors:

For the reasons set forth below, the Debtors and the Official Committee of Unsecured Creditors (the "Committee" and together with the Debtors, the "Plan Proponents") jointly recommend that the unsecured creditors in FNHC Classes 3 and 4, FNU Classes 3 and 4, ClaimCor Classes 3 and 4, CRIS Classes 3 and 4, and Insure-Link Classes 3 and 4 (collectively the "Voting Classes") vote to ACCEPT the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of FedNat Holding Company and its Debtor Affiliates* (the "First Amended Combined Disclosure Statement and Plan").

The Plan Proponents believe that the First Amended Combined Disclosure Statement and Plan represents the best possible outcome for creditors in the Voting Classes to receive a recovery in these cases. Moreover, the Plan Proponents believe that any alternative other than Confirmation of the First Amended Combined Disclosure Statement and Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims asserted in these chapter 11 cases. Accordingly, the Plan Proponents urge you to vote to accept the First Amended Combined Disclosure Statement and Plan.

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to holders of Claims in connection with the solicitation of votes to accept the First Amended Combined Disclosure Statement and Plan. The Solicitation Package consists of the following:

   a) the First Amended Combined Disclosure Statement and Plan and all other exhibits annexed thereto, which documents the Plan Proponents propose to distribute via USB drive instead of printed copies;

---

[31] The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' federal tax identification numbers are: FedNat Holding Company (8866); FedNat Underwriters, Inc. (8533); ClaimCor, LLC (7581); Century Risk Insurance Services, Inc. (1854); and Insure-Link, Inc. (6769). The Debtors' headquarters are located at 1 East Broward, Suite 700, Fort Lauderdale, FL 33301.

b) the Conditional Approval and Procedures Order, excluding the exhibits annexed thereto;

c) a notice of the Combined Hearing;

d) a Ballot to accept or reject the First Amended Combined Disclosure Statement and Plan along with a pre-addressed, postage prepaid return envelope; and

e) such other materials as the Court may direct or approve.

Before voting, all creditors are strongly urged to carefully read and review in their entirety the First Amended Combined Disclosure Statement and Plan, including the discussion of the risk factors related to the First Amended Combined Disclosure Statement and Plan, and all other documents submitted to you as part of the Solicitation Package.

Based on the favorable distribution to general unsecured creditors provided for in the Plan, the Plan Proponents recommend that you vote to **ACCEPT THE PLAN by the voting deadline of 4:00 p.m., prevailing Eastern Time, on October 2, 2023**, and timely return your executed ballot as directed on the ballot.

Please direct any questions or inquiries on this letter to counsel for Debtors, Nelson Mullins Riley & Scarborough LLP, and/or counsel for the Committee, Pachulski Stang Ziehl & Jones LLP, or Bast Amron LLP whose contact information is listed below.

**Sincerely,**

*FedNat Holding Company, on its own behalf and for each of the Debtor Affiliates and the Official Committee of Unsecured Creditors*

NELSON MULLINS RILEY & SCARBOROUGH LLP, counsel for the Debtors
Shane G. Ramsey (shane.ramsey@nelsonmullins.com)

PACHULSKI STANG ZIEHL & JONES LLP, counsel for the Committee
Bradford J. Sandler (bsandler@pszjlaw.com) and
Paul Labov (plabov@pszjlaw.com )

BAST AMRON LLP, local counsel for the Committee
Jeffrey Bast (jbast@bastamron.com) and
Hunter Grasso (hgrasso@bastamron.com)

**EXHIBIT B**

(Plan Administrator Agreement)

**PLAN ADMINISTRATOR AGREEMENT**

This Agreement (this "**Plan Administrator Agreement**") is made this ___ day of _____, 2023, by and among (a) Thomas A. Pitta, not in his individual capacity but solely as Plan Administrator,); and (b) FedNat Holding Company, FedNat Underwriters, Inc., ClaimCor, LLC, Century Risk Insurance Services, Inc., and Insure-Link, Inc., after the Effective Date (defined below) (collectively, "**Liquidating FedNat**," and together with the Plan Administrator, the "**Parties**"). This Plan Administrator Agreement is entered into in accordance with The First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation for FedNat Holding Company and its Debtor Affiliates, filed by the Debtors (as defined below) and the Official Committee of Unsecured Creditors of FedNat Holding Company, et al. (the "**Committee**") confirmed on ____, 2023 (the "**Plan**"), which became effective on _____, 2023 (the "**Effective Date**").

**RECITALS:**

A.    WHEREAS, on December 11, 2023, FedNat Holding Company, FedNat Underwriters, Inc., ClaimCor, LLC, Century Risk Insurance Services, Inc., and Insure-Link, Inc. (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of Title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") and commenced their chapter 11 cases;

B.    WHEREAS, the Plan provides for, among other things, the appointment of a Plan Administrator;

C.    WHEREAS, the Plan Administrator Agreement is created pursuant to the Plan to govern the liquidation of Liquidating FedNat and its Assets,[1] as contemplated under the Plan;

D.    WHEREAS, the powers, authority, responsibilities and duties of the Plan Administrator shall be governed by this Plan Administrator Agreement;

---

[1] As used herein, "Assets" means all property that is property of the Debtors and the Debtors' estates under Section 541 of the Bankruptcy Code, and all property of Liquidating FedNat, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interests in real estate provided, however, that such property shall not include any property that does not vest in Liquidating FedNat under the Plan.

E.      WHEREAS, pursuant to the terms and conditions of the Plan, the Plan Administrator shall administer all Assets after the Effective Date; and

F.      WHEREAS, the Parties desire this Plan Administrator Agreement to become effective upon the Effective Date.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Parties agree as follows:

1.      *General Duties and Responsibilities of Plan Administrator.* The Plan Administrator shall be responsible for implementing the Plan, including monetizing or abandoning all Assets, pursuing, settling, or abandoning all Causes of Action, resolving all Claims, and distributing Net Free Cash[2] pursuant to the Plan. The Plan Administrator shall have the powers, duties, rights, and obligations set forth herein and in the Plan.

2.      *Duties, Powers and Responsibilities of Plan Administrator.* In addition to the various powers, obligations and duties of the Plan Administrator described in the Plan, the Plan Administrator shall have the following specific duties, obligations and powers, subject to any applicable approvals provided herein and in the Plan:

(a)  To liquidate, abandon, or otherwise provide for the disposition of the Assets;

(b)  To distribute the proceeds of liquidation of the Assets to the Holders of Allowed Claims in accordance with the provisions of the Plan;

(c)  To take any action required of Liquidating FedNat or authorized to be taken by Liquidating FedNat under this Plan Administrator Agreement or the Plan;

(d)  To investigate, prosecute and, if necessary, litigate, any Cause of Action vesting in Liquidating FedNat under the Plan on behalf of the Debtors or Liquidating FedNat;

(e)  To take such action as is necessary with respect to any Claim that remains unresolved on the Effective Date, including to prepare and file objections thereto, to compromise and otherwise settle and, if necessary, to seek an extension of the deadline to object to such Claims as established by the Plan or otherwise applicable law;

(f)  To assert standing as a representative of the Debtors to pursue any such Causes of Action and Claims objections, whether initially filed by the Debtors, the Committee, or the Plan Administrator and, in the Plan Administrator's discretion, to assert any claims or defenses that may otherwise have been asserted by the Debtors, the Committee or Plan Administrator, on behalf of Liquidating FedNat, as applicable;

(g)  To exercise all the rights, powers and duties of a "trustee" under Section 1106(a) of the Bankruptcy Code, including, but not limited to, the right to waive the

---

[2] Capitalized terms used but not defined herein shall have the respective meanings assigned to such terms in the Plan.

attorney-client privilege or any other privileges on behalf of the Debtors or Liquidating FedNat;

(h)   To prepare and file corporate tax returns, including the right to request a determination of tax liability as set forth in Section 505 of the Bankruptcy Code;

(i)   To pay post-confirmation fees due to the Office of the U.S. Trustee;

(j)   To file status reports with the Bankruptcy Court or other parties in interest;

(k)   To file a motion for final decree closing the Chapter 11 Case;

(l)   To approve or disapprove any corporate action, including any action that would otherwise require shareholder or board of director action under applicable state law;

(m)   To ensure and otherwise cause Liquidating FedNat to undertake such actions as are necessary to comply with applicable regulatory requirements;

(n)   To respond to inquiries of Holders of Claims;

(o)   To respond to subpoenas or information requests from any governmental body; and

(p)   To abide by and otherwise observe such general duties as are imposed by the Plan, including the duty of care, duty of loyalty and any other applicable duty.

3.      *Representative of the Estate.* The Plan Administrator shall be deemed to be for all purposes the "representative" of the Estate as set forth in Section 1123(b) of the Bankruptcy Code to retain, enforce, settle and prosecute all Causes of Actions;

4.      *Liability of the Plan Administrator.* The Plan Administrator shall not be liable for any act or omission in connection with the Plan or this Plan Administrator Agreement, except to the extent that such liability is due to an act or omission that is determined, in a Final Order, to be solely due to the Plan Administrator's gross negligence or willful misconduct. The Plan Administrator shall be entitled to rely upon any validly given opinion of counsel or other professional employed by the Plan Administrator in connection with its duties herein, and the Plan Administrator shall not be liable for any action taken or omitted in good faith reliance upon such validly given opinion.

5.      *Indemnification of the Plan Administrator.* The Estate and Liquidating FedNat shall indemnify and hold harmless the Plan Administrator from and against any and all liabilities, expenses, claims, damages or losses incurred by the Plan Administrator as a direct result of acts or omissions taken by him in his capacity as the Plan Administrator, except to the extent such liabilities, expenses, claims, damages or losses are determined, in a Final Order, to be solely due to the gross negligence or willful misconduct of the Plan Administrator.

6.      *Agents.* The Plan Administrator may hire such attorneys, accountants and other professionals as may be required or appropriate in connection with its duties herein. The Plan Administrator shall be entitled to retain professionals in his sole discretion and without the necessity of Bankruptcy Court approval, including any professionals employed by the Debtors or the Committee in the Chapter 11 Case. The provision of services by a professional to the Debtors or the Committee shall not disqualify such professional from employment by the Plan Administrator. For avoidance of doubt, the Plan Administrator is authorized to pay the fees and expenses of any professionals employed without further order of the Bankruptcy Court.

7.      *Compensation of Plan Administrator and Agents.* From and after the Effective Date, the Plan Administrator and any professionals engaged or retained by the Plan Administrator shall be entitled to reasonable compensation from the Assets to perform services related to administration of the Plan. The Plan Administrator shall be paid $25,000 per month plus 3% of all gross amounts distributed to holders of Allowed General Unsecured Claims.

8.      *Service of Plan Administrator.* The Plan Administrator shall serve until (a) termination of this Plan Administrator Agreement by its terms, (b) the Plan Administrator resigns; *provided, however,* that if the Plan Administrator resigns, he shall continue to serve until a new Plan Administrator begins to serve.

9.      *Liquidation of the Assets.* The Plan Administrator may liquidate the Assets (including without limitation Causes of Action) or resolve Claims under the following conditions:

(a)      *Liquidation of Assets.* The Plan Administrator shall be empowered, subject to the Plan, to take all steps necessary to liquidate all of the Assets, pursue all Causes of Action, and distribute the proceeds in accordance with the Plan. Except as otherwise expressly provided herein, the Plan Administrator shall be empowered to sell, lease or otherwise liquidate and reduce to money, or abandon, the Assets on such terms and for such consideration as he deems reasonable and in the best interest of Holders of Allowed Claims, without further application to or order of the Bankruptcy Court under any provision of the Bankruptcy Code (including, without limitation, Section 363 thereof) or otherwise, and the injunction imposed pursuant to the terms of the Plan is hereby modified and relieved to this extent.

(b)      *Causes of Action and Claims Objections.* From and after the Effective Date, the Plan Administrator shall be authorized, pursuant to Bankruptcy Rule 9019(b) and Section 105(a) of the Bankruptcy Code, to compromise and/or settle any Cause of Action and/or any objection to a Claim (each, a "**Settlement**") without further order of the Bankruptcy Court, provided however, that the Plan Administrator, may in his or discretion, file a motion requesting Bankruptcy Court approval of any proposed Settlement.

(c)      *Appointment of Successor Plan Administrator* To the extent the initial Plan Administrator either resigns or is no longer able serve in such capacity, counsel for the Plan Administrator may file a motion with the Bankruptcy Court to appoint a successor Plan Administrator.

10.     *Effect on Third Parties.* As of the Effective Date, the Plan Administrator shall have sole signatory power and authority to act on behalf of Liquidating FedNat without further action or authority by or from officers, directors, or shareholders of Liquidating FedNat, as may otherwise have been required under applicable state law, and all third parties dealing with the Plan Administrator may rely upon such signature without further certification.

11.     *Termination.* The Plan Administrator Agreement shall terminate, when the Bankruptcy Court enters a final decree contemplated by section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 concluding the Chapter 11 Case.

12.     *Governing Law.* This Plan Administrator Agreement is governed by and shall be construed in accordance with the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof.

13.     *Dispute Resolution.* Any dispute regarding the interpretation or enforcement of this Plan Administrator Agreement shall be heard and determined in the Bankruptcy Court.

14.     *Amendment; Waiver.* Any substantive provision of this Plan Administrator Agreement may be amended or waived only with the prior written approval of the Plan Administrator.

15.     *Conflict with Plan.* In the event of any conflict between the terms of this Plan Administrator Agreement and the Plan, the terms of the Plan shall govern.

16.     *Preservation of Privilege.* In connection with the rights, claims and Causes of Action that constitute the Assets, any privilege or immunity, including but not limited to the attorney-client privilege and work-product privilege (collectively, the "**Privileges**"), attaching to any documents or communications (whether written or oral) shall survive the Effective Date and remain vested in Liquidating FedNat. The Plan Administrator is authorized to take any and all actions necessary to effectuate, enforce or waive any of the Privileges.

17.     *Severability.* If any provision of this Plan Administrator Agreement or the application thereof to any person or circumstance shall be determined by a Final Order to be invalid or unenforceable to any extent, the remainder of this Plan Administrator Agreement, or the application of such provision to Entities or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Plan Administrator Agreement shall be valid and enforced to the fullest extent permitted by law.

18.     *Notices.* Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person (or their successors or replacements) for whom such notice is intended at such address as set forth below, or such other addresses as provided to the other Parties hereto:

**If to the Company or the Plan Administrator:**

Thomas A. Pitta
c/o Emmet, Marvin & Martin, LLP

120 Broadway, 32nd Floor
New York, NY 10271
Email: tpitta@emmetmarvin.com
Telephone: (212)-238-3148

19.    *Headings.* The section headings contained in this Plan Administrator Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Plan Administrator Agreement or of any term or provision hereof

20.    *Counterparts.* This Plan Administrator Agreement may be executed in two or more counterparts, each of which shall be an original, but all such counterparts shall together constitute one and the same agreement.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Plan Administration Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

_____,

Thomas A. Pitta
Not individually, but solely in his capacity
as Plan Administrator

Acknowledged and agreed to by:

LIQUIDATING FEDNAT

By:_____

Name:_____

Title:_____

Date: _____, 2023

**<u>EXHIBIT C</u>**

(Liquidation Analysis)

FedNat Holding Company and Affiliates
Best Interest of Creditors Test                    4-Aug-23

Recovery Proceeds assuming intercompany tax allocations remain as corrected

| | Best Case | | | | | | Worst Case | | | | | |
| | Debtor | | | | | | Debtor | | | | | |
| Recovery Sources/Expenses | FedNat Holding Company | FedNat Underwriters | Insure-Link | Century Risk | Claimcor | Total | FedNat Holding Company | FedNat Underwriters | Insure-Link | Century Risk | Claimcor | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Recovery Proceeds** | | | | | | | | | | | | |
| Cash | 407,822 | 5,971,575 | 1,769,196 | 422,919 | 2,450,861 | 11,022,373 | 407,822 | 5,971,575 | 1,769,196 | 422,919 | 2,450,861 | 11,022,373 |
| Accounts Receivable | - | - | - | 1,164,127 | - | 1,164,127 | - | - | - | 1,164,127 | - | 1,164,127 |
| D&O Coverage | 5,000,000 | - | - | - | - | 5,000,000 | - | - | - | - | - | - |
| Tax Refunds/Credits | 5,022,106 | 9,941,044 | - | 2,595,557 | 153,903 | 17,712,610 | - | 9,941,044 | - | 2,595,557 | 153,903 | 12,690,504 |
| Sale of 30% interest in Monarch | 3,000,000 | - | - | - | - | 3,000,000 | 3,000,000 | - | - | - | - | 3,000,000 |
| Other Causes of Action | 3,000,000 | - | - | - | - | 3,000,000 | - | - | - | - | - | - |
| Other Asset liquidation | 5,000 | - | - | - | 2,000 | 7,000 | 1,000 | - | - | - | 1,000 | 2,000 |
| Total Liquidation Proceeds | 16,434,928 | 15,912,619 | 1,769,196 | 4,182,603 | 2,606,764 | 40,906,110 | 3,408,822 | 15,912,619 | 1,769,196 | 4,182,603 | 2,605,764 | 27,879,004 |
| | | | | | | | | | | | | |
| **Liquidation Expenses** | | | | | | | | | | | | |
| Wind down Overhead (1) | 267,666 | 143,732 | 1,201 | 1,042 | 250,000 | 663,641 | 267,666 | 143,732 | 1,201 | 1,042 | 250,000 | 663,641 |
| Document Retention | 123,400 | - | - | - | - | 123,400 | 123,400 | - | - | - | - | 123,400 |
| Professional Fees - Chapter 11 (2) | 2,524,625 | 891,250 | 96,375 | 96,375 | 246,375 | 3,855,000 | 1,767,238 | 623,875 | 67,463 | 67,463 | 172,463 | 2,698,500 |
| UST Fees - Chapter 11 | 131,439 | 127,301 | 14,154 | 33,461 | 20,838 | 327,193 | 27,263 | 127,301 | 14,154 | 33,461 | 20,838 | 223,016 |
| Total Liquidation Expenses | 3,047,131 | 1,162,282 | 111,730 | 130,878 | 517,213 | 4,969,234 | 2,185,566 | 894,907 | 82,817 | 101,965 | 443,301 | 3,708,557 |
| | | | | | | | | | | | | |
| Cash Available for Distribution | 13,387,797 | 14,750,337 | 1,657,466 | 4,051,725 | 2,089,550 | 35,936,876 | 1,223,256 | 15,017,712 | 1,686,379 | 4,080,638 | 2,162,463 | 24,170,447 |
| | | | | | | | | | | | | |
| **Estimated Intercompany repayment and distributions** | | | | | | | | | | | | |
| Intercompany to/from Affiliates (net) (5) | (2,567,334) | 4,062,867 | (1,655,062) | 890,402 | (730,884) | - | (1,469,944) | 877,220 | (1,655,062) | 38,782 | (730,884) | - |
| Distributions from Solvent Subsidiaries (6) | 15,924,962 | (13,731,397) | - | (2,130,377) | (63,188) | 0 | 11,887,684 | (10,545,739) | - | (1,278,757) | (63,188) | 0 |
| Cash Available after Intercompany and Distributions - Chapter 11 | 26,745,426 | 5,081,817 | 2,405 | 2,811,750 | 1,295,478 | 35,936,876 | 14,580,884 | 5,349,192 | 31,317 | 2,840,663 | 1,368,391 | 24,170,447 |
| | | | | | | | | | | | | |
| Trustee Fees Chapter 7 (3) | 825,613 | 175,704 | 601 | 107,602 | 62,114 | 1,171,635 | 460,676 | 183,726 | 3,882 | 108,470 | 64,302 | 821,055 |
| Additional Professional Fees - Chapter 7 (4) | 757,388 | 267,375 | 28,913 | 73,913 | 20,838 | 1,156,500 | 530,171 | 187,163 | 20,239 | 20,239 | 51,739 | 809,550 |
| Credit for Chapter 7 UST Fees (7) | (131,439) | (127,301) | (14,154) | (33,461) | (20,838) | (327,193) | (27,263) | (127,301) | (14,154) | (33,461) | (20,838) | (223,016) |
| Cash Available after Intercompany and Distributions - Chapter 7 | 25,293,865 | 4,766,039 | (12,955) | 2,708,696 | 1,180,290 | 33,935,934 | 13,617,299 | 5,105,605 | 21,350 | 2,745,415 | 1,273,188 | 22,762,857 |
| | | | | | | | | | | | | |
| Additional Cost of Conversion to Chapter 7 | 1,451,561 | 315,779 | 15,360 | 103,054 | 115,189 | 2,000,942 | 963,585 | 243,587 | 9,967 | 95,248 | 95,202 | 1,407,589 |

1) Assumes 12 months of litigation for claim objections and Tax Refund allocation
2) Assumes 30% reduction in professional fees if recovery litigation is deemed economically infeasible
3) Assumes no Trustee Fees on intercompany payments and Distributions - Fees are assessed against intercompany payments when distributed by the receiving entity.
4) Chapter 7 Professional fees assume additional 30% to allow for familiarization with outstanding matters
5) Intercompany distributions are calculated at the lower of i) the amount required to pay 100% of all non-insider claims or ii) the entities expected pro-rata distribution as an unsecured creditor of the Debtor estate.
6) Distributions from solvent subsidiaries are calculated as remaining proceeds of any subsidiary after payment of all liquidation expenses and 100% of Approved Claims
7) Chapter 11 UST fees are calculated on total disbursements of each Debtor including intercompany distributions

**<u>Exhibit 2</u>**

**Confirmation Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                              Case No.: 22-19451-PDR

FedNat Holding Company, *et al1*.                   Chapter 11
                                                    (Jointly Administered)

                    Debtors.
_____/

## NOTICE OF ENTRY OF CONFIRMATION ORDER

PLEASE TAKE NOTICE that on _____, 2023 the Court entered the Order (I) Approving the First Amended Combined Disclosure Statement and Chapter 11 Plan on a Final Basis and (II) Confirming the Modified First Amended Combined Disclosure Statement and Chapter 11 Plan [ECF No. ___] (the "Confirmation Order").

A copy of the Confirmation Order is available on the court docket at https://cases.stretto.com/FedNat/ or by contacting the undersigned.

Date: October 13, 2023                    Respectfully submitted,

                                          */s/ Shane G. Ramsey*_____
                                          Shane G. Ramsey
                                          Florida Bar No.: 0026842
                                          shane.ramsey@nelsonmullins.com
                                          NELSON MULLINS RILEY & SCARBOROUGH LLP
                                          1222 Demonbreun Street, Suite 1700
                                          Nashville, TN 37203
                                          Phone: (615) 664-5300
                                          Facsimile: (615) 664-5399

                                          and

                                          Scott D. Knapp
                                          Florida Bar No. 016688
                                          Scott.Knapp@NelsonMullins.com
                                          NELSON MULLINS RILEY & SCARBOROUGH LLP

---

1 The Debtors in these Chapter 11 Cases are FedNat Holding Company; FedNat Underwriters, Inc.; ClaimCor, LLC; Century Risk Insurance Services, Inc.; and Insure-Link, Inc (collectively, the "**Debtors**"). The Debtors' headquarters are located at 1 East Broward, Suite 700, Fort Lauderdale, FL 33301.

100 S.E. 3rd Avenue, Suite 2700
Ft. Lauderdale, FL 33394
Telephone: (954) 764-7060
Facsimile: (954) 761-8135

and

Frank B. B. Knowlton
*Admitted Pro Hac Vice*
frank.knowlton@nelsonmullins.com
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
Telephone: (803) 799-2000
Facsimile: (803) 256-7500

*Counsel for the Debtors and Debtors-in-Possession*

2

**<u>Exhibit 3</u>**

**Opt-Out Elections**

**In re: FedNat Holding Company, et al.**
Case #22-19451 (PDR)

**Exhibit 3**
FEDNAT HOLDING CORPORATION, et al.
Opt-Out Elections

| Opt-Out Form/Ballot # | Name | Date Opt-Out Filed |
|---|---|---|
| 35 | Bruce F. Simberg | 10/02/2023 |
| 4 | Cary Russ | 09/18/2023 |
| 12 | D Parker & J Parker | 09/25/2023 |
| 56 | David Patterson | 10/02/2023 |
| 36 | David W. Michelson | 10/02/2023 |
| 9 | Diana Lee Parker | 09/25/2023 |
| 13 | Drew Brackett | 09/26/2023 |
| 63 | EZ Claim Solutions Inc | 10/02/2023 |
| 25 | Florida Department of Financial Services as Receiver of FedNat Insurance Company | 10/02/2023 |
| 26 | Florida Department of Financial Services as Receiver of FedNat Insurance Company | 10/02/2023 |
| 27 | Florida Department of Financial Services as Receiver of FedNat Insurance Company | 10/02/2023 |
| 28 | Florida Department of Financial Services as Receiver of FedNat Insurance Company | 10/02/2023 |
| 29 | Florida Department of Financial Services as Receiver of FedNat Insurance Company | 10/02/2023 |
| 18 | Glen H. Heidlebaugh, Jr. | 09/27/2023 |
| 1 | Israel Y Bibi | 09/15/2023 |
| 11 | James Robert Parker | 09/25/2023 |
| 37 | Jennifer G. Kimbrough | 10/02/2023 |

**In re: FedNat Holding Company, et al.**
Case #22-19451 (PDR)

**Exhibit 3**
FEDNAT HOLDING CORPORATION, et al.
Opt-Out Elections

| 7 | Norman Lanier | 09/22/2023 |
|---|---|---|
| 8 | Otto Claims Services LLC | 09/25/2023 |
| 38 | Roberta N. Young | 10/02/2023 |
| 30 | Southeast Catastrophe Consulting Company, LLC | 10/02/2023 |
| 31 | Southeast Catastrophe Consulting Company, LLC | 10/02/2023 |
| N/A | State Street Bank And Trust Company | 10/2/2023 |
| 34 | Thomas A. Rogers | 10/02/2023 |
| N/A | U.S. Bank N.A. | 10/2/2023 |
| 5 | Zak, Charlita L. and Jeffrey D. | 09/19/2023 |